# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**STEVEN J. KANIADAKIS**

     **Plaintiff,**

v.

**THE EXECUTIVE BOARD
OF DIRECTORS,
SALESFORCE.COM, INC.,** *et al,*
**d/b/a SALESFORCE, INC.,** *et al.,*
**APPEXCHANGE**

v.

**THE EXECUTIVE BOARD
OF DIRECTORS,
TWILIO, INC.,** *et al.*

     **Defendants.**

_____ /

**Case No:** _____

**WITH INJUNCTIVE RELIEF SOUGHT**

**JUDICIAL NOTICE CONSOLIDATION**

**DEPOSITORY DECLARATORY
ACTION**

## COMPLAINT

Plaintiff Steven J. Kaniadakis alleges as follows:

ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

NATURE OF THE ACTION AND COMPLAINT

    **1.**      This is an action for patent infringement under the Patent Laws of The United

Stated, **Title 35 U.S.C.** to prevent and enjoin Defendants included in the caption as

provided from infringing and profiting, in an illegal and unauthorized manner and

without authorization and/or consent from the inventor and owner, Plaintiff Kaniadakis'

U.S. Patent No. 8,666, 772 herewith as **PLAINTIFF'S EXHIBIT "A"**, pursuant to **35**

**U.S.C. §§ 271, 281**, **284** and to recover relief from harm, injury, damages, attorney

fees, all fees and costs bring this action. Defendants have been repeatedly given U.S. Certified mail packages with constructive Notices attached relating to said action;

2.      For Defendants unlawful acts attempting to cause culpability of at least two (2) additional participants to become engaged with Defendants in a scheme to involve violations of law involving Plaintiff's United States Patent and Trademark. U.S. Trademark registration serial number # 4,469,219 (mark, U.S. Trademark) and U.S. Patent registration # 8,666,772 Independent Claim number 15 (US-772, IC#15) and as "the art".

3.      For Defendants engaged in intentional unauthorized and unlawful acts of Plaintiff Kaniadakis' intellectual property including, but not limited to, to cause culpability and to involve at least three (3) additional main participants to become engaged with Defendants U.S. Patent violations, infringement, inducement and contributory infringement involving patent US-772;

4.      For Defendants SALESFORCE.COM, INC., Salesforce, Inc., *et al.* furthermore engaged in intentional unauthorized and unlawful acts of Plaintiff Kaniadakis' intellectual property including, but not limited to, Federal trademark (the "Lanham Act"), the act of U.S. Trademark violations with, complicit, intentionally, willfully and knowingly, use or made available to the public with use of The Accused's computer and computing device related program's name (hereafter as, programs, as applications or as "apps") which is confusingly similar name or a name in near resemblance to Plaintiff's U.S. Trademark so as to cause a likelihood of confusion, deception, deceit, abuse, misuse, misrepresentation, misleading identity in connection to the Plaintiff's

intellectual property, made for sale, on sale or otherwise made available to the public (in the disjunctive rule of law) conveying false designations origin of the product source identified or as to the origin, sponsorship, approval or quality of Plaintiff Kaniadakis' property, and/or use or misuse in distribution, promotions, commercial activities by another person and together with Defendants' computing programs and set forth in complaint;

5.      For Defendants SALESFORCE.COM, INC., Salesforce, Inc., *et al.* unlawful acts attempting to cause culpability of at least Sixty (60) identified additional participants to become engaged with Defendants in a scheme to involve violations of law involving Plaintiff's patent US-772.

6.      For Defendants unlawful acts attempting to cause culpability of at least one of Sixty (60) and additionally identified participants to become engaged with, but not limited to, U.S. Patent violations, infringement, inducement and contributory infringement, involving patent US-772 and contributory infringement Plaintiff's patent US-772;

7.      For Executives Boards of Directors, Defendants Salesforce, Inc., SALESFORCE.COM, INC., *et al.*, (hereafter as, The Accused, or as Salesforce, Inc., *et al.,* or as common to All Defendants) and Defendants TWILIO, INC., *et al.* (hereafter as, The Accused, or as Twilio, or as common to All Defendants) carried out patent US-772, IC#15 intentional infringements knowingly, willfully, maliciously, and oppressively and with willful disregard.

8.      For Executives Boards of Directors, Defendants Salesforce, Inc.,

SALESFORCE.COM, INC., *et al.*, (hereafter as, Salesforce, Inc., *et al.*) carried out patent US-772, IC#15 <u>and</u> U.S. Trademark # 4,469,219 infringements knowingly and willfully.

**9.**     For Unfair Competition against The Accused.

**10.**     For Bad/Unfair Business Practices against The Accused.

**11.**     For Declaratory Judgment against The Accused pursuant to **28 U.S.C. §§ 2201 and 2202**.

**12.**     Plaintiff Kaniadakis invented the method for communication by invoking the interactive phone number it will be interacting with other application programs. Plaintiff Kaniadakis' patented technology in the method claim could be used and is used resulting in The Accused programs' infringing programs' technology, which The Accused pass off to many others use. The Accused have refused to be licensed, even after being given repeated Notices and subsequently warned to cure, comply or quit, cease and desist.

**13.**     The Accused must meet at least the claims recited and the patent description. The Accused programs' method has been evidenced by the resulting infringing products' technology resulting actions and functions.

**14.**     Plaintiff's claims do not need to have all the elements, components or "steps" where The Accused has identified a process' "steps".

**15.**     The Accused may have a long list of additional features, elements, components. However, so long as The Accused demonstrates at least the short list of Plaintiff Kaniadakis' Independent Claim then The Accused infringes.

16.     The Accused programs' infringing program technology products may look different. However, The Accused are using a machine, method or process, products/services that is functioning substantially the same and resulting in the substantially same actions and functions as Plaintiff Kaniadakis' patented technology and exactly the same results as with patent US-772. The Accused programs' Store has at least one of Sixty (60) "apps" or more identified using Plaintiff's U.S. Patented technology.

17.     The Accused, Defendant Salesforce, Inc. *et al*. has going even further to infringe. The Accused had participated in a scheme to benefit and gain further advantage over Plaintiff Kaniadakis by infringing on Plaintiff Kaniadakis' U.S. Trademark.

18.     The Accused having infringed on the U.S. Patent could confuse the public, consumers and enterprise that the products and technology are confusingly similar, the same, substantially the same or substantially similar to Plaintiff Kaniadakis' U.S. Patent and U.S. Trademark and *vise-a-versa*.

19.     Therefore, The Accused would essentially ignore the laws and Plaintiff's repeated and various attempts to

## PRELIMINARY REMARKS

20.     Plaintiff Kaniadakis published many creative works. Plaintiff's intellectual property, registrations including U.S. Copyright, U.S. Trademarks from the late 1970's to his first U.S. Patent issued in the early 1980's. Plaintiff's work includes a *Future Genetics* program, *Programmatic*, *Programmed*, *Program Yourself*, just to name a few

related U.S. Trademarks and a number of various U.S. Copyrights therefrom,

surrealism art, the *KIS BANDER* (Kaniadakis' Elastic Band Applicator) and the first

U.S. Patent application issued on the medical related tool in the 1980's. The Plaintiff

had been awarded the registrations after filing for virtually all himself since the late

70's, except for two. One U.S. Patent and one U.S. Trademark were prosecuted by

adding Mr. Ronald E. Smith (Ret.) patent attorney to the team, with a great deal of input

from the Plaintiff. Plaintiff is the type that typically believes in our U.S. system, and

documenting for the record. Plaintiff's most recent creations, involves the number of

U.S. Trademarks issued related to his U.S. Patent. In particular, one United States

Trademark and the source and origin of his designated products, the product of the

registered invention, the United States Patent, which becomes the nature of this action

and complaint. As with World class *Johnson & Johnson, Inc.* in from times in the 80's,

it appears that the Plaintiff, let us say, as evidently inspired a number of others to

emulate his creative works in the past. As with the issues in this case, The Accused, *and

others*, seemed to have been trying to flatter the Plaintiff with some forms of imitations.

At this stage, given his background, education and experiences, plaintiff is not flattered,

for the record.

### THE PARTIES

### <u>Plaintiff</u>

**21.**      Plaintiff Kaniadakis is the inventor and owner of the intellectual property, The

U.S. Patent and Trademark. Plaintiff Kaniadakis is doing business as U.S. Patented

Technology 8,666,772 and his company name is duly organized and existing under the

6

laws of The State of Florida, having its principal business in St. Petersburg, Florida.

22.     A significant aspect of Plaintiff Kaniadakis' character, his business branding and his property, is his exclusive Rights afford to himself under The U.S. Constitution, our United States law and our Common laws. Plaintiff exercises his rights including, but not limited to, for profiting from, for developing, for promoting, for licensing, for selling, for offering for sale Plaintiff Kaniadakis' intellectual property including U.S. Patent and U.S. Trademark pursuant to the Rights. For instance, GOOGLE, INC. offered to buy the U.S. Patent rights. GOOGLE, INC. stated that they were not interested Plaintiff has in use; one U.S. Trademark issued identifying the designation, origin of product source. Plaintiff Kaniadakis' had executed a written contract with GOOGLE, INC. during a mutually agreed to and prescribed time period existing for several months in 2015. The GOOGLE offer was to buy 100% of Plaintiff Kaniadakis' patent title and all rights thereof. The offer was in the amount of $20,000,000,000.00 billion dollars.

23.     Plaintiff Kaniadakis' intellectual property, U.S. Patent *to wit* one U.S. Trademark used to identifying mark and name in use for identifying elements in connection to the product, The U.S. Patent, thereof. Programs including voice program applications ("apps"), electronic messages/mail including (so not to limit to) calendar related implementations, booking, planning, reservations, events, scheduling, appointments, expenses scheduling payments (buy now, shop apps), and so forth. Thereby, essentially making voice phone calls and electronic messages/mail including (but not limited to, the various) the plurality of the calendar related implementations ("apps", computing

7

access, or means for computing related connection, adaptor, connector, code) as a program applications to the U.S. Patented Technology and U.S. Trademark in use by Plaintiff Kaniadakis to commercially brand and teach his intellectual property to The World by his multiple registration certificates and multiple well documented works. Plaintiff's use intent includes other program apps. Plaintiff's U.S. Patent is in use with the plurality of the programs beyond said calendar related implementations. For example, Plaintiff Kaniadakis' U.S. Trademark, *Talking Head*®, is in use for other program apps, which is serving the public at large and the Plaintiff to also describe his U.S. Patent in his teaching the practice of the art[1].

24.     Plaintiff Kaniadakis' Trademark Registrations (above cited) can be employed in use to generally represent the method describing patent US-772 including the plurality of voice calling and electronic message/mail messaging.

25.     Plaintiff asserts that a given name for each his programs' application's name will be inclined and is expressly intended to compliment the origin of designation, the product's source of products' variously commercial branding, name, logo, icon, description, coined phrase, to help avoid confusion, misuse, deception, intended quality, the true origin of designation and integrity of the product source, traits and characteristics. For example, Plaintiff's patent product is the source, the origin, for generating each of the programs' applications from the (single) method described in the patent. Trademarks are in use representing products' source, designation of origin, *i.e.,* Plaintiff's patent US-772, IC#15 **PLAINTIFF'S EXH. "A"**.

---

[1] In terms of "field of the invention", and distinguishing from logo graphic art design.

**26.**     The U.S. Patent and Trademark commercially branded name for this market is

evidenced in public records and evidenced in prosecution history of the U.S. Trademark

**PLAINTIFF'S EXHIBIT "C"** and U.S. Patent with drawings and illustrations as

"Callendar Call". The U.S. Trademark is summarized in the Official Gazette as the

mark without special characters, "callndr call". One Plaintiff Kaniadakis' an official

registered website and his domain name is named as follows;

<strong><u>www.callendarcall.com</u></strong>

The Final Description and Official record stating that the mark "callndr call"

**PLAINTIFF'S EXH. "C"** pronounced or phonetically sounded name representative as

"Callendar Call", or Calendar Call";

**a.**     All products and its related technology are sold, for sale, marketed, promoted with

U.S. Trademarks for expressing and identifying the practice of the art, patent US-772;

namely, Plaintiff's makes licenses available for the lawful, practicing the art, patent

US-772, IC#15 and for commercially designating and unifying patent US-772, #15 as

the origin of product's source (with emphasis upon Independent Claim #15) with the

plurality aforesaid designation of program applications. **PLAINTIFF'S EXH. "A".**

**b.**     Some, but not listing all, of Plaintiff Kaniadakis' certificates and registrations issued

are noted below;

**i.**     Plaintiff Kaniadakis' registered "callndr call"  mark and this name was

issued in standard block letters without special style or characters issue

date JANUARY 21, 2014 with International Class 9, recorded on the

Principal Register, Serial Number (SN) # 4,469,219 (U.S. CLS.

21,23,26,36 and 38) in connection to the aforementioned designated source, his issued U.S. Patent products **EXH. "C"**;

ii.    Plaintiff Kaniadakis' registered "Talking Head" mark and this name was issued in standard block letters without special style or characters issue date AUGUST 09, 2016 with Class 9, Principal, SN# 5,017,169 and in connection to aforementioned designated source, his issued U.S. Patent products;

iii.    Plaintiff Kaniadakis' registered Talking Head graphic art design issued date AUGUST 16, 2016 SN# 5,021,480 with Class 9, Principal, and in connection to aforementioned designated source, his issued U.S. Patent products. **EXB. "B".**

27.    Plaintiff Kaniadakis has evidenced In The U.S. Patent and Trademark Office the commercially branded name for this market is displayed in public records and evidenced in said prosecution history, "Final Description" of the name and mark. Plaintiff Kaniadakis' registration is clearly evidenced in The U.S. Trademark official records **"Final Description"** as follows:

["]**…The mark is a contracture of "callendar call" intentionally spelled with two letters "L" and the expression pronounced as, "calendar call". …**["]

28.    Plaintiff Kaniadakis' has cross-referenced his intellectual property, U.S. Patent and Trademark Office respective use thereof including the name with titles of Official registered works In The U.S. Copyright Office. Whereas, the name "Calendar Call" and

"Callendar Call" has been given by Plaintiff Kaniadakis' to entitle certain copyright

registrations. In The Plaintiff Kaniadakis' U.S. Trademark Official registration and

prosecution history "Final Description" as follows:

["] …**The mark has been identified in use with The U.S. Patent Office**

**documentation and U.S. Copyright Office…. [**"**]**

29.      Plaintiff's history is including the name with numerous publications. On other

public media including video presentations, business plans, various domain names,

websites, travel planning, social media applications to name a few applications to apply

the name to "Calendar Call". Plaintiff Kaniadakis' use of "Callendar Call" and

"Calendar Call" name could impact his future classification filings in connection to any

goods and services. Plaintiff could make the reference to prior use and subsequently an

intent-to-use (ITU) clause. Plaintiff heretofore could unlikely have doubt to cause

confusion evidenced with Plaintiff Kaniadakis' 'prior use anywhere' in his subsequent

works.

30.      More than one U.S. Trademark name is in use, and can otherwise be designated,

to identify the origin of designation, the products' source. More than one name is

employed for designation of Plaintiff's product including "Calendar Call". This calls

emphasis upon the nature of any and all description(s) and representation(s) is

accurately represented at any given time in the public arena. There is only one origin of

products' designation, the source described technology in the patent, **US-772.** Patent

US-772, IC#15 including the various (the plurality of) known number of the program

applications. Each application may be applied, labeled or branded commercially, and

identified differently, however, designating one origin, patent **US-772**.

## THE PARTIES

### Defendants, The Accused

### Salesforce, Inc. *et al*.

31.     Upon information and belief Defendant Salesforce, Inc., *et al.* is a national

incorporation with its headquarters and principal place of business, home office,

residing, primarily doing business in and around the bay area, San Francisco, CA. The

Accused does not rely upon its home office. The Accused is acting as an international

corporation employing people from around the world, and working in the city and State

of California with its local presence offices at: **Tampa, FL, 4301 West Boy Scout**

**Blvd, Suite #270, Tampa, FL 33607.** The Accused business exists/thrives, lives and

is at home *via* its online presence. The Accused typically relies and heavily relies upon

internet related business. Accordingly, The Accused has no walls and boundaries. The

Accused relies heavily upon other programs stationed throughout the U.S. The Accused

have business throughout the United States as a Customer Relations Management

program ("CRM"). The Accused engages and is engaged in the design, development,

promotion, sale, distribution, management, marketing and relational computing

programs of, among other things, software related technologies, web technologies

and/or "cloud" technologies. The Accused engages business with a wide range of

"Fortune 100 and 500 Companies" throughout the U.S. Also, medium, small and very

small businesses using The Accused CRM program. Even individuals, independent

contractors, "week end warriors", licensed, unlicensed, home grown, imported talent,

residents and/or other foreigners are dealing and among the force with The Accused

inside and outside (patent US-772 described, 'external programs') The U.S.A *via* The

Accused's AppExchange (*et al.*) programs. Therefore, The Accused has significant

business in *The State of Florida* and this judicial district, *MD of Florida*. For example,

Clearwater, Florida's "TECH DATA, Inc." offers programs in an association to/with

Salesforce. Therefore, has a local presence. The Accused operate a business with its

program known as Salesforce's, Inc., *et al.* "AppExchange". The AppExchange App

Store front will offer to change and customize CRM program by offering

implementations to/for/with programs for sale, helps make, develop, provide

connections, distributes, promotes, manages, sells or otherwise makes available to the

public a number of the plurality of other program applications ("apps") to CRM

program, the plurality customers and clients. The Accused has means for/of resource(s)

methods and products accessing program(s) and program apps akin to its main

computing relation program(s) to afore said mentioned (the) "AppExchange" App

Store front, The Accused's programs' separately and/or collectively means for

essentially providing and/or contributing tools (code) developing and managing

implementation(s). Hence, The Accused calls the resource to get apps as (the)

"AppExchange" App Store front, with means for hosting and/or providing essentially

each method required for accessing, configuring, integrating, and/or contributing tools

(code) developing and managing implementation(s). Therefore, scope and expanse set

forth herein abbreviated or in brief so as to not limit or to belabor elements of The

Accused's domain, material in relation to this section to be outlined, discovered, and

further evidenced in forthcoming detail. "Call Calendar, Inc.": Secretary of *State of Texas*, district and local have no records ever existed, and Salesforce, Inc. *et al*. had been informed as documented and based upon information The Accused referenced.

**Twilio, Inc. *et al*.**

**32.**    Upon information and belief, co-Defendants' of Twilio, Inc., *et al.* is a national incorporation with its headquarters residing and primarily doing business in and around the bay area, San Francisco, California. As a publically traded corporation The Accused is doing business throughout the U.S. Also, by virtue of The Accused's connection to doing business on and for its co-Defendant, Salesforce, Inc. *et al.* and Salesforce's AppExchange App Store front, The Accused (Twilio) is connected to business in The *State of Florida*, and this judicial district, *MD of Florida*. Twilio will also offer to change and customize CRM programs including, Salesforce CRM program and parts thereof, such as contributing to Salesforce's AppExchange App Store programs, as well as a number of other programs, web sites applications and web applications ("apps") by offering implementations to/for/with programs for sale, helps make, develop, provide connections, distributes, promotes, manages, sells or otherwise makes available to the public a number of other program applications ("apps") to the plurality of programs, customers and clients. Hence, The Accused has means for/of resource(s) methods and products accessing program(s) and program apps akin to afore said mentioned co-Defendants' Salesforce, Inc., *et al.* and/or (the) "AppExchange" App Store, The Accused's co-Defendants' programs' with means for essentially providing and/or contributing tools (code) developing and managing implementation(s). Therefore,

scope and expanse set forth herein abbreviated or in brief so as to not limit or to belabor elements of The Accused's domain, material in relation to this section to be outlined, discovered, and further evidenced in forthcoming detail. By connection to Salesforce.

33.     A partial list of infringement, inducement and contributory infringement involving patent US-772, contributory infringers mentioned including the programs providing "voice" electronic phone calling typically known as Voice-over-Internet-Protocol (VoIP) and/or electronic message/mail among other related program features infringing the method described in the patent, US-772, herewith as **PLAINTIFF'S EXH. "D"**. Listed herewith including the known plurality of art in a connection to infringement. Patent US-772 described the known plurality of computing related programs. Patent US-772, IC#15 for instance disclosing part of the known plurality and in relation to practicing the art thereof. At least Sixty (60) including among the computing related programs with The Accused Salesforce, Inc., *et al.* are outlined therein **EXH. "D"**. The Accused, Defendant, Twilio, Inc. *et al.* is in and among the same list including jointly and/or separately identified infringers and/or the computing program implementations. With **EXH. "D"** is a list of electronic "voice" and/or message program applications ("apps") **EXH. TABLE, "D-1"** in connection to the list among the at least Sixty (60) and in connection to The Accused programs' technology infringing programs of **EXH. "D"**. Some providers of electronic "voice" and/or electronic message/mail are among those listed with **EXH. "D"** and with **"EXH. TAB: "D-1"**. For example, "MiTel" with its product/service called "MiVoice", among others, is identified in PLAINTIFF'S EXHS. **"D"** and Table, **"D-1"**, both.

**34.**      Upon information and belief, The Accused, *et al.* each serve as a roll including but not limited to as a source/resource, domain, and labels. Some labels as a given providers' named brands and/or so called "white" labels without one name, logo, icon or identification marks and akin to template programs or template technology. Some are identified as being part of a platform, site, method, product, client, means, representative, alter ego, icon, and/or emoticon. With some identification pointing in a connection to, and/or to each agent of the products/services conducting business In The United States including, but not limited to, importing, exporting, sales, distribution, marketing, management, selling, offering to sell, on sale or otherwise available to the public outlined list of "apps", essentially comprising the two (2) lists with The Accused marked as **EXHS. "D"** and **"D-1"**.

## JURISDICTION AND VENUE

### For Patent Infringement

**35.**      This action arises under the Patent Laws of The United States, **U.S.C., Title 35, § 1 *et seq*.** Plaintiff claims and asserts claims for U.S. Patent infringement at least under **35 U.S.C. §§ 271, 281**. Relief, harm, punitive, injury, damages, reaches back including, but not limited to, starting from The Accused put on Notice **35 U.S.C. §284**, first to invent, assigned provisional "Patent Pending" application number, publication, presenting evidence, actual publication **35 §154(d)**. This Court has Subject Matter jurisdiction over this action pursuant to **28 U.S.C. §§ 1331 and 1338(a)**, because the action arises under the Patent Laws of The United States, aforesaid stated authorities, Tile and sections thereof. Plaintiff preserving Rights pursuant to relief so as to not be

limited to injunctive forms and/or pursuant to **28 U.S.C. §2202**, as The Accused have evidenced a challenge of/for validity of the intellectual property which the certificates and the serial number registrations had been otherwise evidenced and made available to The Accused, such had been issued by The United States to the Plaintiff and in the exclusive Right of the Plaintiff including but not limited the Plaintiff having this legal basis to exercise this stated and/or related action, make claim against The Accused, and according to the deed and tile of registration and the law therein and related to herein this action.

36.      This Court has Personal Jurisdiction over The Accused by virtue of their systematic and continuous contacts[2] with this jurisdiction, as alleged herein, as well as the harm, injury, to Plaintiff Kaniadakis, and the cause of action Plaintiff Kaniadakis has arisen, as alleged herein. The Accused Defendants Salesforce has its <u>local presence offices at</u>: **Tampa, FL, 4301 West Boy Scout Blvd, Suite #270, Tampa, FL 33607.** By virtue of being a corporation The Accused is acting as one body. The Accused corporation local presence is the same, acting in concert, and this judicial district/venue being thereby home. By virtue of The Accused has challenged Plaintiff' validity of claim and/or U.S. Patent, evidenced by document **EXHS. "O" and "P"** herewith, evidences the likelihood that The Accused, including its co-Defendants herein, will challenge in some Court in some district at its time, place and/or choosing, which causes further reason for proper jurisdiction/venue to reside in this judicial district of the MD of FL, Tampa Division, and a reason for exception to other right to venue and

---

[2] Including but not limited to local office presence, Tampa, FL, even if as one "minimal contact", continuous/systematic.

judicial district given the material and as outlined herein. As the MD of FL is home to Plaintiff's home. Plaintiff has evidenced that The Accused had made document of such claims material to validity. Plaintiff has evidenced that The Accused have unjustly caused plausibility and a likelihood of reverse obligations. **As Plaintiff must become the "Counter-defendant" in this case.** When The U.S. President implemented "travel band", U.S. Courts implemented The President's state of mind during his companion. The Accused statements must be held as acts of intention. This Court has the authority to restrain the chilling effect The Accused are attempting to cause more damages, injury, harm to Plaintiff with an oppressive like act. The Accused threat of subverting responsibility, in effect, unlawfully or lawfully acts of reversing liabilities. The Accused business exists/thrives, lives and is at home *via* its online presence. The Accused have significant business ties and clients accessing business local to this suit, including by way of The Accused's very nature of The Accused's programs' primary functions, features intrinsic to The Accused's CRM program. CRM support functions accessing and managing relevant local database contacts. The Accused's program intended to maintain and associate "contacts" relevant activities material to this suit. By virtue of the nature of The Accused's interactive web applications and connections. Therefore, The Accused by placing at least placing products into the stream of commerce including access into this judicial district, The Accused have sufficient "minimum contacts" within this MD of Florida, Tampa Division, making The Accused amenable to suit in This Court's jurisdiction. The contacts are continuous and systematic. Along with The Accused's local office presence.

**37.**      The Accused is subject to This Court's Specific jurisdiction and General

jurisdiction pursuant to due process of law and/or the Florida Long Arm Statue, due at

least to The Accused's substantial business in relation and in this forum including: **(i)** at

least a portion of the infringements related to these allegations, alleged herein; and **(ii)**

regularly doing business, engaging in other persistent patterns and/or courses of conduct

or practice and/or deriving substantial revenues from products/services thereof

providing to individuals, companies, incorporations, and/or to other entities or in any

combination thereof in The *State of Florida* and in this judicial district, the MD of

Florida, Tampa Division.

**38.**      The Accused has conducted and does conduct the various business within the

*State of Florida*, including the geographic and cyber space regions within the MD of

Florida, Tampa Division, directly and/or through intermediaries, resellers, or agents,

clients, customers, vendors, managers, or offers for sale, sells, advertises, including

through the use and/or access of use of the interactive internet in a reference to the

World Wide Web (www) pointing to related *electronic addresses*, pages, links in

connections to the products/services and set forth with Plaintiff's claims and action

against The Accused, *et al.* of infringements, inducement and contributory infringement

involving patent US-772, further gain advantage over Plaintiff and benefit from various

dynamic promotional materials products/services, technology (electronic cyber space),

or uses or contributory to use, direct, indirect, practicing the art, teaching the art,

educating, instructing, inducement, or induces others to use products/services,

technology (electronic cyber space), in *Florida* including this judicial district that

infringes to any/all extent of infringement the patent US-772.

39.     Upon information and belief, specifically The Accused solicits business by and through The Accused's "apps" and managements, and others, within The State of Florida, including the geographic and cyber space regions within the MD of Florida, by selling and offering for sale, on sale or otherwise made available to the public products/services, electronic internet software related electronic equipment/hardware technologies, method, process, steps, elements, components, parts to some extent enabling the plurality of people and computing equipment in connection to some extent accessing the programs, the known plurality of "apps", and The Accused's on storage, memory, computing related equipment causing consumers and enterprise entities to be infringing on their said computing devices/equipment infringement that fall within the scope of at least one claim on patent US-772. More particularly described or outlined in the Complaint.

40.     Venue is proper and lies in this judicial district, MD of Florida, Tampa Division, pursuant to **28 U.S.C. §§ 1391, 1391(b), 1391(c), §1400(b)** the latter in the disjunctive clause of subsection, **(a)**. **28 U.S.C §§2201 and 2202** and as Counter-Defendant.

41.     Venue is proper and lays (ultimately resides, lands from cyber space) herein this judicial district, MD of Florida, Tampa Division, by virtue of the interactive web, internet, web applications or web "apps" extending The Accused's venue, domain, home, boundaries and walls of practicing the art and alleged extent of infringements thereof.

**JURISDICTION AND VENUE (Continued …)**

### For U.S. Trademark Infringement

42.     This action also arises under federal trademark laws (**"The Lanham Act of 1946"**) **Title 15 U.S.C. §§ 1051** *et seq.***, §§ 1051-1141** *et seq*. Pursuant to **28 USC § 1338(a)(b)**. This Court has Supplemental jurisdiction over Common Law, *Florida* State law*,* and *State of Florida* Common Law claims pursuant to **28 U.S.C. §1367** as the claims are substantially flowing from, related to, and arise out of the same or substantially the same or similar common facts and are therefore subject to applicable principals of supplemental jurisdiction. There is a connection to similar products/services to Plaintiff's. The Accused otherwise benefit and gain advantage over the Plaintiff which they are not entitled to receive. The Accused get revenue from content bearing alleged infringement. For example, The Accused main programs benefits from advertisements in connection to Plaintiff's U.S. Trademark by virtue of the nature of Plaintiff's technology, said intellectual property , and designation of origin a likelihood of causing confusion, false designation of origin, misleading, deception, deceit, misrepresentation of product technology's source and quality of the source, confusing the characteristics, traits, elements, parts, features with the Plaintiff's **patent US-772** by way of The Accused's infringing name "Call Calendar". **15 U.S.C. §1125 – FALSE DESIGNATION OF ORGIN, FALSE DESCRIPTIONS.** Plaintiff Kaniadakis' U.S. Trademark SN #4,469,219 Callndr Call, Final Description said to be pronounced as "Calendar Call" and "Callendar Call", The Accused use of the name "Call Calendar" has a likelihood of causing confusion, misleading, misuse, misrepresenting the false products' source, false description, and true origin of

designation in the minds of the public that Plaintiff's said intellectual properties are in some way connected to or in a connection to The Accused's programs. The Accused false representation by use or misuse of the mark has a likelihood of conveying false designation of origin of Plaintiff's products' technology, patent US-772 and patent US-772, IC#15.

The Accused published and continued use of the program named "Call Calendar. The Accused program's name is "confusingly similar" to Plaintiff Kaniadakis' program's U.S. Trademark "Calendar Call". The infringement is involving two programs that can involve electronic calendar related events. The way the Plaintiff's program related technology patent US-772 and The Accused's "Call Calendar" is currently working on The Accused programs' infringing products and products' technology could have functions and actions infringing. However, in this instance is believed to be not described to be same or similar with respect to "Call Calendar" name, in the event the app is working independently, severely. Except, there are indications "Call Calendar" by certain statements that it has functionality, which may then infringe on patent US-772, IC#15. By contrast, The Accused's program has means for enabling the two programs result in programs' working substantially similar and/or substantially the same or the same action and function in the event that the "Call Calendar" program is running or working on The Accused's program or web application site. This is because The Accused enabled means for result in programs' working substantially similar and/or substantially the same or the same action and function resulting as with the patent US-772 action. The Accused had developed

essentially a fake generic version. The Accused had embedded development the "tool" to result with programs' working substantially similar and/or substantially the same or the same action and function the same action as the patent US-772 works. The Accused had "white labeled" the product's technology. Therefore, The Accused's has knocked off a generic or non-branded template-like structure which has been enabling The Accused's contributory infringement to at least Sixty (60) other programs that result in result in programs' working substantially similar and/or substantially the same or the same action and function the same operation.

Other infringers simply change the names of the plurality of known voice and/or electronic message/mail programs. Clients are accessing the computing device's equipment/hardware to change the memory to the new program's name. The new program hooks up by means of The Accused programs' infringing products and products' technology generic products' technology or embedded code, template, generic previously "white labeled" computer program (by set of program instructions). The Accused programs' infringing products and products' technology turning phone numbers to interactive phone numbers (or interactive command graphics). The Accused providing means inserts the configuration of the new program's name, logo/icon, tool tip/tool hints and miscellaneous feature identifications, characteristics incidental to the functional result. The Accused programs' products' technology and/or embedded tool is enabling result with programs' working substantially similar and/or substantially the same or the same action and function the same resulting action of patent US-772, IC #15 for the phone number into the interactive electronic commands. Invoking the

interactive phone number or interactive command graphic for making each telephonic call using known voice programs using the known voice programs combined with the new program on the object target program, The Accused's programs. From sample list the method of pairing in the combinations, among other combinations, the known "voice" (VoIP) program with the new program from the lists **EXH. "D", Table "D-1"** to change the existing generic, template-like, 'white labeled" program to another new voice program. Again, accessing the memory of the client's computer or computing device's equipment.

The Accused has related programs on sale or otherwise available to the public. The Accused further benefit from upselling to other programs once attracting people to The Accused's programs' using infringing mark "Call Calendar" have a likelihood of The Accused causing misrepresenting of the U.S. Trademark using "Calendar Call". Next, add to the composite the same or virtually identical function and action of the programs. The result is false representation, misleading the public, consumers and enterprise. The Accused bombards the people using a massive number of other programs that look and appear to work like Plaintiff's program "Calendar Call". The fact and/or the appearance each the programs have the same function or similar functions causes' even greater confusion. A program having the same or similar features and names is cause for further compounding injury and harm to Plaintiff Kaniadakis officially registered intellectual properties.

The Accused operate their programs and/or in connection with an interactive website application (or "app") on the internet on which The Accused's website app

sells, advertises, promotes, products/services, technology, and many can be thought to be competing with Plaintiff's U.S. Patent and Trademark registered technology. The Accused programs are bearing the infringing mark at issue, "Call Calendar" on sale or otherwise made available to the public, made for sale, offered for sale, distributed and sold similar products and services to Plaintiff's technology bearing the U.S. Trademark at issue.

The Accused exchange benefits including revenue from promotions and distribution in connection to the infringing "Call Calendar" mark. Therefore, in the event an "app" is said to be "free", there are benefits gained from selling the data collected. Likewise, there are benefits gained from selling advertisements on the infringing programs, or in a connection to the infringing programs. Any/all The Accused gains causes disadvantages and lost to Plaintiff Kaniadakis.

The Accused creates a false connection enabling and continuing to be allowing use of similar or the same products/services to Plaintiff's. The Accused otherwise benefit and gain advantage over the Plaintiff which they are not entitled to receive. Defendants get revenue from content bearing the name "Call Calendar" and alleged infringement. The accused gain benefit at the expense of causing Plaintiff a disadvantage by flooding the market place and The Accused "AppExchange" App Store front with knock offs. If the 'apps' are "free", then infringement further more causes an Unfair Advantage to Plaintiff Kaniadakis' monetization of the official works, trademark and patented technology related to patent US-772. Ref. is made back to afore said sub-section U.S. Patent, Jurisdiction and Venue. Incorporating related to law and

25

statues herein for U.S. Trademark issue.

**IN THE INTEREST OF SPARING JUDICIAL RESOURCES, JUDICIAL ECONOMY,**
**JUDICIAL NOTICE:**

**Notice of filing/Motion to Consolidate**

43.        Pursuant to **Local RULE 1.04(c); Rule 42.Fed.R.Civ.P.; Local RULE 1.04(d)**

Plaintiff moves as follows in this complaint as in a separate complaint, different

Accused Defendants. Cases are assigned to this Honorable Judge, and the cases are

related because of same trademark is at issue having many of the same questions of

facts and law, and although a reference to the same related patent, instant case more

about patent issues against The Accused, however, the trademark issue is closely

related issue. Her Honor might well be serving in the interests of judicial economy to

also preside over this case. This is not a move to combine defendants into one case.

However, there has some pre-discovery information or material suggesting that SAP[3],

Inc., *et al*, CONCUR TECHNOLOGIES, INC. *et al*. may become involved, and the

issues are involving U.S. Patent rather than U.S. Trademark violations of law with The

Accused herein today. Therefore, because of a common question of law or fact or any

other prospective duplication in the prosecution or resolution of the cases:

a.   **Notice of Filing:** has already been served upon Defendants in a related case in the

     Complaint.

b.   **Plaintiff's Motion to Consolidate:** has already been served upon Defendants in a

---

[3] Involving SAP *et al*. in this case may include other controlled subsidiaries in different from previous cited case. For instance, *SAP SE, SAP America, Inc., SAP North America* may all be subject to this present case. However, in light of U.S. Patent rather than U.S. Trademark matters and involving The Accused in present case action. CONCUR Technologies, Inc. (if involved) for the same reasons, because of violations and unlawful actions of U.S. Patent not Trademark issues in reference to this different case, different angle, common theme.

related case in the Complaint and before This Court's judicial district, MD, Florida, Tampa, FL. Case No: 8:17-cv-419-T-17TBM scope is the same cited U.S. Trademark herein against the Defendants. Also, same case made references to the same U.S. Patent cited herein. Plaintiff requests that In The Interest of Judicial Economy and prudence This Court take this Complaint on the docket. Plaintiff Kaniadakis files Motion to Consolidate cases pending before This Court.

c. **Notice of Pendency of Related Actions:** Case No: 8:17-cv-419-T-17TBM as of this date the last pending motion is a judgment against Defendants and pending rulings for the same case.

**Standards of Evidence**

**44.**      Traditionally, patent owners effectively cited ***Festo v. Shoketsu, 122 Ct. 1831 (2002)*, In The Supreme Court of The United States**. Therefore, even if (or when) each element of a patent claim is not literally met by an element of The Accused's products' technology. So long as the elements of the Accused's products' technology is the "equivalent" of the claimed element, The Accused's products' technology can still be ruled to infringe on that element recited.

Plaintiff respectfully requests that This Court's ruling be considered on the basis of the **Doctrine of Equivalents (DoE)** when evaluating the case on US-772 patent infringement. **Plaintiff respectfully requests to preserve this Right to rely upon DoE.** Plaintiff believes that This Court's has in its authority this as a discretionary call to examine the case relaying upon, and for Plaintiff to apply the DoE, using "substantially similar" clause. Therefore, evaluating products' technology evidenced

27

by/with "substantially similar" results. Rather than evaluating how patent US-772 reads on the claims, using the literal examination of the way patent US-772 reads on The Accused's products' technology. Therefore, the question before This Court on whether there exists a "substantially similar" result. Patent US-772 may or may not read on and recite in the literal wording the way the function or action results on the infringing device. A reason is that much of the internet of things and computing is involving intuitive parts, steps, feature. Some methods are not so binary in human terms. Some methods are not disclosed completely by The Accused or explained or detail in order to recite each and every element of The Accused. Plaintiff believes that there is common thread that is evidenced to infringe and this can be proven. Also by virtue of the law; **35 U.S.C. § 295(1)(2)**.

Plaintiff's begs This Court to rule before too long. Before Defendants try to get Declaratory against him and make him the Counter-Defendant, and on their grounds.

### A SUMMARY PARTIAL OF CLAIMS

### The U.S. Patent

**45.**    This is a U.S. Patent infringement action brought by Plaintiff Kaniadakis against The Accused's infringements of Plaintiff's U.S. Patent, US-772. The method of Independent Claim # 15 appears to be central to this matter, patent US-772, IC#15;

**46.**    Plaintiff Kaniadakis is inventor and owner of patent US-772;

**47.**    The Accused have been identified to all infringe with the patent-in-suit at least in part, that is, to some extent and/or another on patent US-772. For instance, The Accused's products' technology result in programs' working substantially similar

and/or substantially the same or the same action and function the same function or

action as the patent-in-suit Independent Claim #15;

48.     The Accused have infringed and/or are infringing on the patent-in-suit patent US-

772 described by among other concerns, making, importing, exporting, using, offering

to sell some part of The Accused's program therewith patent US-772 and/or selling, on

sale or otherwise made available to the public in our *United States of America* and in

our judicial district of the MD of Florida, Tampa Div., at least some part as listed with

at least three (3) instances from the Sixty (60) identified products' technology using

patent US-772 without authority from Plaintiff and despite repeated Notice to The

Accused;

49.     The accused in making, making available, importing, exporting, offering to sell

some part to some extent or another selling on sale or otherwise made available to the

public The Accused's program part in connection to The Accused's program and

infringing against patent US-772 by way of infringing product's technology, The

Accused providing the public, clients, customers and otherwise instructions, about the

use of such products and continuing such acts and such other infringements adding to

infringements with time and event to gain further advantage over patent US-772 and

the Plaintiff in the market place and otherwise inside and outside (patent described,

'external programs') The Accused's programs' and The Accused's property walls. The

Accused teaching the practice of the art, practicing the art, use of the art, all without

authorization, unauthorized without license from Plaintiff, and against the *Rule of Law*

*in The United States of America*. The Accused continued even after Plaintiff had

Certified Notice to The Accused. The Accused knew or should have known that the product's technology could be used by The Accused infringing, inducing and causing contributory infringers, of the same way resulting in infringement of patent US-772. The Accused intended encouraged infringement and continued this pattern and course of conduct or practice despite Plaintiff's Notices mailed. At some point the infringement seemed to have grown, and this claim had to grow exponentially. The Accused programs' infringing device(s) and programs' technology infringements had been arising from and flowing out of as a result of The Accused's actions. Against the Plaintiff rather than to abide by the nature of Plaintiff's Notices. It appeared that The Accused were causing so many company names and programs so as to confuse the Plaintiff and the public. By the sheer volume of "free" apps to make the task of detecting The Accused infringement hard to prove, or becoming daunting weight to uncover the infringements.

### The U.S. Trademarks

**50.**     Defendant Salesforce, Inc. *et al.* further engaging in the acts by U.S. Trademark infringement of Plaintiff Kaniadakis' mark, SN #4,469,219. Compounding the case against The Accused in the event couple with U.S. Patent infringement. The Accused would not only cause infringement by use of product's technology The Accused had been on Notice about. Notwithstanding, The Accused would go on to continue use of Plaintiff Kaniadakis' name similar and in near resemblance to the product's source, the product is the patent, the method of product's origin of designation in a connection to the product's technology. **EXH. "C"**.

30

## **JOINDER**

**51.**　　The Accused are properly joined under **35 U.S.C. § 299(a)(1)**, because a right for

relief is asserted against the parties jointly, severally, and in the alternative with relation

to the same transactions, occurrences, or series thereof, relating to using the same

accused products' technology/services in reference to respective programs' and The

Accused, thereof. Identified products/services of The Accused as alleged and as

outlined with more particularity herein. The Accused are alleged to infringe the patent

US-772 with more particularity as to patent US-772, IC#15 and with respect to the

same products' technology.

**52.**　　Products may be name differently, commercially branded or white labeled

differently. Products may be utilizing differently named generic product(s) and/or

method in order to apply the operation, function or action. For example, The Accused

programs' infringing products and products' technology thereof may have a

*commercially branded name*, trademark, logo, or otherwise identifying the product. By

contrast, The Accused programs' and products' technology that are infringing are in a

connection to the source or designation which each is identifying the product back upon

itself. Therefore, in some sense it is a hidden, or "embedded" (deep), in The Accused

programs' infringing act, contributory and inducing infringement. However, The

Accused programs' infringing products and products' technology also is a widget and

"Visualforce", on a page other products are enabled and accessing *via* initial set ups and

configurations. The Accused. Therefore, the coined phrase, word, or name identifies

back on itself and not as easily traced back on to The Accused, and certainly not

identified back to Plaintiff's patent US-772 products' origin of designation. However, there are tell-tail signs or smoking guns which shall reveal infringers, drawing a common thread to imitation fabrications. Surfacing from white labeled widgets are commercially branded user interfaces or "front end" names e.g., "Callinize or Call Calendar". For another instance, The Accused programs' infringing products and products' technology, thereof, contains the products' technology enabling or otherwise hooking up the would be "app" and resulting in infringing activity. The Accused use of some known *technical words or terms* such as, but not limited to as, "Connector" or "Adaptor" or "Console" or bridge[4] (app). "Call Control Adapter (CCA)" is one tool. Another tool is referred to as "Compute Telephony Integration". The accused utilize what they call "Open" *type* "Compute Telephony Integration". Therefore, The Accused use "Open" CTI". Hereafter, such tools, *and others*, will be momentarily simply called as the "widget" or "wizard" or tool using infringing device and method. Or, method producing the product(s) from the method. These tools and others in relation to The Accused programs' and products' technology infringers on patent US-772 program's technology simply put until further outlined with more particularity later on.  Either method, by use of technical words or branded words and names, the results are either substantially same, substantially similar, or the same as patent US-772. However, infringing parts are working to produce or work by/with producing "substantially similar", substantially the same result or otherwise the same result so as causing

---

[4] "Console App" or bridge typically accessing registry of the user's computer and/or computing equipment/hardware. Typically a console or a bridge has no user interface. However, connecting the computer to, for instance, an program's application.

infringement. Extent may be different in/with each. The Accused making infringement "open" or otherwise "free" spreading and causing inducement with inducing additional infringement to cover up The Accused's unlawful acts.

**53.**     The Accused programs' infringing products and use of products' technology infringes and/or offer, make available services that cause infringing counts and/or inducing acts to infringe on patent described on US-772 including Independent Claim, US-772, #15 and/or dependencies, and/or reliant claims thereof parent patent claim(s)[5].

**54.**     The Accused are properly joined under **35 U.S.C. § 299(a)(2)** subsection:

**A Question**: A Question of findings by This Court will arise that are common to all The Accused including, for instance, **1. a.** What extent of infringement is related to The Accused programs' technology? The Accused, and these parties, have been charged jointly, severally, and with charges arising or flowing out of the same transaction, occurrence, or series or transactions or occurrences relating to using The Accused programs' infringing program technology, products/services including method or process, or in any combination. **b.** Does Counter-Defendant entitle judicial district?

## FACTUAL BACKGROUND AND INFRINGING CONDUCT

**55.**     On **July 12, 2010** the United States Patent and Trademark Office (U.S.P.T.O) recorded and assigned provisional application serial number and electronic acknowledgement receipt number 61/363,622 "Patent Pending" initiating disclosure document by the owner and inventor Plaintiff Kaniadakis and filed July 12, 2011 utility

---

[5] The U.S. Patent is considered in parts. However, the patent is actually as all one description, as the U.S. Patent.

application number 13/180,265 with the benefits of the priority date.

56.      Relief, harm, punitive, injury, damages, therefore, reaches back including, but not limited to, starting from The Accused put on Notice, first to invent, assigned provisional "Patent Pending" application number, publication, presenting evidence, actual publication **35 §154(d)**, **§284**. For instance, on **January 12, 2012,** the prior publication dates by the United States Patent and Trademark Office. Upon information and belief there were no challenges or oppositions on record reported by the U.S.P.T.O following the public disclosure date.

57.      On **March 29, 2012** the owner and inventor of the Plaintiff Kaniadakis sent constructive Notice referencing the U.S. "Patent Pending" serial number and associated first publication date of the patent and mailed together by U.S. Certified letter to The Accused, Salesforce, Inc., *et. al.* to Salesforce.com, Inc., in care of Marc Benioff, Chairman, C.E.O., Head Office, and The Executive Board of Directors, San Francisco, CA., Market Street. **PLAINTIFF'S EXH. "E"**. The letter referenced an earlier telephone contact with Marc Benioff, Chairman, C.E.O and The Executive Offices on **February 27, 2012**.

58.      On **April 19, 2012** the owner and inventor of the Plaintiff Kaniadakis sent constructive Notice referencing the U.S. "Patent Pending" serial number and associated first publication date of the patent and mailed together by U.S. Certified package and constructive Notice letter to The Accused, Twilio, Inc. *et. al.* to Jeff Lawson, C.E.O., Co-Founder, Evan Cooke, Ph.D., C.T.O, Co-Founder, and The Executive Board of Directors, San Francisco, CA., (was also on) Market Street. **PLAINTIFF'S EXH.**

"**F**". Plaintiff Kaniadakis' cover letter made reference to noting some connection with The Accused, Defendants' Twilio, Inc. *et al.* to co-Defendant "Salesforce.com Company". In addition, Plaintiff Kaniadakis' further evidenced intent and revealed aspects about the invention relating in documentation mailed to The Accused that **. . .** "***there is a general utility use … that can extend beyond just a use pertaining to our contact section, calendar***"**. . . .** Twilio, package attached referenced documents in the cover letter and Notice about an article by "Scott Wiersdorf, dated "on December 12, 2011" and attached copies to the letter. By contrast, the article appeared to be using the outdated "Call" button[6] method and/or product and "TwiML" (as, widget). The "TwiML" widget is The Accused programs' and programs' product technology. Co-Defendant Twilio, Inc. *et al.'s* TwiML widget for resulting in voice phone calling. Twilio's TwiML widget is one among the known "voice over internet protocol" (VoIP) programs and as "telephony" programs that existed in publications or prior art. The article also fashions the widget for electronic messages/mail known as "SMS", texting, messaging, and again, among the known programs for sending electronic messages.

59.     On **March 04, 2014** the United States Patent 8,666,772 was duly and legally issued in The United States of America as a utility patent after a full and very careful and extended examination by a senior primary, signatory, Examiner Officer, dedicated, objective, non-commercialized, civil servant and patent attorney of The U.S.P.T.O. The

---

[6] Plaintiff Kaniadakis did not coin the expression or phrase "Click to Call". The phrase arises from the outdated generic "Call" buttons. It is a general the way many have described features. *Except,* the products and/or methods for the known VoIP implementations infringe in the event when using the interactive phone numbers that are changeable, the interactive phone number, interacting using the various or "the plurality" of the known VoIP programs. Infringers change the names of the action-function to brand names, logos, etc. Other coined phrases are "Click to Dial".

Examiner spent more time than typical given by time tables for examination. The Examiner had no other motivations, profit, commercial or vested interests other than for The United States. The Examiner consulted with other Examiners for the benefits of further objective observers' examination and review. Plaintiff's U.S. Patent, **PLAINTIFF'S EXH. "A"**, the patent.

60.     On **July 13, 2015** Plaintiff Kaniadakis sent another constructive Notice and package with cover letter referencing the U.S. "Patent Pending" serial number and associated, pursuant to Plaintiff Kaniadakis' patent US-772, first publication date of the patent and mailed together by U.S. Certified letter to The Accused, Salesforce, Inc., *et al.* to Salesforce.com, Inc., in care of Marc Benioff, Chairman, C.E.O., Head Office, and The Executive Board of Directors, San Francisco, CA., Market Street. **PLAINTIFF'S EXH. "G"** referenced Notice and package mailed March 29, 2012 (two years prior).

### The U.S. Trademark # 4,469,219

61.     July 13, 2015 U.S. Certified package with proof of Return Receipt thereof put on Notice The Accused, Defendants' Salesforce, Inc. *et al.*, now arises the U.S. Trademark infringement. Compounding matters about Plaintiff's patent US-772 now initiates to The Accused the U.S. Trademark infringement concerns on The Accused. Again, Plaintiff July, 2015 said package and cover letter referenced telephone contacted that Plaintiff had contacted Marc Benioff, Chairman, C.E.O and The Executive Offices on this said date (for the second time/date). However, his time (unlike said Notice of 2012) date voice mail was recorded with Marc Benioff's Executive Assistant, Joel Poch, and a rather detailed account was documented by Plaintiff Kaniadakis. **EXHS. "C", "CC"**.

**62.**     Plaintiff documented a cross-referenced concern about The Accused, Salesforce, Inc. *et al*. mentioned SAP, Inc. *et al.*, "Concur-SAP, Inc. f/d/b Concur Technologies, Inc., *et al*. Since, Plaintiff had noted The Accused, Salesforce, Inc. *et al.* upon information and belief was "Technology Partner" together to some unknown extent with The Accused herein.

**63.**     The Accused had managed or included a computer program application (hereafter as, "app") named as, "Call Calendar". Also, the "Call Calendar" app stated that the app's use **["]** . . . **mimics** the standard of Salesforce.com look and feel . . . **["] and ["]** . . . with other Saleforce.com **objects** . . . **["]** (emphasis added).

**64.**     The Accused was additionally put on Notice with respect to the patent US-772 and Plaintiff's concerns on the way "Call Calendar" infringing mark compound contributory infringement concerns. Since patent US-772, IC#15 may be including implementations related to calendars and The Accused program's reliance on "Click-to-Call" programs central to patent US-772, IC#15 issue in this Complaint. More evidence was described pertaining to patent US-772 infringement, along with the "Call Calendar" attachments showing how the two infringing issues compound Plaintiff Kaniadakis' growing infringement concerns against The Accused, Defendants' Salesforce, Inc. *et. al.*

**65.**     The July 13, 2015 package elaborated on evasiveness of Brent Newton, since June 18, 2015, upon information and belief from The Accused, Defendants' Salesforce, Inc. *et al.* sited as owner of "Call Calendar". Plaintiff Kaniadakis requested Salesforce, Inc. *et al.* provide a timetable for halting continued use. The collaborator and contributory

infringer, Brent Newton, would no longer answer the phone or messages after the first telephone call. Brent Newton refused all further contact and refused packages with cover letters and written Notice mailed *via* U.S. Certified mail. Plaintiff contacted *The Secretary of State, Texas* among other Texas Officers. There were no updated official records. The "Call Calendar, Inc." was not truly a legal incorporation or other legal entity at evidenced at any time. The Accused, Defendants' Salesforce, Inc. *et al.* was in a position to shut down "Call Calendar" among other concerns in light of documentations supplied to The Accused. **PLAINTIFF'S EXHS. "CC" and "H".**

66.  On **September 01, 2015** The Accused, Defendants' Salesforce, Inc. *et al.* acknowledged contact addressed to Marc Benioff, C.E.O. **PLAINTIFF'S EXH. "I".** Notwithstanding, The Accused, Defendants' Salesforce, Inc. *et al.* named, Kiran Belur, represented the following;

**["] . . . we have no record of receiving any such letter from you . . . ["]**

a.  The representation by The Accused, Defendants' Salesforce, Inc. *et al.,* The Executive Board of Directors, C.E.O and Chairman was in reference to Plaintiff's U.S. Trademark. <u>See the Kiran letter</u>.

b.  The representation was in reference to Plaintiff's patent US-772, IC#15 infringing on the intellectual property.

Compare/contrast with The Accused's Federal Express letter at **PLAINTIFF'S EXH. "K"**.

67.  On **December 31, 2015** (2015) and **March 06, 2016** (2016) Plaintiff further detailed and outlined history to The Accused, Salesforce, Inc. *et al.* Plaintiff continued

to expressly reiterated Notice and continued to urge The Accused to take responsibility

for growing infringement acts. Plaintiff Kaniadakis' two (2) mentioned letters,

**PLAINTIFF'S EXH. "J".**

68.　　The relevance to the Infringing "Call Calendar" by "Call Calendar, Inc." on The

Accused, Salesforce's, Inc. *et al.* "AppExchange" Store to Plaintiff's "Calendar Call

mark # 4,469,219 and to actions-functions with patent US-772, IC#15 among other

matters of concerns were reiterated and outlined history was provided with further

evidence. **EXH. "H"** again reiterated **EXH. "J"** various ways there is a likelihood of

causing confusion, among other concerns with U.S. Trademark[7] including patent US-

772, IC#15 and the technology cyber space and markets of the programs or "apps" are

similar or the same, and so are the branded names which The Accused had the link in

connection to "Call Calendar" had the following website link posted;

**www.callcalendar.net**

**Plaintiff's Kaniadakis' website is;**

**www.callendarcall.com**

Plaintiff requested that The Accused cease any further use of the mark on The Accused,

Defendants' Salesforce, Inc. *et al.* AppExchange App Store related markets. Instead,

The Accused would continue a pattern and course of conduct or practice to essentially

'play dumb' and plead 'ignorance'. Yet, make assertions against U.S.P.T.O regs.

---

[7] Plaintiff had written contract agreement for $20 Billion. There was approximately a 3-4 month period during May, 2015 regarding the Google, Inc. contract and Plaintiff Kaniadakis. Plaintiff could continue various U.S. Trademarks business and to continue pursuing U.S. Trademark infringement matters. During this period Plaintiff distinguished each constructive Notices and cover letters that subject was (currently) regarding (only) the U.S. Trademark issues. Plaintiff asked Google. Google, Inc. represented that they were not interested in the U.S. Trademark(s). Google, Inc. Holdings was in the market of purchasing US patents' rights.

69.     On **March 22, 2016** The Accused, Defendants' Salesforce, Inc. *et al*. responds to Plaintiff's December 31, 2015 (2015) package and cover letter and The Accused **PLAINTIFF'S EXH. "K"** (here) had stated the following;

**["] . . . We've reviewed this matter, and are unable to find any use of "Call Calendar" at the locations you noted in your letter, either by Salesforce or by any third parties . . . ["]** (emphasis added)

Despite Plaintiff Kaniadakis mailed packages with various screen shots, and described in the cover letter, with specific The Accused, Defendants' Salesforce, Inc. *et al*. evidence by the U.S. postal service Return Receipts and other documentation that The Accused had been repeatedly in receipt of Plaintiff Kaniadakis' Certified packages, Notice with cover letters to date. Compare/contrast **EXH "K" (here)** with The Accused's Federal Express letter at **PLAINTIFF'S EXH. "I"** (and with all previous documentations) wherein The Accused stated, **"… we have no record of receiving any such letter from you…. "** Plaintiff had expressly stated that all business is to be documented in writing and in the physical mail. The Accused wanted to engage in a verbal debate as represented with "Kiran Belur, *Head of Trademarks and Copyrights*" and asserting the following:

**["] . . . We consider this matter resolved and are now closing our file . . . ["]**

**The U.S. Patent # 8,666,772 (as, patent US-772)**

70.     On **March 28, 2016 PLAINTIFF'S EXH. "L"** cover letter addressed to Mark Benioff, C.E.O, Chairman, President and, The Executive Board of Directors regarding

**(Re:)**[8] Plaintiff's U.S. Patent and Trademark infringing ongoing concerns with contributory infringements including "Call Calendar, Inc." and the mark as, "Call Calendar" is likelihood of causing confusion among other issues and infringement concerns raised in the past documentations about Plaintiff's U.S. Patent and Trademark registrations are not "closed". Documentations continued to express that the infringing content, U.S. Trademark # 4,469,219, Callndr Call, pronounced as "Calendar Call", "Callendar Call", and in association and in a connection to The Accused programs' infringing products and products' technology including but not limited to infringing on Plaintiff Kaniadakis' patent US-772, IC#15. The continued evasiveness of The Accused including Brent Newton having no further Official connections in reference to this matter according to the Texas government, local, and *State of Texas Official records* of *Texas Officials*, together with evidence (as cited to The Accused) of returned mail/packages of the Plaintiff's to Brent Newton and "Call Calendar" from The U.S. Post Office, and The Accused continued contributory infringements with "Call Calendar", *and others*.

71.     On **July 01, 2016** Plaintiff Kaniadakis continued to put The Accused on Notice. Co-Defendant, Twilio, Inc. *et al*. **PLAINTIFF EXH. "M".** Plaintiffs had continued to document, describe, cross-reference, attach past history with The Accused, and outlined comparison/contrasts with attachment documentations.

72.     On **July 06, 2016** Plaintiff Kaniadakis continued to put The Accused on Notice.

---

[8] Recall a time period when matters were essentially distinguished, U.S. Trademark # 4,469,219 therefrom the earliest concerns of infringing behaviors documented on U.S. Patent, 8,666,772, *i.e.*, US-772, IC #15 and related matters.

Plaintiff Kaniadakis' Notice, cover letter, and referenced attachments sent by U.S. Certified mail with Return receipt to Defendants' Salesforce, Inc. *et al*. Other examples were hereby given including TenFold f/k/a "Callinize" App by Phonami, Inc., **PLAINTIFF EXH. "N"**. The Accused infringers' programs' and infringing apps' technology including [9] "Click-to-Call" function-action, infringing element to US-772, IC#15. The Callinize app is on The Accused Defendants' Salesforce's, Inc. *et al*. programs' *AppExchange* Store front and using The Accused programs' technology programs' "widget" [10].

73.     The Accused, Defendants Twilio, Inc. *et al*. Jeff Lawson, C.E.O, C.E.O, and The Executive Board of Directors have failed to make any contact at any time in reply to, in answer to any/all Plaintiff Kaniadakis' documentations. It remains uncertain whether Jeff Lawson, C.E.O and The Executive Board of Directors had properly carried out their due diligence in reporting this impending law suit against them to investors and regulators as may or may not be required in the process of going public and IPO offering, minutes, potential risks, impending risks, so forth, in the Official records. Twilio had completely ignored the answer to Plaintiff Kaniadakis' U.S. Certified packages with Return Receipts Received mailed by physical delivery to The Board of Directors to these concerns.

74.     On **July 29, 2016** The Accused, Defendants' Salesforce, Inc. *et al*. Marc Benioff,

---

[9] Plaintiff Kaniadakis did not coin or "invent" the generic/general expression or phrase "Click-to-Call". Other coined phrases are "Click to Dial". Phrases arise from the outdated generic "Call" buttons. It is a general the way many have described features using the various known apps or "the plurality" voice phone calling using widgets in combination with different known plurality of VoIP in past widgets and programs and in this present case.
[10] Recall numbers 43 and 51 in Complaint. The Accused programs' contributory infringing programs' technology "widget".

C.E.O. and Chairman and, The Executive Board of Directors represented an answer to the two (2) main complaints, U.S. Patent and U.S. Trademark matters. Ryan Cobb, Esq., educated foreign, Spain, stated the following:

**["] . . . we were unable to locate the alleged violations claimed in your letter . . . ["]**

**a.**      **Above;** Reference to U.S. Trademark # 4,469,219.

The above related type statements had been repeated documents Plaintiff evidences.

The Accused, Marc Benioff, C.E.O and Chairman and, The Executive Board of Directors, Defendants' Salesforce, Inc. *et al*. stated the following;

**["] . . . we believe this claim <u>is invalid</u> due to prior art among <u>other validity issues</u>. The <u>information</u> set out in <u>the claim was known</u> in the prior art well in advance of <u>any priority date it can claim</u> . . . ["] (emphasis added)**

The Accused goes on to essentially represent that there is no infringement.

**b.**      **Above;** Reference to patent US-772.

The Accused had made the representations and statements, representative of Marc Benioff, C.E.O and Chairman and, The Executive Board of Directors position, alleging the following;

**c.**      **["] . . . statements failed to identify <u>any</u> Salesforce offering <u>or point out what features</u> of Salesforce products are allegedly covered by the patent . . . ["];**

Despite an extensive, well documented, history of U.S. Certified mailed packages with Return Receipts Received for each and every document confirmed and evidenced by Plaintiff Kaniadakis. The evidenced will identify material The Accused continued to claim they did not get. <u>Refer to other cross-referenced written documented</u>

history attached in PLAINTIFF'S EXBS.

**d.**    Despite The Accused taking the position that The Accused believed there is not

infringement, and there had been not identified or pointed to infringement, The

Accused go on to describe "screen shots" and other material mailed to The Accused

and pertaining to US-772, IC#15 and related infringements;

**e.**    Despite The Accused taking a position that they believe that there is no

infringement; The Accused stated the following;

["] . . . **no specificity or information** describing **Salesforce alleged**

**infringement…** ["]  . . . (emphasis added)

["] . . . **precluding us** from understanding your claims of infringement . . . ["]

(emphasis added)

**PLAINTIFF'S EXHS. "O" and "P".** The Accused's asserted claims were challenged.

**75.**    **On September 29, 2016** Plaintiff Kaniadakis mailed another U.S. Certified

mailed package with Return Receipt Received. Plaintiff challenged The Accused to

prove representations and statements made in The Accused's letter of **July 29, 2016**

addressed to Marc Benioff, C.E.O and Chairman and, The Executive Board of

Directors. The Accused, Defendants' Salesforce, Inc. *et al*. Marc Benioff, C.E.O and

Chairman and, The Executive Board of Directors had **failed** to definitively support,

even substantially support, bold, unsupported, allegations and representations asserting

among other issues, ["] . . . **The information set out in the claim was known in the**

**prior art well in advance of any priority date it can claim** . . . ["] (emphasis added).

Plaintiff had compelled The Accused to prove the statement made. The accused did not

supply one ounce of any proof beyond representative of the weight of the thin, cheap reproduction of paper stationary, poor logo and of questionable origin, on The Accused's letter.[11] In fact, none of the related to representations that were made in the July 29, 2016 were evidenced by The Accused to today's date of the Complaint. The Accused had asserted unfounded and non-evidenced statements on representations made. The Executive Board of Directors gives inferences about The Accused's intentions and good faith intentions. Especially in light of repeated false representations about not getting documents. The Accused continued a pattern and course of conduct and practice of making non-legitimate fabrications, falsehoods, including infringements and other false representations and misrepresentations.

76.     The Accused, Defendants' Salesforce, Inc. *et al.* attempted to intimidate Plaintiff, to cause fear from filing, to  essentially compound or aggravate concerns, and to cause punitive injury and harm or re-victimize the holder of Rights issued by The United States Patent and Trademark Office. Two (2) Official documentations. The representations by and through The Accused Board with the dated July 29, 2016 documented work which had been sent through at least one foreign educated representative of The Accused.

77.     On **November 07, 2016** Kiran Belur appeared to have made recantations about the mark "Call Calendar":

---

[11] On **November 07, 2016** package including Notice to Cure, Comply or Quit, license amount past due, in alternative Cease and Desist was sent *via* U.S. Cert. mail to Def. Salesforce, Inc. *et al.* Bad faith among other concerns were addressed. On **January 26, 2017** Defendants' Salesforce, Inc. *et al.* **Kiran Belur** acknowledged finding evidence of "artifacts" of the U.S. Trademark #4,469,219 remained displaying with The Accused's content and AppExchange. The Accused refused to be licensed and refuse to pay for the past three year term. The Accused had not given any time line requested to halt infringing on the mark or on the patent US-772.

**a.**      The Accused Defendants' saw that Plaintiff had in fact "specifically" and had repeatedly "pointing" to remaining issues. The Accused had noted what Plaintiff had (repeatedly) pointed out;

**b.**      The Accused Defendants' recantation is also Plaintiff's further evidence, in part, against representations which The Accused had inconsistently attempted to pass off and had documented.

**c.**      The Accused did not take or engage with proper steps in order to utilize The Accused Defendants' resources so as to truthfully mitigate, mediate and assist Plaintiff to address and to remove essentially abandoned, unaccountable, or otherwise "free" content including a connection to U.S. Patent and Trademark issues available to the public.

**d.**      The Accused Defendants' Salesforce, Inc., *et al*. had taken and had acted;

   **i.**      upon information and belief, an early defensive posture (against) U.S. Patent and Trademark Official documents, and;

   **ii.**      upon information and belief defensive and tending to be a posture against issues relating to Plaintiff Kaniadakis' U.S. Patent and Trademark issues.

   **iii.**      upon information and belief continued to aggravate issues, and in the face of truth, despite in light of the history, The Accused had continued to parse responsibility. Plaintiff had continued pointing out the evidence that; although the names changed from **Brent Newton** to one named from **India, "Chirayu Doshi,** Proprietor at Spruha Technologies", and

the name changed to "Bulk Manager", there remained connections to "Call Calendar" to cause a likelihood of causing confusion as outlined previously herein.

iv.   The internet connection, interactive web connection links continued to mask forward to The Accused from:

## www.callcalendar.net

https://appexchange.salesforce.com/listingDetail?listingId=a0N30000009ws3aEAA

**Above;** Link will hide (origins) designation(s) from/to mask forward, pointing to and redirecting to the referenced interactive web connections outlined, above. The issue is including source, origin of designation in reference to Plaintiff Kaniadakis' intellectual property.

e.   The Accused Defendants' Salesforce, Inc., *et al.* continued inducing and/or infringing acts, but not limited to contributory infringement, with continued use by including displaying, applying, and referencing the name "Call Calendar" remained at several points on The Accused interactive web internet application.

f.   The Accused in a connection to infringers is including other forms of infringement, inducing and contributory as material remained made available to the public. As outlined herein, serving to continue acting among other concerns, as meta tags, key words, and other false identity concerns. Tags, keys words, that link to a "closed" loop ("inside" the site) and "open" loop search engines ("outside") the interactive web internet and online connections. The Accused have a likelihood of improperly and unlawfully gaining advantage over the Plaintiff, profiting from or

otherwise made available to the public causing harm, injury, punitive, and/or

damages in judicial district and judicial jurisdiction[12], MD of Florida, Tampa Div.,

in other ways to be further uncovered with further discovery in this case.

78.    With a reference back to **PLAINTIFF'S EXH. "N"** is one small instance of The

Accused programs' infringers' and infringing products' technology connections

becoming infringing on patent US-772, contributory infringers and inducing

infringement. For example, Defendant Twilio is complementary by contributing and

inducing such program technology for "Callinize" app to become working. Twilio does

this essentially by use of a Twilio "widget", Twilio calls "TwiML".[13] "Callinize" app

on/inside [14] Salesforce's CRM programs' could be using "TwiML" further including

and enabling (the complementary) programs using co-Defendants' Salesforce, Inc. *et

al.* programs' and infringer Salesforce "widget". The classic instance is involving the

basic patent US-IC, #15 and feature or element which is invoking the known plurality

of voice phone calling programs (Twilio's VoIP program), on the new program

(Salesforce's CRM program) further including and enabling said voice over internet

protocol including as an extension, add-on and plug-in for the database on the computer

(so apps are being used locally, on the client's or user's computer). Therefore, using

The Accused programs' in association or in a connection to infringing products'

---

[12] A further reference made to Plaintiff's statement pertaining to **Jurisdiction and Venue** subsection herein.
[13] However, the Twilio program has its own widget which is working as a Click-to-Call operation, function-action infringing on patent US-777, like on patent US-772, IC#15.  Other programs' technology of the Twilio program has outdated "Call" button function-action with.
[14] Without Defendants' Salesforce programs' Twilio could enable the action-function "outside" Salesforce program. For example, on Google search page program application (app) including calendar related implementations and the plurality of various other program applications and, etc. Patent US-772 described, 'external programs'.

technology they are infringing on patent US-772, IC#15, in this example.

79.   Callinize is converting by way of Twilio and the new program (Salesforce CRM) a listing of phone numbers into interactive phone numbers (interactive electronic command graphic) on the "object" target program interface (interacting on Salesforce and enabling the "Click to Call" action-function).

80.   Invoking the phone number for making each telephone call by the client (user or customer's end) and the action-function appears to be invoked (voice phone calling) by client configuration using "Callinize" app.  However, really, behind the scenes, are the combination with different types of programs, such as, The Accused programs' (Salesforce's CRM, Twilio's voice programs) infringing products (widgets, such as, "TwiML") and products' technology ("Callinize" app).

81.   People could change the app they use on Salesforce. Since, Salesforce enabled apps to be changeable by the client.

82.   People could change the app they use for "voice" (VoIP) from the plurality of known electronic (internet) voice/message programs. Twilio had been mentioned. The known plurality of electronic (internet) voice/message programs are listed later. Another is the "MiTel" voice app. Therefore, invoking the interactive phone number will virtually be calling using the same method on the visual side of the computer's "front end" of the Salesforce CRM interface by way of "Callinize". However, really, behind the scenes, are the combination with different types of programs, such as, The Accused programs' made changeable for using "MiTel" (Salesforce's CRM, "MiTel" voice programs) infringing products. MiTel's "widget" is used for hooking up to "Salesforce's widget".

Salesforce's "widget" is working by what Salesforce calls *"Visualforce"*. The widgets are essentially behind The Accused programs' infringing products and products' technology, which enables, inducing and contributing "Callinize" app product, *and others*, to be working on/in The Accused programs'.

83.     Therefore, Salesforce's program offers by way of Salesforce's AppExchange Store ("AppExchange" tantamount to "making changeable" apps). One is branded and commercially labeled with the name "Callinize". Also, named as "TenFold". This is one (1) among Sixty (60) apps on Salesforce's AppExchange Store, which is using more than one app in combination for making each telephonic call by the client in the configuration, making changeable by Salesforce's online AppExchange Store of apps.

84.     Once inducement and contributory infringers are on/in The Accused programs', then the client accessing The Accused programs' and related programs' technology infringing products/services could move "off" or "outside"[15] of The The Accused programs' screen display from the client to the (next, object target the) "new" program which the client configuration (using widgets on The Accused programs' "object" target) accessing the database of the client to other object target programs "off" or "outside"[11] from The Accused programs' interface to object target program including appointment book related screens, calendars, schedulers of event chronology implementations, the same function-action by The Accused programs' inducement and contributory will be working on the various other program applications and web site applications as the function-action on The Accused programs' application site and

---

[15] Kaniadakis' patent US-772 also described, 'external programs'.

screen display (CRM).

**85.**     The Accused, Defendants' Salesforce, Inc. CRM program uses or implements a browser "window" on the screen display. This will be outlined with more particularity later. For now, briefly described as the browser (*e.g.*, Google Chrome browser) will run or open in the CRM's margin. Just like one might open a new tab or browser page on the computer using the *Google Chrome* browser application.

**86.**     The Accused are practicing the art and teaching the practice of the art described with US-772, IC#15. The Accused are not authorized, licensed or given any permission from Plaintiff Kaniadakis to practice or teach the art. The difference is that inducing and contributing the client infringement by thinking that The Accused widgets including, but not limited to, "TwiML" and "Visualforce", widgets are the magic ingredients, components, elements, parts, steps, things including widgets. The people take their act on the road, and move off and outside Salesforce CRM (patent described, 'external programs'). However, The Accused benefit from gathering data, collecting revenues, among other advantages over Plaintiff Kaniadakis, in the event people using products' technology from off and outside (patent described, 'external programs') on sites having essentially origins from The Accused programs', Defendants' CRM program application, for example. Gathering "contacts", for example, phone numbers, electronic message/mail information.

**87.**     Callinize, *and others*, using The Accused programs' infringing products and products' technology also including known plurality of other "voice" and other electronic message programs for the apps. The Accused, co-Defendant Twilio and

"MiTel" was mentioned; *and others*, including but not limited, to "Genesys". This app

is on The Accused AppExchange Store front as well. **PLAINTIFF'S EXH. "D-1"** is a

listing of other programs in connection to contributory infringers and The Accused

programs' infringing programs' technology. Please refer to **EXH "D-1"**, some

including CISCO, Twilio, 8x8 Office Suite, Genesys[16], Genius, InGenius, Telefonica,

MiTel, ShoreTel, Fonality, RingCentral, InsideSales (Strategic ISV Partner to The

Accused), Microsoft's Skype, Other "Skype", Google Hangouts, Others using

"Hangouts" brand, white labeled apps, Avaya, *et al*. Over (plus), "+100 more" (as per

Tenfold/Callinize) most listed here just in reference to at least (1) one contributory

infringer resulting from The Accused, such as, "Callinize".

88.     The Accused could be connected to the above referenced providers. Each

voice/message provider app product can have a multiple number times at least the Sixty

(60) or more of the identified on The Accused Defendants' Salesforce's, Inc. *et al*.

AppExchange Store front list **PLINTIFF'S EXH. "D"**. "Tenfold f/k/a Callinize App

by Phonami, Inc." and Call Calendar, are just two (2). More particularity as to US-772

the method and side by side comparison to The Accused will be outlined later.

89.     The Accused are made for sale or otherwise available to the public these apps *via*

the internet, jointly and severally identified infringers. The Accused, parties, jointly,

severally, or in the alternative with respect to or arising or flowing out of the same, and

using online stores of apps on the interactive internet websites application (app)

program sites.

---

[16] Interactive Intelligence, Inc., Indiana Head Office, was reported to have been acquired by Genesys, Inc.

90.     The Accused have a likelihood of causing confusion among the plurality of people and the apps made available to the public *via* The Accused programs' interactive web applications and web site application (pages, links, addresses, domain). This matter becomes furthermore an aggravated factor in the event wherein there exists history including ambiguity and false reported identification(s) of the products/services in a connection to The Accused. The fact that The Accused, namely Defendants' Salesforce, Inc., *et al.*, have been repeatedly put on Notice about at least one The Accused programs' infringing products' technology (*e.g.*, "Call Calendar") applying, bearing, displaying false designation(s) and legal identifying names/marks. Notwithstanding, in the face of infringement allegations and Notice, The Accused continued to publish the infringers app, content and in a connection to The Accused.

91.     The Accused, namely Defendants' Salesforce, Inc., *et al.*, have been repeatedly put on Notice about at least one The Accused programs' infringing products' technology (*e.g.*, "Call Calendar") applying, bearing, displaying false designation(s) including, but so as not to limit to, the interactive internet domain name www.callcalendar.net is pointing back to The Accused programs' interactive internet connection link. A loop. This is a type of masking. To mask forward the electronic web site link.

92.     The act of "masking", as in to "mask forward", an electronic address connection (web application, link, site) is to hide the designation of the origin or original electronic address' connection to the location of the site. Mask forward technique can be in use in lawful ways. However, in Complaint, with context and in cumulative effects, to mask

forward is to casts doubt on true intentions of The Accused programs' and infringing programs' technology contributory to infringement set forth in Complaint.  Certainly, the effect is not so as to be enlightening as to identity among other concerns in Complaint and in relation to Plaintiff's history of efforts providing and maintaining well documented material. In light of the fact that Plaintiff evidences, among other evidence, returned U.S. Certified packages and physical mail. Despite the fact that Brent Newton was kindly informed that the package was sent to his physical address displayed on The Accused programs' connection. Also, Plaintiff Kaniadakis had sent to Brent Newton and/or "Call Calendar" by physical mail to other known addresses that had been otherwise made available to the public.

93.        Clicking the www.callcalendar.net link displayed on the AppExchange Store reverts back to The Accused programs' electronic web site address. People in the public that put the name www.callcalendar.net into the address bar of a browser application, like Google search, will mask forward the electronic address back to The Accused programs' web site link, Defendants' Salesforce's, Inc. *et al*. AppExchange Store. A market place for program applications made available to the public. This has a likelihood of causing, among other matters, confusion, conveying false designation and deception or deceitful intentions as above named The Accused, Defendants' with Plaintiff Kaniadakis' quality of the sources' products; namely, patent US-722, and at least one of The U.S. Trademarks # 4,469,219.

94.        At some point in history and at no avail or assistance from The Accused, "Call Calendar" changed owner/management to people/entity locations of **"India"**, as

"Chirayu Doshi, Proprietor at Spruha Technologies", rather than residing as reported,

Texas, USA, and to "Bulk Manager". Plaintiff Kaniadakis had continued to point out in

Notice to The Accused, cover letters and attachments, that the name "Call Calendar"

still remained, residing and displaying, on The Accused programs' at certain key

locations. This has a likelihood of causing confusion, among other matters in

Complaint, with "meta" tags, key words, and online interactive web site search results.

The remaining "Call Callendar" has the continued likelihood of misleading people in

the public, among other concerns, to The Accused programs' and true ownership

description.

95.      The manner that The Accused imports/exports electronic material including the

programs to/with/for, including but not limited to, the country and peoples in

association to/in a connection to **"India"** will become further outlined after discovery.

**"Chirayu Doshi,** Proprietor at Spruha Technologies" had a broken website link for and

related to "Spruha Technologies". Some unclear connection and evidence discovered

on "Linked-in" site.

96.      As Plaintiff Kaniadakis will pray for This Court enjoin to discovery of legal and

factual matters, since The Accused had either refused, ignored and/or not complied with

Plaintiff's requests. For example, the repeated statements related to The Accused

relating to no evidence to Plaintiff's Notice, cover letters, and/or attachments. Despite

Official U.S. Post Office Return Receipts and other evidence attached and described in

Complaint. It is likely and/or at least plausible The Accused is acting in/with Bad Faith

Business Practice Acts, including Unfair Business Practices, Advantage, Competition,

among other matters in Complaint.

97.     As Plaintiff Kaniadakis will pray for This Court enjoin some relief, restraining

orders, injunctive, temporary, preliminary until which time The Accused will comply

so as to not impair and/or obstruct or otherwise any/all preliminary discovery deemed

required to/for the advancement of matters material to Complaint including but not

limited to producing code and access material related to methods and programs' access,

which is additionally needed to give 100% side by side companion/contrast to

infringing behaviors and each The Accused programs' participating roles.

98.     People using any of the other apps with parts of a method described above will

have the action-function as described by Plaintiff Kaniadakis and patent US-772,

IC#15. Although "Call Calendar" does not say it is a "Click-to-Call" type app, The

Accused have a means which is enabling and inducing and the client accessing, each

the app users, and others to use the action-function "Click-to-Call" as though it is a

feature of The Accused programs'. For example, the name "Call Calendar" app will be

working with at least the same minimal functions-actions as described. Therefore,

names "confusing similar" as Plaintiff Kaniadakis' U.S. Trademark # 4,469,219 have a

likelihood of causing confusion among other issues of U.S. Trademark violations of

law, false and/or misleading origin of designation, among other acts against the law by

the infringers. **15 U.S. Code § 1125 - False designations of origin, false descriptions**.

**["] . . . Make phone calls to prospects or clients. . . ["].**

Above; the quote taken from "Call Calendar" page on The Accused Defendants'

Salesforce's, Inc. *et al*. "AppExchange" App Store front. The statement above had

caused compounding and aggravating effects, because the name and the mark now providing the correlation in a connection function-action, patent US-772, IC#15. The Accused are contributory infringers by use of a name confusingly similar to the known mark # 4,469,219 registered and issued both by The U.S. Patent and Trademark Office Official records. The name is likelihood of causing more confusion with cumulative effects, aggregating and aggravating factors, because "Call Calendar" is in use and in combination of the names', Callndr Call and Call Calendar and relation to, on The Accused programs' and CRM for instance, to result with the same, function-action. The Accused programs' working substantially similar and/or substantially the same or the same action and function in the event that the "Call Calendar" program is running or working on The Accused's program or web application site.

99.     The Accused's program has means for enabling at least two (2) programs result in programs' working substantially similar and/or substantially the same or the same action and function in the event that the "Call Calendar" program is running or working on The Accused's program or web application site. The method by patent US-772, IC#15 (and/or other programs infringing on the parent or reliant claims will be presented later) will be outline to show at least plausibility. The probability of the result of the actions-functions will be outline with more particularity later.

100.     Discovery shall reveal the method on side-by-side comparison/contrast. As some of The Accused programs' and programs' technology infringing "widgets" or "gadgets" are not 100% publically evidenced. For extent of infringing acts in some cases. The Accused means for producing infringing products' results and/or products'

method disclosed with the widget and other material are infringing, will infringe, and have a likelihood of infringing based upon information and belief gathered to date. There is a difference. The products resulting from the method(s). The Accused programs' products are resulting from the method. Plaintiff Kaniadakis' patent US-772 and US-772, #15 is the Method Claim and products therefrom.

101.    Hence, various Plaintiff Kaniadakis controls the market, but not limited to, use of the U.S. Trademarks identifying the practice of the art and the method which result in the products thereof.

102.    The Accused are contributory to acts of being misleading, deceptive, misrepresentation, with conveying false origin and description of Plaintiff Kaniadakis' patent US-772. This matter becomes compounded by other false, misleading origin representations displayed on The Accused programs' web application site. The Defendants' Salesforce, Inc., *et al.* was repeatedly put on Notice by Plaintiff Kaniadakis' documentations that "Call Calendar, Inc." did not truly exist, ever, according to the *State of Texas* Official records. Furthermore, the physical address was defunct, and no forwarding address or information was publically made available about Brent Newton and or the name "Call Calendar". The Accused had nothing to report or add. Quite the opposite in fact, as The Accused, Defendants' Salesforce, Inc. *et al.* would go on record as a public trusted incorporation to assert ignorance about the programs they participate with on their site in connections and hosted (electronic voice/message) with/by jointly and severely The Accused, Twilio, Inc. *et al.*

103.    Defendants' Salesforce's programs in association and/or a connection to

programs on "AppExchange" Store front for "Call Calendar, Callinize", *and others*.

Apps which tending to be essentially serving and each client accessing each computer

*via* The Accused's market place and The Accused programs' (*e.g.*, CRM for Defendant

Salesforce, voice and electronic messages for co-Defendant Twilio) other made

available, promoted and offering for sale types of features, types of actions-functions

thereof. The Accused were made aware of these contributory infringers, and among

many other infringement concerns. Although, the app owner, Brent Newton, has

reported it was just an app to move phone numbers around, there is a likelihood of

causing confusion, "Calendar Call" or "Callendar Call" and "Call Calendar" is

confusingly similar. Plus, the action-function has been evidenced on the infringer's site.

The Accused's program has means for enabling the two programs result in programs'

working substantially similar and/or substantially the same or the same action and

function in the event that the "Call Calendar" program is running or working on The

Accused's program or web application site. The infringements as for U.S. Patent and

Trademark claims are substantially flowing from, related to, and arise out of the same

or substantially the same or similar common facts and are therefore subject to

applicable principals. The contributory infringement has a likelihood of causing

confusion about the product's source, the product technology's origin of designation.

People will think that "Call Calendar" is the method described by Plaintiff Kaniadakis'

and with patent US-772, IC#15. People will think that U.S. Trademark # 4,469,219 is

the same as Plaintiff's description fashioned by the logo, which may be pronounced by

people as "Calendar Call" or "Callendar Call". The logo mark in itself is identified by

Callndr Call. The mark is designed to have creative twist by the owner, Plaintiff

Kaniadakis. People may describe it when pronounced many ways, two as mentioned.

**104.**     More particularity as to US-772 and the method side by side comparison to The

Accused will be outlines later. The Accused have essentially the same means of

hooking up as do contributory infringers. Mechanisms or means for the hook inducing

infringement are including but not limited to employing tools resulting in contributory

infringing activity. Some of the *technical words or terms*, such as, but not limited to,

tools generally known programs or implements called the "Connector" or the

"Adaptor". A "Call Control Adapter (CCA)" is one such tool. The Accused are

utilizing what they refer to as "Open" *type* "Compute Telephony Integration" (CTI).

Therefore, the tool "Open CTI". The Accused have been inducing greater numbers of

infringers *via* Open CTI. The Accused call it "Open" to inducing more infringers to

think it is free to cheat by such means for connecting apps to other programs, *e.g.,* for

electronic voice and electronic for messages, and more.

**105.**     **PLAINTIFF'S EXH. "S"** shows The Accused Defendants' Salesforce, Inc. *et

al*. programs' infringing programs' technology contributory infringers' "widget", in a

connection to Salesforce's "Visualforce", **"S-1"**, converting *via* the new program a

listing of phone numbers into interactive electronic commands or a command graphic

therefrom scripting and displaying on the object target program interface (*i.e.*, The

Accused Defendants' Salesforce's programs' CRM screen display). Component[17] (c)

---

[17] Component, element (or part) in terms of the method, these are all meaning the same. These are describing
aspects or features of the method.

patent US-772, IC#15[18]. **EXH. "S-1"** showing how an element of Plaintiff Kaniadakis'

method patent-US-772, IC#15 will display the converted phone number and displays

evidence of Plaintiff Kaniadakis' mark, in this example the registered mark as "Talking

Head" graphic art logo design. In the event that this was infringers' programs', then this

element could likewise produce the other programs' logo and tool tip here. For

example, in the event that this had been "Callinize" program then here would be

evidenced as "Callinize" program's logo. The component (element) in the method is in

a connection to The Accused program's infringing technology program enabling the

"Callinize" program's app working here. This is not simply enabling the trademark,

logo, identification of programs at work in this component (element). This is a

component (an element) The Accused programs' infringing products and products'

technology uses for replicating or "rendering" the component (element) described in

**patent US-772, IC#15, component** or element **# 15(c).**

106.        The Accused programs' infringing programs' technology is said to be called an

"Open CTI". Genesys, Inc.[19] producing functions with an app called "PURECLOUD[20]

for Salesforce", which among the app samples of The Accused programs'

AppExchange App Store, **EXHS. "D"** and **"D-1"**. The Accused programs' inducing

---

[18] Basic comparisons to patent US-772 presented first. Introducing certain components at this time is easier to show. The method will be shown with component (element) in the method later. In order for describing all the components of patent US-772 with the compared side by side to The Accused later. Thus, all components of patent US-772 following an overview on showing certain components of The Accused programs' connection with infringing programs' technology. Ultimately, The Accused components are producing the product, which is resulting in the same function-action as in patent US-772 method. The Accused products are working the same and/or substantially the same method. However, the process is making results, that is, a product with the same, substantially the same, substantially similar product/process. The method working substantially similar and/or substantially the same or the same action and function in the event resulting as with patent US-772.

[19] "Interactive Intelligence" was acquired by Genesys. Exhibits may reference a combination of names, by company names and by app names for each.

[20] "Pure Cloud" and "Engage" are uses by Genesys, Inc., *and others*.

behavior on Genesys.

107.     "Genesys" advertises the app as the "Sales Cloud and Service Cloud Call Center CTI integration[21]". **PLAINTIFF EXH. "T"** shows The Accused inducing Genesys to add the component in the patent US-772, IC#15 by way of The Accused programs' interactive web link. The Accused programs' component for "Open CTI (Visusalforce) or Salesforce CRM Call Center" enabling Genesys' app program's "Call Center CTI integration", because The Accused programs' infringing products and products' technology are connecting or hooking by way of an "Open" CTI, which The Accused is offering with components to result in products from the method in patent US-772, IC#15, in this component and example, contributory infringers on this component. "Genesys" is induced into infringing **(US-772, Independent Claim 15.)** . . ."when utilized in a combination a plurality of **known type object target programs,** the client using a new program **computer code scripting,** performing, executing"… "The known type object target program" is The Accused programs' CRM. The "computer code script" is the component US-772, IC#15 **(c)** contributory infringement, The Accused programs' infringing programs' technology, at **EXH. "S".**  The Accused programs' site called Salesforce's *Visualforce* reads as following way:

     **["] . . . This example displays the click to dial component . . . ["]**. Above; The Accused's statement. When the exhibit is display screen online "live" the function-action is demonstrated by an exacting reproduction, rendering, produced product as US-772, IC#15 as evidenced with Plaintiff Kaniadakis' U.S. Trademark called

---

[21] Compute Telephony Integration (CTI). Differentiate "Open CTI", from The Accused.

"Talking Head" logo graphic art design, which is one of Plaintiff Kaniadakis' products that has the origin of designation described from the source, U.S. Patented technology #8,666,772. It is not the rendering of the graphic art design(s) or logo that is central to the US-772, IC#15 infringement. It is the action-function of turning the phone number into an interactive command that is interacting with the plurality of programs.

**108.**    Samples of **PLAINTIFF'S EXHS. "S" and "S-1"** described with the following:

**BEFORE;**

```
1  <apex:page standardController="Account" showHeader="true">
2      <support:clickToDial
3          number="415-555-1234"
4          entityId="001XB000000HFUM"
5          params="myparam1,myparam2"
6      />
7  </apex:page>
```

**AFTER;**

```
1  <apex:page standardController="Account" showHeader="true">
2      <support:clickToDial
3          number=" 415-555-1234"
4          entityId="001XB000000HFUM"
5          params="myparam1,myparam2"
6      />
7  </apex:page>
```

**A RESULT**[22]**;** Result is Plaintiff Kaniadakis' U.S. Patent and Trademark displayed on The Accused. The mark will dominate the "scripting" (code) and becomes populated by Plaintiff's. Producing the exactly the same results. A difference is that the programs' technology is producing a product with a different logo. Or, no logo mark at all, such as, a so called "white labeled" product or programs' technology could result as displayed. Plaintiff Kaniadakis had continued use with a red color to help identify his logo mark. In the event depicted in these screen views, blue phone numbers from The

---

[22] Red box is a sketch art added by Genesys' illustrating the product.

Accused programs' infringing programs' technology. This demonstration is not about color or Plaintiff Kaniadakis' U.S. Trademark. This is about patent US-772, IC#15.



**AFTER, WITH INTERACTIVE NATURE, ACTION** (<u>underscored</u>)**;**

```
1  <apex:page standardController="Account" showHeader="true">
2    <support:clickToDial
3      number="415-555-1234"
4      entityId="001XB000000HFUM"
5      params="myparam1,myparam2"
6    />
7  </apex:page>
```

<u>**Above US-772, IC # 15;**</u> element, component **(c) "**<u>**Phone numbers into interactive electronic commands or a command graphic therefrom the scripting**</u>**"** [. . . **Evidenced** . . .] <u>**"and displaying on the object target program"**</u>. The Accused programs' "screen display" or "interface" resulting with a list of phone numbers for each phone listing of each the phone numbers. The screen shot is MiTel, Inc. products among others called, Pure Cloud, Engage for Salesforce, MiVoice, and Head Office in Ontario, CANADA. Therefore, "Callinize" as mentioned, Head Office in Austin, Texas could also be using this for "voice" component, *and others*. For another example, "Callinize" in combination with "Genesys Pure Cloud for Salesforce", by Genesys, Inc. and Head Office in Daly City, CA, U.S.A. Genesys related "apps" also working jointly and severely. **EXH. "T"** is typical of The Accused programs' causing infringements.

Thus, The Accused programs' infringing "component" contributory infringing program's technology (above) and inducing each infringement. Defendants' Salesforce's Inc. et al. has another known program "app", which becomes in a connection to a few samples outlined thus far, in these events infringers are using a "widget" a/k/a Defendants' Salesforce's "Visualforce". This is serving as a means for contributing and inducing infringing behaviors, which has become known and evidenced to be working in the samples above. When the actions-function are known to be working on The Accused programs' then the patented technology patent US-772, IC#15 will be working to produce the same results on virtually all, events, all the known plurality of objects' target program's "screen display" or "interface". Above is computer program code or script, is "scripting" to cause the action-function. <u>EXH. "T"</u>.

109.    <u>**Above US-772, IC # 15;**</u> element, component **15(e)** marked above as, The result is<u>. . .**"invoking the command graphic for making each telephonic call by the client in the configuration"**</u>. . . **[Evidenced]**. Red embodied element by red sketch art added as *Genesys* app had illustrated on a live screen display. People contacting using the tool for making contact. Reads on the Method's Body <u>. . . **"in contacting and communicating with a plurality of people"**</u> . . . setting up the component identified at **#15 (e)**.

110.    "Genesys" and "Twilio" apps are just to identify a few among massive numbers of apps in connection to The Accused including but not limited to "Callinize" *and others*. All accessing patent US-772, IC#15 and/or reliant claim(s) *via* The Accused and <u>. . . **"for making changeable to another known type of voice-over-internet-protocol**</u>

**using the combination with different types of object target programs making each**

**telephonic call**". . . Callinize had been enabled *via* The Accused to change to Twilio,

Genesys *and others*. Other massive number apps on Defendants' Salesforce's

programs' "AppExchange" Store front *via* Salesforce programs' and "Visualforce"

programs' technology, and in connection to The Accused programs' website

application pages, have continued to be causing, inducing and contributory, infringers

on many fronts in the technology war. The Accused are included in the patent U.S. 772,

IC#15 infringement among other claims. **EXHS. "U"** includes claims chart.

111.     The Accused programs' widget, Visualforce, adaptors, connectors, CTI, Unified

Communicator (UCA), *etc*. is in the demonstration in these samples are, in general:

**a.**   not infringing by rendering the Talking Head® name or logo or graphic art design;

**b.**   not infringing with "clicking on" any logo mark as the "graphic"[23]

**c.**   not infringing by only connecting or providing a means using, enabling, a single of

said plurality of known voice over internet protocol;

**d.**   not infringing using VoIP on The Accused programs' interface, screen display, like

on/inside Defendants' program CRM or enabling use of the single VoIP program,

which Defendant Twilio among others, can offer;

**e.**   not infringing by one program working on another (one and another)

112.     Components read on literature, which is more than sufficiently described, and

abundantly with by corresponding literature of The Accused and by contributory

---

[23] Patent US-772 with specific reference to IC#15 and the patent described turning phone numbers into "interactive electronic commands or the command graphic therefrom scripting". Further including and enabling the command graphic element interacting with the known plurality of VoIP. Therefore, distinguishing infringing behavior, in general, so focus on actual infringing elements.

infringers' inducing/induced evidenced behavior and virtually all exhaustingly described the same path and the same results. **EXH. "W"**. Refer to PLAINTIFF'S exhibits including videos, text, illustrations, sample code, promotional materials, advertisements, website pages, other instructional/informational, technical materials, datasheets, user manuals and guides. **EXHS. "D-2, D-3, D-4"**, representative samples.

113.     *Except,* patent US-772, IC#15 is considered "software" or program related invention. Technically, The Accused programs' infringing programs' technology are charged with producing infringing and inducing machines, equipment, hardware of the client and users related to the programs at large.

114.     Since, The computer program's (software's) effects are substantially tied to the equipment/hardware of the "client" or user; **patent US-772, IC #15** the body of the method claim recites . . . **"a client using a plurality of known voice of internet protocol"**. . . [*Twilio*, *Genesys*, *MiTel*, *et al*.] **. . . "in contacting and communicating with a plurality of people". . .** [different kinds of people not just in relation to the program' function or contacts thereof] **. . . "the voice-over-internet-protocol implementation when utilized in a combination a plurality of known type object target programs, the client using a new program computer code scripting"** . . . ["the combination", composite work, mixing/matching or pairing a set of apps working, functioning, actions on/to/with different types of existing, known, programs]. Therefore, in this event a known VoIP, a known "app" programs' technology to be causing to work and/or setting up of an effect on/with/to The Accused programs' CRM, for instance, the display screen of the CRM in this instant sample event. This is in

integration with an initial (default) configuration, setting up the known programs using a means for working and infringing against the rights of US-772, IC#15 for example.

The Accused programs' programs' technology is infringing and causing infringement as with contributory infringers of patent US-772, IC#15. The "widget" exhibits is including and contributory to at least one identified "component" of patent US-772, IC#15. The Accused programs' "Visualforce" exhibits are including and contributory to at least one identified "component" of patent US-772, IC#15. Like the blade on the wind shield wiper or the motor mechanism attachment(s) of the invention, which the motor utilizes in the invention's patented[24] action-function. **EXHS S, "S-1"**.

115.     The Accused infringing, enabling and contributing infringers including but not limited to "Callinize" app. Twilio, Genesys, MiTel and others are known to be using "Callinize" apps' programs' technology and The Accused programs' technology and *visa-versa*. Accordingly, The Accused programs' including Salesforce's CRM user interface "screen display" using each contributory infringers' programs' program technology.

116.     "Call Calendar" would be infringer of at least one claim parent of patent US-772, IC#15. In the event people are using The Accused programs' and related programs' technology. In this case, Call Calendar presently as The Accused enabling and contributory to infringement with reference to U.S. Trademark #4,469,219. However, the "Call Calendar" case demonstrates ways infringing on the mark has many issues by

---

[24] It may not be the back and forth *to and fro* action of the mechanism and motor's at the heart of this inventiveness. However, in this sample, the tool is the combination of known elements. Recall, US-772, IC#15 is The Method Claim, not necessarily as product, and not just the design.

Trademark statues and law. In the event people have a likelihood of using The Accused programs' and programs' technology infringing on patent US-772, IC#15 then by inference remains The Accused are causing a likelihood of U.S. Patent and Trademark infringements by inducing, contributing and directly infringing methods. Evidenced is the fact that The Accused was confronted in the face of U.S. Patent and Trademark infringements. Notwithstanding, The Accused ignoring packages sent by U.S. Certified mail with Return Receipts Received letters and/or relating to claims about not getting the packages which Plaintiff had mailed. The Accused disputing The U.S. Post Office and The U.S Patent and Trademark Office. The Accused in light of the facts taking these risks appears unconscionable, or with a greater degree of intent, bad faith and malleolus in light of history set forth in Complaint. **EXH. "H"**. **EXHS. J, "G" to "P"**.

117.     US-772, IC#15 is involving and including the transformation of the computer or computing equipment/hardware (device) into a telephone, *except* by way of making essentially (random, unknown) listing of phone numbers connect to the computer. The function is not necessarily the phone number list, which the client or the user of the computing device had input into in making a directory or phone listing in the memory of the phone. Voice of internet protocol (VoIP) turned computers into phones. *Steve Jobs*, *Apple (MAC or Macintosh)*, essentially came about face, and his action was known to be to turn a phone into a computer. The United States Patent, US-772, IC#15 does not essentially claim to have invented VoIP; Program' technology of "voice" are among the "<u>known plurality of</u>" VoIP recited with the body of the Independent Claim (IC#15), patent US-772. Even though *Apple* phones could now visit the internet of

things. In the event an end-user goes to a web site application. They now are accessing the internet, the web site. However, the end-user could not push on a phone number making the voice phone calling action to that number (phone numbers). The set had to be on the memory in the phone on the pre-programmed (input) of the users' directory. Or, the event and action did not happen. Retroactively, end-users, users and makers had to add on a way. Installation using an after-market modification part to and part with the machine and engine running the things. Like an automobile, except as the wind-shield wiper part's action. Therefore, a "Call" button[25] was created. However, the "Call" button was still pre-programmed to "call" the phone numbers. Phone numbers resided in the memory, calling the database of the users' add on to the computer. The action would have an effect on the particular users' screen displays, interfaces, which the end-users' may[26] visualize on the "front" end, that is, the "face" or the user's "end" people (end-users' may see, a visual end). Magic of computing is action on the so called "back" end, or server side end of things. Programming is not all readable. Program code is also so called "machine code". Humans cannot easily and accurately read, write and interpret all the code by machines.

**118.**     The Accused infringement, inducing and contributory infringers, enabling infringers to move, import/export programs' technology to/from website application sites, web "app";

---

[25] This had been a/k/a "Call Me" button. US-772, IC#15 does not either use the action of the "button".
[26] Ways people see the visual end "may" vary. For example, a browser application displaying the user interface may display the screen differently. Add on features furthermore can change the screen display or interface "configuration". To customize is to essentially effect the "configuration". The way we see the end and the way the end functions on the end of the end-users, and on the clients' end of the screen displays. How people visualize or see things is, in general, by way of end-user and/or called "user based permission".

a.  "inside" of The Accused programs' screen display or interface, e.g., apps'

components enabled (in/on/for) CRM for Salesforce, Inc. *et al.* and electronic

voice/message elements of patent US-772, IC#15 and/or parent of IC#15;

b.  "outside" of The Accused programs' screen display or interface, which patent

described, 'external programs', e.g., apps' technology components (off/outside/of)

CRM for Salesforce, Inc. *et al.* and electronic voice/message elements of patent

US-772, IC#15 and/or parent of IC#15;

c.  "inside" of The Accused programs' screen display or interface, e.g., apps'

technology components (in/on) website application sites, web "app" and/or

platform program application ("app") Twilio, Inc. *et al.* and electronic

voice/message elements of patent US-772, IC#15 and/or parent of IC#15;

d.  "outside" of The Accused programs' screen display or interface, e.g., apps

technology components (outside of/off of) website application sites, web "app"

and/or platform program application ("app") for Twilio, Inc. *et al.* and electronic

voice/message elements of patent US-772, IC#15 and/or parent of IC#15;

**119.**    The Accused programs' infringing products and products' technology are

working "outside"[11] The Accused programs' interface as the programs' infringing on

patent US-772 **#15(b)**. . ." the client via the new program a configuration accessing the

database of the clients computing device enabling  the known voice-over-internet-

protocol on the object target program including appointment book related screens.

calendars, schedulers of event chronology implementations **[,]**". . .



**Above;** The Accused programs' resulting actions on "external" programs using

infringing technology. **Below;** US-772 IC#15 including "calendar".



120.     The Accused programs' infringing products and products' technology are working "outside"[11] The Accused programs' interface. A sample of this is involving the programs' apps and "widgets" of "Callinize" **(upper screen view)** and patent US-772 **(lower screen view)**. Plaintiff Kaniadakis' Talking Head U.S. Trademark identifies the lower image. ***Ref.*** **body of Claim #15** . . . "using a plurality of known voice-over-internet-protocol implementation when utilized in a combination the plurality of known type object target programs". . . .  Thus, using a plurality of "known VoIP" utilized ("outside") "the known type object target programs", that is, the known CRM of The Accused. In this event the patent US-772, IC#**15 (b)** . . . "the clients computing device enabling the known VoIP on the object target program including appointment book related screens, calendar, schedulers of events chronology implementations", the object target and the element being on the known plurality including ("known" art as) Google "calendar". The combination infringing on the element is the combination being "Callinize" and the *Google* calendar. The element **[,]. . .** "the **new** program further including and enabling said VoIP as an extension, add-on and plug-in" . . . . *Callinize* would be infringing on the latter element described. **#15(c)** reads **[,]** . . . "converting via the **new** program a listing of phone numbers into interactive electronic commands or a command graphic therefrom . . ."[27] Accordingly, "a listing of phone numbers" is demonstrated on the previously given **upper** and on **lower** screen views. *Callinize* is thereby also infringing on the latter element, which reads in the list of the Claim. In this

---

[27] **Body of the Claim, #15** reads ". . . "scripting" **[,]…#15(a)…**"displaying on the object target interface… **[,]**" A component already introduced in the list of elements, attributes, parts presented. Footnote **11** was given earlier herein. **The program as the "new" program with (the new combination, thereof) each event with building and listing an element in the list qualifying an element and each the programs (plural) in the list including the plurality of (various) programs.**

event, "outside"[11] The Accused programs' technology infringes, and The Accused is the cause of direct infringement including causing contributory and inducing, indirect infringement. The Accused programs' technology is functioning on the (various known) plurality of programs working on computers or computing equipment/hardware. Plaintiff Kaniadakis' patent US-772 IC, #15 can be regarded as a machine, method or process Independent Claim (IC). Including, but not limited to, the changing of the display screens of the clients and the related software and each the users' related hardware/equipment.

**121.**     The patent US-772, IC#**15 (b) . . . "**the client **via** the **new** program a configuration accessing the database of the clients computing device enabling the known VoIP"**. . .**   The combination is …"*via*"… the *Callinize* App **(body of claim)** **…**"when utilized in the combination with the plurality of known type object target programs**[,]** the …"code scripting"… and/or markup[28] widgets' language (*e.g.*, Open CTI related widgets) needed from the host, The Accused programs' infringing programs' technology. *Twilio, CISCO, Genesys, 8x8, MiTel,* et al. becoming the plurality of known VoIP/electronic messages, which could be …"utilized in a combination"… including the infringers.

---

[28] The Accused, Defendant Twilio, Inc. et al., uses a markup they call "TwiML", ML as, "Markup Language" and their own "Click2Call" widgets related to "open CTI" and researching the unrelated as well.





**122.    Above;**

1) Evidences the body of the claim …"scripting" **[,]** and;

2) Evidences component, element, attribute, comprised of **#15(c).** The program including the sample app and the known program, Google App, Google calendar in this instance. Also;

3) Evidences the need for the infringer for satisfying the element VoIP thereof;

4) Evidence that the implementation has not been utilized in combination including a means of **#15(d) [,]**"providing by the configuration"…. **Therefore;**

   a.   "utilized in a combination" and "using the combination with different types", respectively, as **body of the Claim 15** reads and as the listing of elements read thereof including **15(f)** [29], the latter "combination" elements, and infringing satisfying all the elements that read on those comprising IC#15 in any

---

[29] Including "on the appointment book calendar via changing the database" or before the element of the new program, new program the configuration accessing the VoIP 15(b), which may be with client allowing (inside) access, and as element extension" as outside ("external") access of VoIP or any of the latter plurality of programs. The latter including the plurality of the programs "outside" and on "related screens".

combination, thereof;

   **b.**  "Callinize" is a sample app with infringing program's technology is using The Accused programs' infringing programs' technology's "scripting" component, attribute. However;

   **c.**  the sample "Callinize" app, in this instant of time, has not been yet given another program's "voice" (*i.e.,* voice phone calling component features/electronic message component features, *Twilio, MiTel, Genesys, 8x8, CISCO, et al*.). The latter programs are among the plurality of programs and "external" program access. Just as would be another screen display or page on any program application.

**5)** Whereas, Plaintiff Kaniadakis' *Talking Head* graphic art design, logo, icon, mark, for example, was easily identified for a purpose of demonstrating an action-function component, using The Accused "widget", *Visualforce*, "scripting" element needed. Therefore, as to the present a demonstration using the sample as the Callinize just as for Plaintiff's Talking Head earlier, this element has already been present in the components. Callinize App that is infringing producing this element of the method and/or products therefrom The Accused *Visualforce*, Developer's Guide Manual. The resulting function-action (so called, 'highlighting' action) for the element;

**6)** The **15** method, however, requires the list including all the actions, all the actions of elements . . . accessing, changing, new configuration accessing, enabling including, further including, converting, providing by configuration *via* computing device, further causing, the new use including, invoking . . . , patent US-772, IC **# <u>15: (a)</u>**

**(b) (c)** has been illustrative evidence in the instant point of Callinize App.

**Therefore;**

a. The "providing" elements of 15 **(d)** and the 15 **(e)** "invoking" element is not illustrative in the instance of the sample Callinize App. Until provider of "voice" (VoIP) has been configured. **Whereas;**

b. 15**(b)** has been an element shown available with enabling the configuration access to the plurality of voice (VoIP) providers. **EXH. D-1;**

7) In the event the client is **15 (f) [,]** "repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types" . . . then The Accused programs' infringing behavior exhibiting contributory and inducing infringements on "said plurality" patent IC#15 (body of Claim) infringing on components, features, elements of Plaintiff Kaniadakis' invention;

8) The elements will all infringed on all the elements completing the method or process required with the sample. Using the sample the Callinize App is at least one among Sixty (60) other infringers with **EXH. "D"** and **Table, D-1**. Elements of **15(d)** including available providers listed with **Table D-1**. Each of **EXH "D"**[30], and some with **Table D-1**, having all the elements of at least US-772, IC **#15**;

9) Any given sample could be selected among infringers. Therefore, selecting from EXH. "D" each the apps will separately further demonstrate each and every element and all the elements given the number of elements and list comprising **15**;

---

[30] Researching program applications; Facebook Messenger, Facebook's WhatsApp, Google Hangouts, Microsoft Skype, and SAP. Google and Google Hangouts could be listed with EXH. "D" and Table"D-1"as they are providers of electronic "voice" (VoIP) and message/mail. DialPad, ZenDesk, RingCentral are believed to use Google Hangouts as white labels.

10) Callinize App sample demonstrates all the elements comprising #**15 (a) (b) (c)**. As with other in EXH. "D" each will have all the elements;

11) Callinize App sample also will demonstrate **15 (f) [.]** This is representative of the instant that the user could implement the element **15 (f) …** "repeating (a) through (e) for making changeable to another known type VoIP using the combination"…
**Therefore;**

i.   to configure another known type of VoIP program for implement with the combination of the known plurality of programs e.g., on another web page application, inside or outside (external) to the programs using the machine, method or process;

ii.  Essentially starting over, like a loop;

iii. The **15(f)** instance exists also in the event one must, as The Accused Defendant *Twilio, Inc. et al.* pointed out, requires at times to *"refresh the screen"* such as links, tabs or pages with the interface … "display on said computer displaying the object target program interface"….;

iv.  With other instances **15(f)** is an event that is essentially programmatic, or instantaneous. The computer machine will carry out all the elements given the method or process, only limited by loading time and/or other predisposing computing factors. (Virtually no time between elements.);

v.   The fact that The Accused programs' infringing programs' technology is working on (off, "outside" of the object target program) The Accused … "including appointment book related screens, calendar, schedulers of event chronology

implementations" . . . evidences this elements infringing on **IC#15(b)**;

vi. The evidence that the sample using "Callinize" infringing programs' technology is working on the upper screen view **(above)** is tantamount, and very least inferred, part and parcel, inextricable, inextricably related to, a part of, to the functioning in/on all the known plurality of apps working with "Callinize" are infringing in the same way (method), Twilio, CISCO, Genesys, MiTel, 8x8, *et al.* Refer to the lists akin to **EXH. D-1** "Callinize" reported, all the plurality "apps", which are otherwise jointly and severely among The Accused programs' infringing programs' technology.

**123.**     **Below;** Showing one instance of an element with patent US-772 IC#;

1) **Element 15(f)** . . . "using the combination with different types". . .

2) **Elements of 15(d) . . .**[,] "providing by configuration" . . .

   Therefore, the sample Callinize App has given some examples, including but not limited to, "8x8" in the combination with "Callinize" and in connection and in the combination with The Accused.



**Above;** 8x8, Callinize, *and others* promote, sell, offer, make on sale or otherwise available, products' technology "inside" and "outside" The Accused programs' infringing products' technology. Above identifies some apps recited with **element IC# 15(f)**. . "using the combination" . . . element **15(b)** . . . "including appointment book related screens". . . **[,]** calendar **[,]**". . . Solid arrow (above) points to The Accused, "Salesforce". IC# **15 (d)** . . . "client's screens including said VoIP therewith said calendar related implementation**[,]** Open arrows (above) pointing to using the combination with different at least two (2) of the known plurality. Therefore, IC# **15 (f)**. . . "using the combination with different types of the object target program" . . . **Above;** *Microsoft Outlook* and *Google* program apps, calendar related implementation, The Accused reads on patent US-772, IC#15 method elements identified with contributory infringer samplings in some of the demonstrated "apps" with The Accused inducing infringement among these samples apps, *and among others*.

124.     Even an objective observer's and juror's assumption using the most narrow (which it is not) interpretation of elements, the fact is that if elements have the action of the elements of **IC#15 (b)** . . . "including" . . . through the element of **15 (f)** **. . .** "making each telephonic call on the appointment book calendar via changing the database" . . . the evidence will be that The Accused infringe. Since programs are evidently having the patent US-772, IC#15 Plaintiff Kaniadakis' to the extent that elements of the method actions-functions are evidenced on the implementations.

125.     The Accused offer customization features beyond elements of the method. Part of The Accused *et al*. configuration feature.

**126.** The same with "InsideSales.com" is another one among the some Sixty (60) or so that The Accused Defendants' Salesforce's, Inc. *et al*. programs' infringing technology "Click to Call" has on their "App Exchange" App Store front.







**Above;** "Insidesales.com" App has configuration a means for customizing features including "voice" (VoIP) provider.

**127.** The Accused programs' are infringing in the context to patent US-772, because

The Accused have at least included all the elements of IC# 15 with enabling the method for making accessibility;

**a.**  The universal interactive phone number;

**b.**  interacting with more than one program application;

**c.**  on more than one type of voice program;

**d.**  more than one website application; and,

**e.**  changeable . . . "using the combination with different types" . . .

This will be described with more particularity later for each the elements in US-772 IC#15 and The Accused programs' infringing programs' technology contributory infringers and inducing infringements. Elements including the "configuration accessing" are including elements such as the following, typical of computing operating system(s) apps and/or browser apps:

**Below, compare drawing Fig. 42 on patent US-772.** This is representative screen shot of any given <u>user</u> based permission pop-up dialog box. The following may be tantamount browser[31] window popups.

---

[31] There are system (OS) generated dialog boxes populating that "pop-up", and browser generated pop-ups.



**Compare Above with Patent US-772 with Figure 42**; typically a configuration

process often is including the apps' user based permission component. **Fig. 42** is one

application using the known app's user based permission "pop-up" dialog box. **Above;**

showing any of the plurality of the known apps or programs for voice/electronic

messages, *e.g.*, "Skype", Genesys, MiTel, Twilio, CISCO, 8x8, *et al.* Compare/contrast

certain computing related equipment/hardware components are intuitive. Sometimes

not all elements or components are detailed. In other events sometimes machine code,

workings and operations, are not so easily describable in human words or terms of art.

The machine essentially "knows" how to act in the general and/or basic components of

the method. Interfaces help people. **Above;** once on the display screen and the software

---

[32] End-user based permission dialog box. Basically, two types: By the browser (*IE, Chrome, Edge, Firefox,* browser applications, "apps"), and/or; by the machine, i.e., Operating System (*i.e.,* Microsoft OS, Apple's *et al.*) all are apps residing on the user's side or "end". Permission based required for "accessing", (local) "memory": *ref.* **15(a)**.

[33] *Skype* is among the list including *Callinize* for the client to have configured for "voice" on object target program 'including (appointment book) related screens'.

related element of the client such as The Accused CRM, as with **patent IC# 15:** "<u>. . .</u> <u>**(a)** accessing said memory and the screen display on said computer displaying the</u> <u>object target programs interface . . .</u>" inside and/or outside[11] The Accused programs' screen display the users <u>[,]</u> "<u>. . . **(b)** changing the memory and the computer database of</u> <u>the client *via* the new program a configuration accessing the database of the clients</u> <u>computing device . . .</u>". Defaults, if any, becoming changeable by way of The Accused programs' infringing programs' technology. In "Callinize" end-user displaying the above identified pop-up dialog box reads as follows;

**["] No extension configured ["]**.

The Accused programs' infringing programs' technology goes on to reads on infringes on this element or component with US-772 IC #**15 (d)** . . . **"[,] . . . (d) providing by the** **configuration *via* the computing device . . . the client's side . . ."** Hence, this is a side-by-side point of a component for comparison/contrast to chart. A chart can thus be presented with a side-by-side comparison/contrast with The Accused programs' infringing programs' technology to Plaintiff's patent US-772.

128.      The Accused programs' infringing programs' technology evidences that at least initially the VoIP of the client has to be assessable, changeable, configurable, assessable (again), enable (for including some voice or VoIP and/or electronic message), on the object target program including appointment related screens of event chronology implementations. Plaintiff Kaniadakis' *Talking Head* logo mark, in an example, was displaying on The Accused programs' *Visualforce* (page). Plaintiff's "Talking Head (TH)" was a demonstration an action-function component by comparison/contrast with

using The Accused "widget", *Visualforce*, "scripting" component. The scripting component evidently "reads" or "sees" and reads on The Accused. Since, the *Head* was detected. The resulting function-action in The **15** Method: had carried out an action had (in the past tense) ['] . . . accessed, changed, new configuration accessed, enabled included, further included, converted, provided by configuration *via* computing device, further caused, the new use included, invoked . . . ['], **patent IC # <u>15: (a) (b) (c) (d)</u>;** In the event the client is **. . . <u>"(f) repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types"</u>** . . . The actions and functions in The Method had evidenced that on The Accused programs' *Visualforce* produced *Talking Head* (not in particular to TH logo graphic art design). Invoking the phone number will further carry on with the functions of the actions for invoking the telephonic call or voice phone call using the selected configured "voice" app(s). Therefore, Talking Head had already been configured. Other elements are working. Talking Head are working from The Accused "scripting" on The Accused programs' "widget" and *Visualforce* (related code and page), which The Accused provider provided for would be contributory infringers of patent US-772. Wherefore, the action and resulting function of the listing of phone numbers into interactive electronic commands or command graphic components for phone numbers to become interacting with the various sites, program applications, voice and electronic message "apps". Each phone number turned into an interactive electronic command graphic from the electronic commands in the patent. *Ref.* patent US-772 [2] Figs. 8A, 41-43, 6A, 6B. **<u>EXHS. "S", "S-1". EXH. "U".</u>**

129.     As to **memory** related elements recited with US-772, IC#15 (**a**), connecting with element IC#15 (**b**). By virtue of each the users creating an account on The Accused programs' website application sites and accessing The Accused programs <u>. . . "the computer database of the client". . .</u> element must read on The Accused programs' infringing programs' technology, widgets, Defendants' Salesforce's programs, Inc. *et al*. and *Virtualforce* and those involving co-Defendants' Twilio, Inc. *et al*. programs. Furthermore, reliant upon and recited with the body language of Claim, IC#15. A memory is required for credentials, set up, configuration, settings, and other relevant information of the user and of end-users, *etc*. (Stored in a database of the client. A clients' memory, storage and database could be cloud, local and/or remote access.)

130.     As to <u>memory</u> related elements recited with US-772, IC#15 (**a**), connecting with element IC#15 (**b**). The Accused programs' infringing programs' technology, however, evidence of the method reads on this element could be discovered and further evidenced. For example, Defendants' Salesforce, Inc. *et al*. CRM program stores contacts in each the clients' memory. Therefore, all the users accessing the common data of contacts and adding to contacts' information stored in the cloud database. Beyond basics and general memory for each user, there is this functionality the client will be **15(b)** <u>. . . "accessing said memory" . . .</u> The element is supposed to be inherently and be relatively given and taken as broad in this aspect as recited.

### Defendants Twilio, Inc. *et al*.

131.     Co-Defendants' Twilio, Inc. *et al*. programs' infringing programs' technology identifies their method as "steps" in the following;



**Above; Twilio's "Click-to-Call",** Plaintiff's patent US-772, IC#15 elements have been labeled over The Accused programs' Twilio's excerpt from teaching guide manual[34] (integrating, combining, linking, corresponding, communicating) programs' technology means for the following abbreviated elements; starting with body of the Independent Claim **# 15 . . . "when utilized in a combination". . .** [:] **(a)** accessing, **(b)** changing, configuration accessing, enabling, including, further including and enabling, **(c)** converting, listing of phone numbers therefrom the scripting and displaying on the object target program interface, **(d)** providing, (**e** invoking action not illustrated on screen shot, above), **15 (f)** repeating for making changeable . . . using the combination[.] By contrast to "using the combination", "Callinize" and Twilio, above

---

[34] The Red encircled mark-up identifying resultant product from the method. The interactive phone number listing or command graphic was drawn by Twilio, Inc. inducing and contributory infringement. Notice that The Accused Twilio is in a reference to The Accused co-Defendant Salesforce, Inc. *et. al.* The upper left corner of screen shot identifies "Force.com"). The bottom right corner showing part of Salesforce.com, Inc. logo. More particulars will be presented later with code, and by the method chart side by side The Accused method/products resulting from the method, patent US-772, IC#15.

The Accused Twilio's schematic is "<u>using the combination</u>". The Accused inducing and contributing infringement using the combination with an app program called "WebRTC" and Twilio programs' infringing programs' technology. Above the body of the claim reciting **15:** <u>. . . "when utilized in a combination" . . .</u> of the plurality of known VoIP/electronic message programs (latter message feature, element, on other dependent, relent claims of parent Claim #15). Above is essentially the Twilio product working rather than in order of the method preceding the resultant product resulting with the interactive phone number interacting on the various application sites using the various plurality of apps.

**132.**     "Open CTI"[16] is the widget with Salesforce's *Visualforce* contributory infringers of programs' technology. Integration is *via* CTI. Whereas, The Accused programs' infringing programs' technology is using a means of "Open" type CTI, as "Open CTI"[35].

**133.**     On October 5, 2016 Defendants' Salesforce, Inc. *et al.* "Dreamforce" announced adding the power of the known plurality of "consumer" commercial apps and "Salesforce" business, enterprise apps. The Accused Salesforce's, Inc., *et al.* "LiveMessage" App, **["** . . . lets service people talk with customers on . . . ["** ** *Facebook Messenger, SnapChat, WeChat, Viber, Line* and sending electronic message, "SMS".

---

[35] MiTel's, Inc. "Unified Communicator" (UCA), "Open, Unified, *and others*", many related name variations, *etc.* The names are irrelevant. The purpose is for "providing by the configuration" means for infringing on US-772, IC #15 **(a)** "accessing [,]" **(b)(c)(d)(e)**.



**Above; Body of Independent Claim 15. The Accused goes on to infringe on the components, attributes, elements of the Independent Claim 15.**

**Above;** Marc Benioff, C.E.O, Co-founder had presented new wave of infringing apps. Plaintiff has already presented patent US-772, IC#15 working on the plurality of the same programs in many publications and videos.



Apps evidently working "inside" and "outside" The Accused programs' infringing programs' technology. The Accused programs' enabling people to "talk with" via programs including object target programs including but not limited to program "apps" such as; *Facebook Messenger, SnapChat, WeChat, Viber, Line* and sending electronic message, "SMS". The Accused programs' infringing technology is working and copying what Plaintiff Kaniadakis had published practicing the art and teaching the art on the various known plurality of programs including appointment book related screens, **["]** . . . from a single app from which to consolidate all communications, be it through text messaging or a bevy of other services . . . **["]** (emphasis added). The Accused are infringing and reading on the plurality of the programs described in patent US-772.

134.     The Accused, co-Defendants Twilio, Inc. *et al*. has up to 62% or more of its business from Facebook's WhatsApp[36] program app. As with other apps programs started with only electronic messages then adding "voice", VoIP. The Accused programs' infringing programs' technology has action-functions of patent US-772, IC#15 working on the known plurality of programs.

135.     **Below;** reads on body of Independent Claim **# 15.** . . . "A method for a client using a plurality of known VoIP in contacting and communicating with a plurality of people said VoIP implementation when utilized in a combination a plurality of **known type object target programs**[,] the client using a new program computer code

---

[36] *Facebook* acquired *WhatsApp* for a reported $19-20 Billion. WhatsApp had no U.S. Patented Technology, and the product was only an electronic message app. Facebook later wanted to add value to its WhatsApp purchase by adding "voice" (VoIP). Facebook's *Facebook* Messeng*er* added "voice" phone calling element as well. Therefore, making phone calls and sending electronic messages. The combination is making the infringement. Up to 180 Billion infringing machines just on these two and **15(f)** . . . "using the combination with the different types of the object target program making each ". . .

scripting[37]" . . . **(emphasis added)**. The Accused programs' infringing programs'

technology carried across "outside" and "inside" the plurality of programs.



The Accused programs' infringing programs' technology is working on the various

known plurality of programs . . . "including appointment book related screens". . . .

Below, The Accused reads on patent US-772 IC # 15.

**136.**      Patent US-772 IC#**15(f)** . . . "using the combination with different types of the

object target programs . . . on the appointment book calendar

*via* **changing the database**" . . .   On May 06, 2014 it was reported by "Kanaracus"[38]

(PC World) that Defendants' Salesforce, Inc. *et al*. combined apps for making

"elements" and **["]** . . . Components include . . . calendars . . . **["]** Therefore, "Social

---

[37] "Scripting" including The Accused and Salesforce's "Visualforce" scripting. See PLAINTIFF's EXHS.
[38] May 6, 2014 5:15 A.M PT Chris Kanaracus, Reporter, "PC World". "Kanaracus" sounds like Kaniadakis.
However, the names are not related in anyway or misspelled.

Studio" by Salesforce was adding features in "2016" (announced at Dreamforce, 2016)

**["]** . . . single app **["]**.



**Above;** the object target program, Facebook, practicing the art on **. . . "known type**

**object target programs"** . . . patent US-772, **IC#15.** Body of Claim reads as follows: <u>.</u>

<u>. . "when utilized in a combination of a plurality of known type object target programs"</u>

<u>. . .</u>

<u>**IC# 15 (b)** . . . "enabling the known VoIP on the object target program including</u>

<u>appointment book related screens [,]". . .</u> The interactive phone number is interacting

(action) on the plurality of the programs, (function) making voice phone calls and

sending electronic messages. The method for making the actions-functions is producing

the results abbreviated above.



**Above;** Facebook calendar using patent US-772, IC#**15(f)** Therefore, . . . ["] different types of the object target program making each telephonic call on the appointment book calendar via changing the database ["] . . .

**137.** The Accused programs' infringing programs' technology is working on the plurality of known programs using the known VoIP and infringing on US-772, IC#15. Tenfold (f/k/a Callinize) App tool tip displays. Shows the infringing programs' technology working with the actions and the functions on the plurality of programs using the plurality of program "apps" with the following:



*After* configured with "Twilio" "voice" provider The Accused programs' infringing programs' technology *e.g.*, "Callinize" (Tenfold) will become an infringing program using the method and producing the substantially similar, substantially or the same results, actions and functions of the element of Plaintiff Kaniadakis' patent US-772, Independent Claim #15. Whereby, The Accused programs' technology could be using the method on/off, that is, "inside" and/or "outside"[39] The Accused programs (separately or in some combination thereof), providers like Genesys, MiTel, Twilio, CISCO, 8x8, *et al*. patent US-772, IC# **15(f)**   . . . "repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types of the object target program" . . .". . . "*via* changing the database and using the computer or the device" **[.]**

138.     *Before* Plaintiff Kaniadakis' U.S. Trademark "Talking Head" was displayed and color coded (characteristic bright red colors).  The tool tip or tool hint reads on Talking Head[®], which is the original article, and conveying the designation of origin to the Official product resulting from the U.S. Patented Technology, US-772, IC#15[40]. However, in the event "Callinize" is using The Accused programs' infringing programs' technology Plaintiff Kaniadakis' mark essentially still dominates the screen(s) and has the presence.  *Except;*

---

[39] Plaintiff Kaniadakis' U.S. Patent described "external" programs. The plurality of VoIP/message programs on the plurality of programs and external (to the Salesforce) programs.

[40] Branding with U.S. Trademarks is essentially describing the U.S. Patent and practicing the art thereof in a connection to the goods/services. In this event the U.S. Trademark expressing that program applications are not necessarily limited to calendar related implementation.

**139.**    *After* applying The Accused infringers' technology from the method Plaintiff

Kaniadakis'US-772, IC#15 and products therefrom are unlawfully forced to compete

against the screen(s) infringers of The United States Patent, US-772, IC#15. The

Accused have <u>no</u> Rights to create such infringements on Plaintiff Kaniadakis' U.S.

Patent. Evidenced as demonstrated on The Accused programs' infringing technology

using "Visualforce" **PLAINTIFF'S EXHS "S" and "S-1"** wherein Plaintiff

Kaniadakis' intellectual property was shown displaying the action/function of the

elements of the method, patent US-772, IC#15.





**Above;** Compare with before combined with infringers Tenfold f/k/a Callinize.



**After** is resulting in a kind of hybridization from infringers. Above is displaying "Tenfold" f/k/a "Callinize" apps in connection to The Accused. Blue color is infringer. Red represents the Official Original Article. Plaintiff Kaniadakis' US-772 dominates, since it is superior. However, infringers have no Right to compete in this method.








**140.** The Accused has induced, had been contributory and infringes on patent US-772, IC#15 on up to Sixty (60) or more such infringers causing machine infringements. The Accused has one known as "Lightening Voice"[41], infringing on patent US-772, IC#15. **EXHS. "R" and "T-1"**.

**141.** The Accused had been sharing technology which The Accused does not own and infringing on Plaintiff Kaniadakis' U.S. Patent.

**142.** The Accused has been sharing infringing technology, which in many instances has been offering infringing technology "free". Although, in exchange (*e.g.*, The Accused programs' AppExchange and/or Twilio's programs' technology) for inducing infringers' programs would not have the technology unless at least one to buy The Accused[42] programs' for infringing machines '**(a)** accessing, **(b)** changing, configuration accessing, enabling, including, further including and enabling, **(c)** converting, listing of phone numbers therefrom the scripting and displaying on the object target program interface, **(d)** providing, **(e)** invoking the command action **(f)** making changeable to another known type'.

**143.** The elements and as The Accused calls "steps" are essentially exactly the same. First; **15 (a)** . . . "accessing" . . . . This reads on the following element or attribute on Plaintiff Kaniadakis' patent:

---

[41] Lightening "voice" is a VoIP provider akin to providers listed with **Table D-1.** Except, the VoIP and Click to Dial is an in-house provider rather than external program working inside or outside of The Accused program. **["]**Lightning console apps… **["** ]. . . **["]…**access utilities like Lightning Voice and Open CTI… **["]**.

[42] The Accused price is $15,000.00 (fifteen-thousand USD) per month or greater, for each, The Accused programs' enterprise. This price of other programs are added and *tripled* (3X) this amount including "another known type" enterprise programs, MiTel, Genesys, CISCO, 8x8, *et al.*



In any event the "First" element an action as simple as creating an account for

"accessing" at least one of The Accused programs' infringing programs' technology.



**144.**     Element # **15 (a)** itself is essentially rudimentary, or as The Accused related to as

that it is an ["] . . . intuitive . . . ["] process setting up a typical client. The Accused

infringing on the patent US-772 IC#15 by starting to hone in on one of The Accused

apps using infringing programs' technology **(a)** . . ."accessing said memory and the

screen display on said computer displaying the object target program interface . . .".

This element is as simple as creating the log on to The Accused programs' technology.

**145.**     Whereas, The Accused programs' describing a connection to The Accused to

above outlined widgets, Open CTI, *etc.*, in a method to **["]** . . . access utilities like

Lightning Voice and Open CTI . . . **["]**. Therefore, accessing The Accused plurality of

VoIP using apps **["] . . . like Lightning Voice and Open CTI . . . ["]** (emphasis

added). This is particular to using The Accused programs' infringing technology,

widgets; "Open CTI", "Console Apps", "Lightening". The extra "steps" of The

Accused programs' infringing programs' technology are not needed in order for

causing infringement in this case. **EXHS. "Q", "R" and "T-1"**.

**146.**     The elements of US-772, IC#15 are infringed because The Accused programs'

infringing programs' technology is including at least the elements, attributes,

components, parts, ingredients or features.

**147.**     Infringement need not go on to read on "steps" The Accused programs'

infringing program technology describe for various widgets each may require or not

require in order to become infringing on US-772.

**148.**     The Accused are infringing because the following is being utilized in practicing

the art as described by the letters patent including US-772, IC # 15.

```
1   <apex:page standardController="Account" showHeader="true">
2       <support:clickToDial
3           number=" 415-555-1234"
4           entityId="001XB000000HFUM"
5           params="myparam1,myparam2"
6       />
7   </apex:page>
```

**<u>Above;</u>** By virtue of The Accused providing the various connecting links are causing

and adding infringing devices.



**149.**         **Above;** One among Sixty (60) infringing devices in a connection to The

Accused and/or on The Accused. By virtue of The Accused coupling context

verbiage, language, text with development, promotions, advertisements, etc., in

many events as a vista to providers accessing and infringing devices, because by way

of The Accused making on sale or otherwise made available to the public infringing

programs' technology as being and including "Open" and/or free "widget" related

technology among other matters confusing designation of origin between Plaintiff

Kaniadakis' letters patent, In The United States Patent and Trademark Office versus

any/all other good/services.



**Above;** The Accused programs' providing connections for infringing devices

accessing programs' technology infringing on US-772, IC#15.



**Above;** various infringing devices are in a connection to The Accused

programs' infringing programs' technology and infringing device(s) on US-772, IC

#15. On sale or otherwise made available to the public the infringing device

described in the letters patent, US-772.

150.      Patent US-772, IC #**15(a)** . . . "Changing the memory and the computer database of the client via the new program a configuration accessing the database of the clients computing device enabling the known VoIP on the object target program". . . . The Accused enabling users <u>via</u> The Accused programs' infringing programs' technology to infringe on all the elements of patent US-772, IC#**15(a) through 15(f)**. . . " repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types of the object target program making each telephonic call" . . . " via changing the database" . . . [.] Therefore, with each change from one to another VoIP in the event using the Click to Call" implementation and attribute, element, component using the combination with different type program.

151.      The Accused programs' widgets and infringing widgets technology enabling, contributing and inducing infringements including but not limited to The Accused and [**"]Virtualforce["]**, enabling access and implementing actions and functions resulting with infringement **15 (c) <u>and</u> 15 (e)**. Therefore, simplified with the focus on the actions-functions as follows; **15 (c)**. . . "converting via the new program a listing of phone numbers into interactive electronic commands or a command graphic therefrom the scripting and displaying on the object target program interface [,]". . . **15(e)** . . . "invoking the command graphic for making each telephonic call by the client configuration[,]" accordingly, describing the actions and functions explicitly causing infringement of The Accused programs' so called [**"]<u>Click to Call" or "Click to Dial</u>["]** (emphasis added) actions-functions resulting on The Accused programs' "On

Premise Apps"[43] <u>and</u> "Connected Apps" and/or The Accused reads on as **["...**

**external applications (also called 'Connected Apps') ... ["]**. Patent US-772

described as "external" program applications, etc.



The Accused "App Launcher" widget is following users accessing The Accused

programs' technology. The Accused programs' related technology, in this event

program technology called "App Launcher", is to enable people that have access,

and the client accessing said memory, changing the memory on the "First" screen

display. Therefore, each the users "First" changing the database of the client with

their own log on credentials. However, App Launcher's first act is to launch an app

called "Single Sign On (SSO)". By way of App Launcher The Accused programs'

---

[43] Some in terms of server location, however, clearly, Salesforce brags about being "in the cloud".

contributing to the client via the new programs a configuration accessing the known

VoIP "Click to Call" on the object target program, The Accused programs'

infringing technology programs. In this event, "App Launcher" all end-users are

enabled to share the infringing programs technology, that is, "Click to Call".

152.     Unlike **15(a),** SSO is infringing on **15(b)** enabling all <u>. . . "configuration</u>

<u>accessing the database of the clients computing device enabling the known VoIP on</u>

<u>the object target program" . . .</u> . However, **["] . . . First . . . ["]** is the element of

**15(a)**. Like **15(a)**, SSO is also applied to the element **15 (a)** as the first user

accessing The Accused programs' technology in order for enabling a configuration

accessing infringing programs' technology "app" or "Click to Call" implementation.

Therefore, either method, with a single sign on (SSO) and/or each the end-user is

accessing and infringing by . . . "configuration accessing". . . "Click to Dial"[44],

infringing programs' technology.

153.     Each user of The Accused programs' infringing technology causing infringing

device to become passed off by the power of multiplication akin to a pyramid

scheme in sales and marketing schemes. In the event of Single Sign On (SSO) app

accessing "Single" one (1) is signing on and accessing all the multitudes in any one

(1) organization using The Accused programs' infringing technology, "Click to

Call". Therefore, starting with a Single user 'at the top of the pyramid is thereby

passing off infringing technology to the masses and in a connection to the base

(bottom) of an organization in The Accused programs' scheme.

---

[44] Sixty (60) The Accused programs' are engaged with infringing on, contributory and inducing infringements.



**Above;** Illustrative of "one" as the "Single Sign On" (SSO) at the top point or Apex of the pyramid, and The Accused passing off the infringing programs' "Click to Call" technology all the way down the method to the base of each an organization.

154.    The Accused Defendants' program Salesforce allows people to be accessing to "App Exchange" App Store without accessing "App Launcher":

    a.   Some programs allow access to infringing programs' Click to Call technology via free trials and sample links. As evidenced by "PhonamiMike@isvorg.com" as "user name" (e-mail account) for the Callinize App, "Try for free", screen view above.

    b.   Other documentations evidencing that "App Exchange" having Sixty (60) infringing program applications is available for accessing on The Accused programs' menu bar. Also, as an **["] . . . + Get More . . . ["]** button which has a connection to The Accused programs' infringing programs' technology and "Click to Call" apps on App Exchange Store and in a connection to each the organization's business web site applications.

    c.   Or even just by the public web site application's <u>Sixty (60) links</u> by way of The Accused (single) business' website link.

**d.** This is the same for Defendant Salesforce as for co-Defendant Twilio. Co-Defendants' programs' connection to a Twilio App Store Marketplace.

**e.** Whereby, The Accused further inducing infringing behavior by and through accessing The Accused programs' technology.

155. For instance, "SAP[45]" and "Concur" apps may require special permission sets for accessing The Accused programs' in connection to certain program applications. By contrast, other "Connected Apps" and/or The Accused programs' infringing programs' technology accessing "App Exchange" Store apps may not require special profile, "tab set", "specific perm set", permissions, authorizations, etc.



---

[45] SAP SE (SAP) owns cloud access it calls "Hana" and infringing programs' of "voice" technology are available on SAP's ERP", a kind of CRM, like The Accused Defendants' Salesforce.com, Inc., Salesforce, Inc. and Twilio's programs. Concur Technologies, Inc. (Concur) has been reported by SAP SE and Concur legal representatives as a wholly owned subsidiary of SAP SE



**Above;** The Accused is depicting and teaching how to "build" (the method/process for making) the infringing programs' technology with **15(f)** <u>. . . "making changeable" . . .</u> The Accused programs' infringing "Click to Call", for instance, and change the identity of the program application(s). Above is a screen view showing connected program applications including "SAP, Concur, Google Apps", *et al*., "Third Party applications" and/or "Connected Apps" and/or as "external" program applications.

156.　　　**["] . . . + Get More . . . ["]** tab, window, browser page for building "Connected Apps", *and others*, by accessing links made  available to public. "+ Get More" links to The Accused AppExchange Store front.

**Below;** references Defendants' Salesforce Inc., *et al*. "App Exchange and "Visualforce".  In the event "App Launcher" is accessing "Click to Call" infringing program applications' technology will be <u>. . .  "accessing the memory of the user and the screen display on said computer displaying the object target program interface</u>

using said computing devices [,]". The particular "Click to Call" hosted will display

and connect *via* a "tab" (window, page) displaying on a menu page as a "tab set".

Actions-functions may be resultant of the tab and/or tab set, *i.e.*, a tab and/or "the

combination the plurality of known type" programs representative of tabs, browser

application(s), window, link, URL, code, scripting, page will invoke an action with

the graphic(s), which may or may not become evidenced on this App Launcher page

link in connection to The Accused programs' menu and accessing the program

applications with The Accused programs' infringing programs' technology on the

plurality of interface connections including The Accused programs' interface.



**Above;** a "tab set" comprising a number of tab(s), window, page, browser program

application(s) residing in a connection to The Accused programs' actionable

technologies' functionality. Above is a front end build and interface. This itself does not display evidence linking to the single (one) of the "Click to dial" program application ("app"), link, URL, reliance upon connections, so called "scripting" (code, widget) and/or connection(s) to back end server(s), and/or related connections to the Click to Call App or widget(s) thereof. The Accused programs' infringing Click to Call programs' technology would be easily identified and displaying above. Above; other steps, attributes, elements, parts, components showing a community and the public how the building (making) of infringing devices and teaching the practice of the art, **patent US-772**.

157.     The "SAML[46]" App tends to be at least one reliant program for The Accused to operate. Thus, this page on Defendant Salesforce's programs' infringing programs' technology will appear as an icon or logo on this web site application link's connection. This being the same as the drop down menu action connecting App Exchange and/or connecting program applications including the infringing programs' technology e.g., 8x8, CISCO, Mitel, Genesys, Skype, *and others* connecting to "Click to Call" by way of The Accused programs' infringing programs' Click to Call technology infringing on at least all the elements of the parent US-772 Independent Claim #15 and/or reliant claims.

158.     Although, in many events The Accused programs' infringing programs' technology is reliant upon SAML App among other tools, widgets, controlling gadgets, infringing devices', hardware/equipment, again The Accused describes as a

---

[46] "Security Assertion Markup Language" (SAML) product of OASIS Security Services Technical Committee.

"step" which is not an element, component, part, attribute, ingredient, feature infringing on patent US-772, IC#15. However, in some events aiding and abiding in accessing infringing programs' technology in the process.

**159.**     Akin to The Accused "App Launcher" and others like "SAML App" that are related to and/or reported as steps which need not be described to be infringing on **patent US-772, IC#15**.

**160.**     Akin to The Accused App Launcher, SAML App, steps or process involving means for/of including App Connectors, Adapter Apps, which are related to and/or may be reported as steps by infringers, contributory infringers, and inducing infringing behavior(s) need not be described to be infringing on patent US-772, IC#15. The Accused are infringing because of all attributes, components, elements, parts are infringing and resulting actions and functions described on patent US-772.

**161.     Patent US-772, IC#15** may involve steps of or the field for involving "Compute Telephony Integration" (CTI) itself. However, the method useful, among other things, to the plurality described is interacting with the interactive phone number as including the **#15 (c) . . .** "interactive electronic commands or the command graphic therefrom the scripting and displaying on the object target program interface". . . . The Accused programs' infringing programs' technology sometimes called as "Connector CTI" as with The Accused programs' "CTI Toolkit" becomes related to infringing behavior described with related actions and functions described on patent US-772.

162.     For instance, The Accused "tab set" resulting reaction may be identified as producing the actions and functions resultant infringing products *e.g.*, one (1) of and/or a combination of Sixty (60) programs and/or provider of/for "voice" (VoIP) and/or electronic message applications related implementation. The combination or "tab set" could be one (1) as the single (administrator) client adding to another. In an alternative, **15(f)** one (1) . . . "making changeable" . . . on to another one or more in a . . . "using the combination" . . . among a user or number of end-users of the client. Therefore, The Accused programs' "Click To Call" action and function resulting on infringement of patent US-772, IC #15. Among the referenced AppExchange Marketplace App Store are providers of "voice" and/or electronic message applications.

163.     The Accused Defendant Twilio, Inc. *et al*. calls the "basic" application program or "widget" as **["] ... click2call ... ["]** in connection to The Accused co-Defendant SALESFORCE, Inc. *et al*. Again, names are essentially irrelevant to the action and function in current patent US-772 IC#15 at issue to The Accused and Plaintiff Kaniadakis' case-in-chief. It is not Plaintiff Kaniadakis' contention that he coined the expressions or phrases related to the case or "widget", Click to Dial, Click to Call, *et al*. As afore said mentioned it is not Plaintiff Kaniadakis' contention that he invented voice over internet protocol (VoIP) related implementations. As outlined herein history will show that a generic and outdated "Call" button was known art. However, again, patent US-772, IC#15 does not read on this application[47].

---

[47] **Note:** There may be a difference in other's use in terms of user based permission dialog (displays, pop-ups,

164.　　According to The Accused and Defendants' Twilio, Inc. *et al.* presentations the following has been related to about their co-Defendant as SALESFORCE in reference to Salesforce programs' technology and "CTI" widgets:

> **["] . . . the Salesforce Open CTI architecture for Salesforce.  The <u>Open CTI</u> API allows application developers to embed communications systems inside Salesforce <u>via</u> a Javascript-based API. This <u>allows for things like click-to-dial</u> [,] . . . ["]** (emphasis added)

<u>A showing to help shed light on the following</u>;

a.　"Javascipt", this is a form of coding and the body of Independent Claim #15. reading on a term of <u>. . .  "scripting"</u> . . . *Except*, the code itself is not essentially relevant to patent US-772;

b.　The language has been made broad so as not to require a scripting using, for example, "java script" (code). This statement is any association as to "CTI" widgets and so called "Click to Call".

165.　　The Accused Defendant Twilio, Inc. *et al.* furthermore represents the following;  **["] . . . Open CTI flexibility, developers can choose to implement phone systems completely <u>outside</u>[48] of Salesforce, or <u>inside</u> of Salesforce . . . ["]** emphasis added

---

boxes) *versus* "authorization" and/or "permission" (based) upon somebody other than each the user(s) and/or the users and/or end users of the client. Permission based dialog or as Permission based (with the inserted term here as, user/end user) dialog may not be the same in terms for Plaintiff Kaniadakis' practice of the art; Permission based user dialog; Permission based end user dialog; Permission based client dialog. In general, practice is user based in terms of Plaintiff practicing of the art of the patent US-772. Though, each term has a place as given in the past and as specifically reads, heretofore; and, as <u>broadly given</u> or no more specific than as intended when read outside of this footnote.

[48] Twilio described their electronic "voice" (VoIP)/message as ["]… actually pointing outside… ["] (of Salesforce's program). Ref. Dreamforce 2013 event, see video, transcript and screen shot documentations.

And, in a reference to the following of The Accused;

["] ...using <u>**VisualForce**</u> **and Apex ...** ["] (emphasis added)

**Above;** presented by the Twilio, Inc. *et al*. representative at The Accused's

**"Dreamforce"** event "Published on Nov 25, 2013", YouTube video. Patent US-772

reads on "external" or third party program applications. Also, highlighting the role

and a significance in The Accused documentation on **["] Standard Component**

**Reference ["]** page header for "Visualforce" instructional manual in specific

references to **["]support: clickToDial["]** at **Page 600** of said reference. The

Accused programs' connection to Visualforce citations of "components" and

"attributes" reads on patent US-772, IC#15. The Accused reads on the method claim

on US-772, IC#15 has elements, components, attributes, parts, **#15(c)** among other

features making the method and products from the method Defendants'

SALESFORCE, Inc. *et al*. **EXH "S"** *Virtualforce*, Developer's Guide Manual;
**["] Attributes ["]** (emphasis added

### Attributes

| Attribute Name | Attribute Type | Description | Requied? | API Version | Access |
|---|---|---|---|---|---|
| entityId | String | The entity ID of the record from which to invoke click-to-dial. | | 28.0 | |
| id | String | An identifier that allows the component to be referenced by other components in the page. | | 14.0 | global |
| number | String | The phone number that invokes click-to-dial functionality. | Yes | 28.0 | |

Description reads on patent US-772, IC **#15(c) and (e)** as follows (<u>**emphasis added**</u>);

### support:clickToDial

A component that renders a valid phone number as click-to-dial enabled for Open CTI or Salesforce CRM Call Center. This field respects any existing click-to-dial commands for computer-telephony integrations (CTI) with Salesforce.

Note:

This example displays the click to dial component.

116

a.  Accordingly, use of the disjunctive meaning of **"or"** could mean and infringing upon inside **or** outside behaving as an external "Click to Call" **and/or** as an external "voice" provider, that is, patent US-772 on "external" program applications in The Accused programs' of Defendants' Twilio, *et al*. and/or of Defendants' SALESFORCE, *et al*. Patent US-772 body of Independent Claim #15 describes  . . . "A method for a client using the plurality of " . . . programs, people. Patent US-772 reads on "external" programs such as Twilio, *and others*; Please refer to at least any one of Sixty (60) attached herewith;

b.  Accordingly, use of the word **"any"** could have an indefinite meaning infringing upon **any** one of The Sixty (60) including but not limited to co-Defendants' programs' infringing programs' technology applications and co-Defendants' App Store application programs with any multiple number of other infringing devices, that is, patent US-772 on the plurality of "external" program applications in The Accused programs' of Defendants' for essentially as described above and further outlined herein;

c.  **["] . . . Click to dial commands . . . ["]** (as stated in the plural tense). Infringing on because widgets inviting **or** including **any** other attributes, components, elements, however, including at least the components, attributes, elements on US-772, IC#15**:** and, as described with Plaintiff Kaniadakis and his intent practicing the art, U.S. Patent-772.

166.    The Accused reads on **#15(e)** given The Accused documentations and others . . . "by the client in the configuration" . . . The Accused programs' "steps"

comprising making The Accused programs' related products' infringing technology must contain at least the elements, components, attributes of patent US-772. Plaintiff's patent US-772 need not have all steps, features, elements, components of The Accused. However, The Accused must have and read on at least the attributes, components, elements of US-772. Again, method involving extra steps and/or features of The Accused involving additional account settings, permissions, "perm sets", authorizations, and others' configuration settings for things like accessing any of the various other "widgets" such as any "CTI" or "App Launcher" or "SAML" or "Virtualforce" "Twiml"[49] *and other apps* and/or method need not read on Plaintiff Kaniadakis' patent US-772. **EXH. "R"**. **EXH. "W-1"**.

167.     The Accused describes other widgets and a means for accessing other program applications and things.  Therefore, presented herein. The extra "steps", as The Accused reference, only for adding some continuity and points of reference to The Accused programs' infringing programs' technology on patent US-772 and the outlined method involving The Accused programs' accessing other "widgets".

---

[49] The Accused, "Twilio Mark Up Language (TwimL)" widget.



**<u>Above</u>;** Reads on US-772, IC**#15 (a)** . . . "accessing" . . . . **["]**First**["]**. The Accused

first "step" in either process. Therefore, before element of configuring in making the

infringing device that reads on US-772 is this The Accused "step". Here, one

(single) administrative user using "SSO", and/or a "SAML" like app such as one

from Google Apps, and others, can be first in the infringement process and/or

connecting the client to become furthermore inducing, contributing to infringing

devices. A more general element infringing in this part of the process has been

outlined herein, that is, the typical client and making an account for accessing The

Accused programs' infringing program technology. Opposed to the client with

special permission, "perm set", authorization, accessing, for instance, "App

Launcher" as set forth outlined immediately above. Comparing/contrasting the

following element which is more broadly provided as being "first" in the process or

method of building the infringing products and programs' technology reads on

patent US-772;



Above; **#15 (a)** representing the typical client as "First". . ."accessing" The Accused

programs, by contrast with the administrative user enabling, contributing, inducing

infringement. As simple as this in either event, satisfying the element, component,

attribute, part, as representative of **#15(a)**. The way The Accused programs look or

**["]. . . show up . . . ["]** reads on . . . "screen display on said computer" . . . ,

operating with actions‑function infringing on patent US-772 may but not necessarily

depending upon this "step" as described with The Accused programs' technology. Either of the users designated or not as administrator, or otherwise, must complete "First" an element which is including an account for accessing (log on to, sign in to) The Accused programs' infringing technology. The body of the Claim reads on <u>. . .</u> <u>"program codes accessing the new program stored in a memory". . .</u> . Again, "First" the client and the program must have the memory for accessing. With either method the stored settings is enabling at least one (single) sign on the computing device to access at least one of the programs provided by The Accused programs' technology. Some level, role, status which is allowing and accessing The Accused programs' technology with this element comprising **#15(a)**.

168.　　**#15 (b)** another one or the "First" user (reads on an element of patent US-772, IC#15) <u>. . . "changing the memory and the computer database of the client via the</u> <u>new program a configuration accessing the database of the clients" . . .</u> . As provided the client or any of the users of the client has given an access <u>. . . "further including</u> <u>and enabling". . .</u> customizing the client and elements, attributes, components that **["] . . . show up. . . ["]** on the display screen of the client and any the users or end-users, thereof. In the instance of "App Exchange" and The Accused programs' technology including respective App Store Marketplace connections are open by virtue of accessing the typical client access to The Accused. Each the users of The Accused programs' technology could change the settings and configuration of the client. Either way. By accessing App Launcher or by accessing The Accused programs' infringing programs' technology and/or any The App Exchange App

Store Marketplaces[50] and respective "apps" including infringing "Click to Call" technology, the plurality of various levels of programs (*e.g.*, VoIP). The method for implementation could be either as link to "App Exchange" and/or any the plurality of programs by accessing "+ Get More" on The Accused programs' technology <u>. . .</u> <u>"further including and enabling" . . .</u>  Google Apps, and Defendants' Twilio, Inc. *et al*. Apps in respective App Stores, building infringing programs <u>via</u> accessing The Accused programs.

**169.**      **#15(c) through 15 (e)** the client for each the users resulting technology described in the patent US‑772, IC#15 reads on The Accused programs' infringing programs technology in the following series **EXHS "S" and "S‑1"**;

**15(c) . . .** "scripting" . . .  **[" ] . . . using Visualforce and Apex . . . ["]**

```
1  <apex:page standardController="Account" showHeader="true">
2      <support:clickToDial
3          number="📞 415-555-1234"
4          entityId="001XB000000HFUM"
5          params="myparam1,myparam2"
6      />
7  </apex:page>
```

**#15(d) . . .** <u>"providing by the configuration" . . . "executing the VoIP" . . . "said</u> <u>object target program code and related to the computer code on the client's side . . .</u> <u>"further causing the listing of phone numbers as interactive phone numbers" . . .</u> Above; Plaintiff Kaniadakis' Talking Head trademark displaying on The Accused programs' Virtualforce widget, "code" or "scripting and displaying".

**170.**      Below; **15(d)** on The Accused programs' interface;

---

[50] The Accused including Defendants' TWILIO, Inc. *et al*. infringing technology and in a connection on "Marketplace" App Store Apps on https://www.twilio.com/marketplace/add-ons and Defendants' SALESFORCE.com a/k/a SALESFORCE, Inc. et al. on "App Exchange" App Store front  at https://appexchange.salesforce.com/results?filter=a0L3000000OvSOhEAN locations near you.

122



**Above; # 15 (d)** <u>. . . "listing of phone numbers as interactive phone numbers"</u> . . . .

Plaintiff Kaniadakis' U.S. Trademark is not on the screen display or The Accused

programs' interface because the infringing programs' technology has made

changeable Plaintiff Kaniadakis' patent US‑772, IC#15 and has configured a

different named "Click to Call" widget or "app". In the event above there is a phone

icon is used adjacent each the numbers for <u>. . . the listing of phone numbers as</u>

<u>interactive phone numbers . . .</u> . Above is a screen view from a video. The Accused

programs' role with infringing programs' technology with one called, "CloudCall by

Synety", listed among apps with The Accused programs' App Exchange Store front.

One among a list of Sixty (60) not including infringing apps by The Accused with

action-function inside and outside The Accused programs' technology. Defendants'

Salesforce logo is on the screen shot. "CloudCall" app by a company called

"Synety" is showing it work on The Accused program and using The Accused programs' infringing programs' technology. This one is a United Kingdom country, and the company's Chairman had said, *"Our strategy now is to do the same in the U.S."* This Chairman was bragging about how much this (Click to Call) technology has a great impact on its company's growth in just the past two years or so. This company has offices in the U.S., Boston, Massachusetts, *"5-10x what it is here in the UK. It has been doubling every six months"*. ("TalkDesk" also "backed" by SF.)



**Above; 15 (d)** . . . "listing of phone numbers as interactive phone numbers" . . . .[51] is working inside and outside of The Accused programs' CRM "NewVoiceMedia" another UK company with offices in U.S. state that they are **["]** *. . . Backed by Salesforce Ventures*. . . **["]**[52]. Therefore, The Accused contributing in at least one method and inducing in at least one method beyond the infringing behavior of the process that reads on patent US‑772, IC#15 and among Sixty (60) others listed herewith. In the event of NewVoiceMedia, "WebRTC" is one "voice" (VoIP) provider, which is reported to be a provider in combination with The Accused

---

[51] It could be a listing of one phone number, the phone numbers listed in the phone number.
[52] Talkdesk for Salesforce /for Service Cloud and "Talkdesk, "Callbar", San Francisco, CA, is also "backed by Salesforce Ventures", The Accused.

programs' infringing program "Click to Call" technology and this App Exchange

App Store front. **EXH. "W"**, MiVoice App and MiTel "voice" (VoIP) provider.



**Above; 15 (d) Page Two (p.2) "User Guide"[53],** Chart above, **["]** . . . **Feature, Call**

**action, Description . . . ["]** reads on . . . "listing of phone numbers as interactive

phone numbers" . . . . The Accused programs' CRM "MiTel" using The Accused

programs' infringing Click to Dial technology this company calls, "MiVoice". **#15(e)**

the action-function to **["]** . . . **click the phone number to dial the contact using that**

**number. ["]** is to read on US-772, IC**#15 (e)** . . . "invoke the command graphic for

making each telephonic call by the client configuration [,]

---

[53] MiVoice Integration for Salesforce User Guide, NOVEMBER 2015, RELEASE 2.0.



171.    **Above;** Infringing on component **#15 (c)** "converting" . . . "phone numbers into interactive commands or command graphics therefrom scripting" . . . at least Sixty (60), *and others*(*et al.*),  in a connection thereof, had in their possession, or had at least once, and with at least one event or instance, shared in common all the following elements;

a.   The access to The Accused Defendants SALESFORCE, Inc. *et al.* sign on;

b.   An attribute, component, element of Visualforce widget **(15c)** "Click to Call", configured to **any** click to call commands with **or** without at least one authorization, permission, a client and user;

c.   The same access attribute, component, element of widget "Click to Call", **15(c)**, no matter the "scripting" or code on infringing devices;

d.   The click to dial command graphic infringing on patent US-772, #15;

e.   The given client and user in reaction to account access making changes (building) products/services therefrom the method infringing on patent US-772 for accessing the program applications thereof;

f.   Each infringing because at least **all** the elements have been infringing on of patent US-772, IC#15 on **any/or** all building the "Click to Call" type widgets in any or all using the combination with different types of the known

implementations as described and as claimed (program applications, ramifications, renditions, permeations')**.**

172.     With **or** without the SALESFORCE, Inc. *et al.* "Lightening voice", users and **any** of those people which may be including the public at large could make changeable accessing various programs of the known plurality *visa-a-via* The Accused respective App Store Marketplace(s) which started in a connection to The Accused any/all infringing devices therefrom.

173.     For example, The Accused Defendants' SALESFORCE, Inc. et al. "App Exchange" App Store front has been serving the public with infringing material, and there is no special relationship that may be evidenced to draw ties an association back to The Accused but for evidence of the same method or process infringing on patent US-772 described using at least one of the infringing devices of **any** one of Sixty (60) **or** another in the list attached herewith outlined is the same method for each because any/all elements are including The Accused infringement. However, all the elements, attributes, components of patent US-772 are included and as otherwise described with The U.S. Patent-772**.**

174.     The Accused Defendants' TWILIO, Inc. *et al.* has a "click to call", which itself and/or together may be working in the same process or method with or without its co-Defendants' "Click to dial" elements, components, attributes, which The Accused have identified as "steps" in the process infringing on at least the elements or attributes on patent US-772**:** Independent Claim #15 and said elements comprising thereof.

175.    For essentially the same reasons as outlined above for **["] . . . any existing Click to Dial commands . . . ["]** (as stated in the plural tense) the components using the known plurality as described and reads on patent US-772, IC#15: The elements are reading on and because the devices are infringing on Plaintiff Kaniadakis' U.S. Patent which is more broadly reading on infringing devices thereof.

176.    The other infringing program technology Click to Call widgets using "Callinize" a/k/a "TenFold" app and MiTel as their "voice" (VoIP) provider. This is a representative sample of The Accused programs' infringing programs' technology involving the plurality of VoIP providers in combination and separately with The Accused programs' infringing Click to Call widgets. The Accused programs' App Exchange Store front has MiTel's MiVoice app <u>and</u> Callinize (Tenfold) app together <u>and</u> each the apps separately, *and others*. Callinize (Tenfold) app was outlined earlier herein. The Accused programs' infringing programs' technology "Click to Dial" has an absolute role on initiating infringement, and contributing to infringement and inducing infringement.



**Above; 15 (e) Page Twenty (p.20) "User Guide", MiTel, Inc.** The Click-to-Dial attribute **["] . . . option has to be specifically enabled by your Salesforce system administrator . . . ["]** This helps evidence The Accused programs' influencing role and infringing programs' technology Click to Call with the element evidenced earlier from The Accused programs' *Visualforce* **Developer's Guide Manual** for **"support: clickToDial" Page 600**, on displaying the Click to Dial component and attributes chart.

177.    Description on MiTel "voice" provider "User Guide" reads on **#15(e) <u>. . .</u>** <u>"invoking the command graphic for making each telephonic call by the client in the</u> <u>configuration[,]</u> Callinize is one among many apps using this provider for voice (VoIP). However, Callinize has listed many others, infringing on US-772 the plurality and **#15(f) <u>. . .</u>** <u>"for making changeable to another known type of VoIP</u> <u>using the combination with different types object target program for making each</u> <u>telephonic call" . . .</u>

a.  The combination on the plurality of different programs' interface related screen display;

b.  Also, the combination of known voice (VoIP) with any other known plurality of programs such as web site applications, search page application programs, so forth accessed on the computing devices' screen display.

**PLAINTIFF'S <u>EXH. "D", TABLE, "D-1"</u>** list of electronic voice/message providers.  MiTel has its own MiVoice, which is separately offered and separately

functioning with The Accused, Defendants' SALESFORCE, Inc. *et al*. infringing programs' "Click to Call" widgets, attributes, components. Just as Callinize is "making changeable"**:** MiTel, Inc. is "making changeable" by the same infringing method or process infringing on all the elements of patent US‑772 by way of The Accused. Except, in the event of voice and electronic message providers, Twilio may be in some competition.



**Above;** the app called, "LiveOps-VoiceAdvantage", one among The Accused programs' App Exchange App Store front using The Accused programs' infringing Click‑to‑Call technology widget inside Defendants' Salesforce, *et al*. CRM program. The pointer action is invoking the function using the plurality of the VoIP programs.

**178.**    Defendant Twilio, Inc. *et al*. presented at co-Defendants' SALESFORCE'S *Dreamforce* conference or event.





**Above; #15 (e)**, the phone number is invoked by the pointer action. Notice that in this event, immediately above, the moment the interactive electronic command graphic or command graphic becomes interacting together with the combination of the plurality of program applications including the "voice" (VoIP) plurality of application ("app") programs.



**Above;** Twilio "voice" (VoIP) and electronic message provider is using SALESFORCE widgets "Click to Call" resulting actions-functions showing with Twilio the method and The Accused reads on patent US-772. Converted **#15 (c)…**"interactive electronic commands or the command graphic therefrom the scripting"**#15(d) … [,]** provided… "by the configuration"…**[,]** 15 (e) . . . "invoking the command graphic for making each telephonic call by the client in the configuration" . . . **[,]** In this event, Twilio is configured as the one among the plurality of known VoIP and electronic message program applications using The Accused programs' Click to Call widgets. The shaded speaker tile or pop-up screen displayed, which is showing that the actions and functions of connecting to the known VoIP app and phone call was working and the call in progress. In this event, Twilio representative demonstrated the basic Salesforce Click to Call as "click2call" and Twilio Click to Call in user friendly a drop down configuration

menu that "works outside" its domain or element. **Below; ["]** . . . Click2Dial**-Only** . . . **["]** (emphasis added).



179.    A representative sampling of The App Exchange and The Accused programs' connections could be taken from each The Accused programs' infringing programs' technology using Click to Call. Each will demonstrate all the attributes, elements, components reading on Plaintiff Kaniadakis' patent US-772, and at least on IC#15.

180.    **15(f)** . . . "repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types of object target program" . . . is evidenced by the fact that The Accused have Sixty (60) plus many "voice" (VoIP) providers that could be utilized in configuring voice and so called Click to Call widgets of The Accused including The Accused, Defendants' Twilio, Inc. *et al*. as a "voice" provider and Twilio own "Click to Call" widget inside and outside (external)

of/to The Accused programs' technology of Defendants' SALEFORCE, Inc. *et al*.
and CRM program applications.



**Above; 15 (f) . . .** "using the combination with different types" . . .

App Exchange App Store "inContact" is using or listing these "voice" (VoIP)

providers. Notice that as with "Callinize" the provider "MiTel, Inc." is in their

reported list.  Therefore, one among the plurality of providers and listed among those

identified with **PALINTIFF's** **EXHS. "D" TABLE: "D-1"**. Twilio is another one

of the providers of "voice" (VoIP) and electronic message implementations.  Twilio

is not reported among the plurality of program providers. So as it happens Twilio is

not listed among the plurality for **"inContact"** app. By contrast, this does not mean

any particular will not have The Accused programs' Click to Call function with

Twilio. The MiTel, Inc. *et al*. provider is listed. "MiTel" may compete with Twilio

apps for the "voice" plurality. By comparison/contrast to "Callinize" (TenFold), which claims could use the plurality including "MiTel" (the "MyVoice" app widgets) and Twilio, both. Therefore, there are apps depending on the plurality of "voice" and/or electronic message applications and there are apps which may be essentially self-contained, bundled, global apps wrapped up in the same global package or bundle[54] such as "MiVoice" app using its own "MiTel" voice solution. It is unlikely that MiTel, Inc. *et al*. may be in an association with "Twilio" app widgets. In the alternative, an anti-completion joint team may be impending among certain owners of technology in the global marketplaces.

181. The Accused reads on Plaintiff Kaniadakis' **patent US-772 body of Independent Claim 15** and "the plurality" as evidenced with C.E.O., Chairman, and a co-Founder, Marc Benioff and The Accused's *Dreamforce* presentations as outlined herein. The Accused Defendant Twilio, Inc. *et al*. also at the event reading on patent US-772, IC#15



---

[54] Federal Communications Commission (FCC) licenses certain registered applications. The "Unbundling Rule" (Ref. Blacks' Law Dictionary) is to require (encourage) unbundling practice among its licensees. This practice is said to help promote fair completion and reconcile goods/services.

**Above; Body of Independent Claim 15.** After Plaintiff Kaniadakis had contacted

Marc Benioff's Office as outlined herein and mailed Notices. The Accused had

continued the infringing behavior. Plaintiff Kaniadakis had made videos promoting

these same related program applications with patent US-772. The Accused is

essentially moving from inside/on the CRM program, for instance to go off, outside,

using "external" programs for voice and electronic messages and moving to the

plurality of application programs and functioning on the plurality of web application

program sites. Therefore, gathering data and other business external to the Salesforce

CRM programs' technology and application programs.



<u>Above</u>; **Body of Independent Claim 15.** Also, this is a screen shot from The

Accused's *Dreamforce*[55] event and presentations with The Accused. The "Click to

Call" widget essentially remaining in a communication with the combination and the

plurality of programs in order to gather data as the widgets are passed off to other

---

[55] Among many of The Accused references is yet another, that is, <u>www.force.com</u> site. Compare/contrast to
"Visualforce" website application sites as for Developer's Guide Manual for "Click to Call" code and
"scripting" thereof. Theme or trademark is "force" in The Accused with some mentioned references herein.

knowing and unknowing plurality of people and the known plurality of program applications. Plaintiff Kaniadakis' has *Google, Inc*. (*Google Wallet*) investigating some hierarchy, infrastructure, among other things. Google had placed a marker or track on activities of developer accounts. There has been the flurry of activity since inventing and developing the tool, especially noted later, in 2010, on Plaintiff popular tool, app, or widgets.

182.    *TechCrunch, Inc*. had reported as late as February 24, 2015 (year 2015) that *Google*[56] was testing a new app or as an "experimental feature" working "right into search" pages or search results. The making voice phone call and sending electronic message feature has been followed and other patterns previous to 2010 as mentioned herein. Patterns including the likes of Facebook's *WhatsApp* and *Facebook Messenger* adding "voice" to[57] previously (only as) electronic message program applications on/in their own program apps and web application sites. The Accused Defendant SALESFORCE, Inc. *et al*. have known to have significant business ties to Google, and subsequently to Facebook. The Accused Twilio, Inc. *et al*. after its IPO reports (C.N.B.C., the stock channel) that up to 62% of its business providing goods/services for/to *WhatsApp* (acquired by Facebook).

183.    The Accused have ties to "*Google Apps*" including, but not limited to, at least one widget aiding with accessing The Accused programs' infringing technology "Click to Call" programs, "SAML" App.

---

[56] TECHCRUNCH report https://techcrunch.com/2015/02/24/google-hangouts-for-places/
[57] Likely to add value to what *Facebook* had acquired, that is, value to *WhatsApp* program.

184. Plaintiff Kaniadakis' documentations are including various instructional videos and other promotional documentations describing the art working on the plurality of "external" or third party program applications. A side-by-side comparison and contrast using patent US-772 the plurality of people, on the plurality of web site applications, using the plurality of programs for voice and messages may be representative as follows;

 

**Top shots;** *Google* starts testing method for phone calling and sending electronic message using the plurality of applications, starting with Google search site application. Top **LEFT side**, Google's testing technology. Top **RIGHT side**, Plaintiff Kaniadakis' patent US-772. **Below;** Plaintiff's performed demonstration on same test site on the next day using patent US-772. Videos pre-dated.



**Above;** this is exactly the same Google search page application link as TechCrunch reported on as the example about Google new app being tested, February 24, 2015.[58]



**IC #15**
**(a)(b)(c)(d)(e)(f)[.]**

**Including the reliant claim(s) of IC #15.**

**Patent US-772 15 (d) window, interface or application field display will pop-up or populate the "voice" provider.**

[58] Later this same year, 2015 Google's offer buying U.S. Patents 100% rights. Plaintiff Kaniadakis and Google, Inc. had a written contract. About this same time TechCrunch published SAP, CONCUR "Calendar Call". **Three (3) events coincided**; Google contract with Plaintiff on U.S. Patent; TechCrunch on Google "tests" app on Google's search page program application; and, SAP/CONCUR pose an infringement event on TechCrunch.

**Top;** Plaintiff Kaniadakis' patent US-772 the day after seeing reports. **Bottom;**

TECHCRUNCH reported on Google's testing the app on day before. However,

Plaintiff had been making instructional videos, promotional documentation and

screen shots at least before, 2010, publically describing patent US-772 and practice

of the art.  Refer to **EXH. "U" for more on claims chart.**

185.     Therefore, Plaintiff had been documenting the flurry of activities and

continued the growing concerns about any extent of encroaching and/or incremental

sorts of infringing programs' technology. Notices had been mailed to parties.





186.    US-772 IC**#15 (f)** **. . .** "using the combination with different types of the

object target program making each telephonic call" . . . . Callinize (Tenfold) and 8x8

"voice" app provider may be using the combination for voice calling and/or sending

electronic messages. Just as Callinize app stated the app is working with MiTel or

MiVoice app as one among the plurality. Callinize may be using the combination

with Twilio "voice" and/or electronic message app. Or, 8x8 app using the

combination with Defendants' programs' of SALESFORCE, *et al*. apps. Just as with

Twilio *and* MiTel, Inc.**;** 8x8 may not likely be using the combination with *either*, by

contrast. Since, 8x8 may be some competition instances of each the apps being themselves providers of voice and/or electronic message implementations.

**187.**    Patent US-772 describes" external" programs and the plurality of people and programs and computing devices. Plaintiff Kaniadakis has developed promotional and other documentations as "inside" and "outside" (so "external") the apps and so called third party programs. **EXH "D-2"**. **EXH. "S-2"**.



**Above;** "8x8" app and "8x8 Virtual Office" by 8x8, Inc. is one among The Accused programs' App Exchange App Store Apps. The body of Independent Claim and focusing on **#15(f),** but reads on all elements, components, attributes, features.

Focusing on the body of the Independent Claim # **15 . . .** "when utilized in a combination a plurality of known type object target programs [,] the client using a new program computer code scripting, performing [,] executing, by accessing" . . . . 8x8 describing integrations in a combination a plurality of known type programs including Google Calendar, Microsoft Outlook Calendar, E-mail client, Skype for business, and other program implementation, "ZenDesk", and The Accused Defendants' SALESFORCE, Inc. *et al*.

188.    The Accused programs' infringing programs' technology including Click to Call with 8x8, and 8x8 integration with "Zendesk"**; 15(f) . . .** "using the combination with different types of the object target program" . . . . The plurality of known programs such as *Zendesk* and *RingCentral* are typically using "Google Apps"; namely as, "Google Hangouts" (f/k/a Google "Voice"). Again, all in a connection with The Accused programs' infringing programs' "Click to Call" technology and widgets. Just as RingCentral and ZenDesk may be using Google Apps, Hangouts, inside/on and outside from Defendants' SALESFORCE programs'**;** Zendesk may be using Google Hangouts and/or 8x8 for "Click to Call" (infringing widgets) and separate provider "voice" calling features and/or electronic message products/services. The reverse may be true as well**;** 8x8 using Google Hangouts and/or Microsoft's Skype" apps for voice/messages. In this event, 8x8 a provider of voice and so are either Google's Hangouts or Microsoft's Skype[59]. Notices sent.

---

[59] *Apache* organization past history server part of server Skype licensed before MS acquired Skype.

**189.**     ACT (Sage)[60] had been mailed Notice. The Accused via 8x8 in a connection

and to The Accused. **EXH. "D-3"**, Digium, The Asterisk providers, Founder/CEO.

**190.**     One among Sixty (60) including *8x8* on App Exchange Store front.



technology *8x8* and "Click to Call" widgets. One among Sixty (60) infringing

programs' Click to Call technology infringing on all attributes, components,

elements patent US-772 the plurality of "external" programs including Independent

Claim focusing on **#15 (b) . . .** "including appointment book related screens [,]

calendar [,] schedulers of event chronology implementations [,] the new program

further including and enabling said VoIP including as" . . . The rest of all patent US-

722 elements are evidenced as outlined herein. The Accused programs' infringing

programs' technology Click to Call on external programs, inside/on and outside of

---

[60] Plaintiff had mailed Digium, ACT (Sage) Notices, and in a Callinize reference *via* 8x8 as a "voice" provider. Many others on The Accused programs' AppExchange and Marketplace apps have enabled "Asterisk" provider.

The Accused programs' including known plurality of programs including known CRM including program applications of The Accused, Sixty (60) uncovered in a connection to The Accused programs'.

191.    The fact 8x8 "voice" provider works on the plurality of the programs means apps on The Accused including Callinize, for one instance, are all working using the infringing method of patent US-772.

192.    Discovery will prove that the power of multiplication will likely vastly increase the number of infringing devices in a connection (back) to The Accused.

193.    The plurality of programs Google Map apps, and others. Again, Plaintiff Kaniadakis had been making instructional, videos, promotional materials teaching the art for the Exclusive Right to eliminate or exclude competition and for licensing the U.S. Patent-772.



**Above;** infringing programs' technology reading on patent US-772, by virtue of the plurality, *e.g.*, working on Map Apps.  For instance, Google Apps, Google's Map App. Plaintiff in fact had this working before Google and Google's Hangouts. Plaintiff Kaniadakis' made numerous videos and other documentations collaborating with elements of the patent US-772. It is very likely infringing devices had been inspired and copied Kaniadakis' style initially presented from Plaintiff Kaniadakis leading the technology. Many of the videos are remarkably using the same graphics and expressions as Plaintiff had been using for describing, practicing and teaching the art. Make a side by side comparison contrast. See the figure for *8x8* working the infringing widget "Click to Call" on the plurality of programs, Google Map program application, Google Apps by way of The Accused and Click to Call and widgets.



146







**Above;** Infringers copy remarkably the same expressions and graphics Plaintiff Kaniadakis had been making for many years.

Two screen shots from one video published on YouTube of Patent US-772, IC#15.

194.     **Below;** infringing programs' technology infringing on Plaintiff Kaniadakis' patent US-772, by virtue of the plurality, *e.g.*, working on search page programs and/or including the plurality among other places or sites.  For instance, Google Apps, Google's search pages. Plaintiff making and publishing videos as with virtually all the plurality of applications for evidencing the practice of the art.



Compare/contrast to other screen shots and programs' virtually all following Plaintiff

Kaniadakis despite the U.S. Patent and Notices mailed.



**Above;** Compare/contrast to the others and Plaintiff Kaniadakis' material describing the patent US-772 functioning on the plurality of the programs. It is not copying the graphics at issue. It is the pattern focused upon patent US-772.   Transcript evidences the above is available for reading on patent US-772. Material had been published long before all the infringers of patent US-772 and before infringers copying the ways Plaintiff has been demonstrating his United States Patent. Therefore, it is not dated to any time around the TECHCRUNCH report and Google announcing testing a new app on (Google) search pages. Plaintiff had been making the material way before The Accused and their infringing programs' technology "Click to Call" widgets have spread like a disease to steal or infringe on United States Patented technology, US-772.



**195.**   The Accused programs' infringing programs' technology Click to Call has a means for contributing, inducing infringers with the means to change tool tips displaying the branding of apps names. Therefore, making it easy for infringing to

simply change "Talking Head" or "Callndr Call" to read as some other brand and

trademark/service mark, logo or name for the "Click to Dial"[61] knock-offs coping

patent US-772, except using a different name to brand the "Click to Call" app.



**196.**    **Above;** "CloudCall Click to Call App" by Synety, Simon Cleaver, Executive

Chairman on video saying, *"Game changing, because it massively increases our*

*addressable CloudCall market"*. "*It's certainly 5, if not, 10x what it is here in the*

*UK. It has been doubling every six months"*[62].  As with others, infringing on US-772

IC#15 and using "Click to Call" on the plurality of the programs. He references

"search", and with the above reference illustrating how the patent works on website

applications. Furthermore, coping the way Plaintiff Kaniadakis teaching, practicing

the art published on public sites. Infringers even copy ways Plaintiff had made

---

[61] *8x8*, Inc. calls their widget "Click2Connect/click2Pop Web Dialer". Again, names like this are irrelevant.
[62] They advertise or promote as; "Click to Call From Google Chrome". As though a product "from" Google
and/or Google Chrome. As though Google makes and offers the infringing technology. Adding bogus "™".

instructional videos, advertised, promotional material and other works.



197.     **Above;** Patent US-772, IC#15 and one sample of Plaintiff Kaniadakis' from a

video capture. Among various promotions published using the plurality of web

applications, programs and sites. The arrow and the circle are "green" in programs in

connection to The Accused "Click to Call" infringing programs' technology. Besides

the direction and color, they are describing the same thing and, The Accused

programs' infringing. The "voice" (VoIP) service providers connected differ. VoIP

itself is not the issue. US-772 consumer VoIP, Skype used.

198.     **Below;** Every promotional, instructional, video, screen shot type material The

Accused infringers have been making  has been essentially repeated from the

materials Plaintiff Kaniadakis had made and developed pertaining to the teaching

and practicing of the art, his patent US-772. These are just samples. Infringers have

no right to mislead and deceive the public and businesses to think that the products

 

and technology are the same represented by patent U.S. Patent-772.

 

**Top left;** "CloudCall, by Synety", an imitation infringer. **Top right and bottom**

**left;** Plaintiff Kaniadakis' patent-US-772, electronic message/mail, the original

article. Infringing elements on reliant claims to the parent, 15, and on IC#15.

---

[63] Bogus ™ by coined phrase, as though is taking ownership to related technology or "from" Google Chrome.

 

**Above left;** CloudCall, by Synety. **Above right;** Patent US-772, IC#15. Plaintiff's (red) Talking Head graphic design art, logo/icon, next to a list of phone numbers is the distinguished mark and easily seen from other infringers. Each tool is on "YP" website application program. "YP", the U.S., Boston, MA listing. Or, as "Yell" in the UK. "*The Real Yellow pages*", captioned. YP is a provider of "voice" (VoIP), refer to provider list, **EXH. "D", Table: D-1**, "YP" is formerly AT&T Interactive and AT&T Advertising Solutions, *Yellow Pages* (YP).

**199.**     The difference(s) associated with "voice" (VoIP) is not the issue.

**200.**     The difference(s) associated with electronic message/mail is not the issue.

**201.**     The coined phrase or expression Click to call, dial, etc. is not the issue. The way the expression misrepresents the method or process with products/services infringing on patent US-772 is the issue.

**202.**     The difference(s) in any association with or without features about electronic "voice" (VoIP) and/or electronic message/mail programs, widgets or "apps" is not

the issue.

**203.**     The voice (VoIP) is not what is claimed. The method of the known plurality

of VoIP programs are made to work, action and function on the known plurality of

programs is the issue.

**204.**     It is any connection to The Accused programs' so called click to call

component, attribute, part, element at the heart of the issue in today's Complaint's

U.S Patent infringement issue on registration #8,666,772 against The Accused *plus*

the **EXHS. "D", Table "D-1"**, and the single (one) named U.S. Trademark

infringement issue on "Call Calendar" against Plaintiff's registration #4,469,219

**EXHS. "B" and "C"**, *plus* one U.S. Trademark related to Plaintiff's *Talking Head*

the graphic design art issue registration #5,021,480 **EXH. "B-1"**, which are all,

making up the violations and charges herein.

**205.**      Because infringing devices are importing and/or exporting material as

outlined herein The Accused are in connection to violations of *United States* law and

treaties thereof.

**206.**     Because infringing devices importing and/or exporting material is involving

interstate commerce and/or international (global) events, encounters, and related

business to commerce into and/or from *The United States of America* and at least

subject to material and any matter involving In The U.S. Patent and Trademark rules,

law and regulations and statues thereof; as outlined herein The Accused are in

connection to violations of *United States* law and treaties in connection thereof.

**207.**     IC-772 **# 15 (a)** reads <u>. . . "the screen display on said computer displaying the</u>

object target program interface" can tie in with **#15(b) ...**"including appointment book related screens **[,]**". . . . Operational words, in terms of the element, used by Plaintiff has used as "including" also as "related screens". In the second instance, (and as first instance in the **body of the claim # 15**) that is next given following the term "... comprising" **[;]** The element in the claims reading as . . . "the object target program" . . . . At this point an element which has enabled the known plurality of VoIP. With the second (or next instance) in the claims an element **#15(a)** . . . "including appointment book related screens **[,]** an element of **15 (b)** which can be reading (or following) **15 (a)**. Indicated in terms of the comma another element, component, attribute, ingredient, feature thereof. Except, the **body of the Independent Claim #15[.]** does not specify and modify the body using the legal term of art "steps" following the term of art . . . "comprising **[:]**". Plaintiff Kaniadakis had made this making the Independent Claim broader with the meaning of "What is claimed" clause and what is following, proceeding with the elements **Independent Claim's #15's** interpretation. **EXH. "U"** more has on claims chart.

208.     On point is that in the event the infringing devices are working and functioning as described in at least one place, one instance, one site, then it is unlikely that the infringing devices have in the long run of the infringing program and the infringing device the means to exclude "related screens". Even when analyzing the relatively speaking (most) narrowest interpretation of the Claim and all the elements, components, parts, attributes thereof. For example, in the event the program is infringing on one element, then it is likelihood of causing the infringing

device on others (other elements). Other programs and other infringing devices will run the same infringing parts on patent claims of US-772 and as embellished upon or as described on and with the US-772 patent and Plaintiff Kaniadakis' meaning of the art.

209.     The US-772 Independent Claim #15 has not been limited in terms of "steps". Hence, the method or process comprising the elements need not be interpreted in any order thereof.

210.     Rules and the law do not require letters separating the described patent and **"<u>What is claimed [:]</u>"** as parts, elements, components, attributes.

211.     The comma marks and punctuation is used. Along therewith appropriate markings, punctuations and things as required by the law and belief complying thereto.

212.     Just as the evidence that "Callinize" infringing programs' Click to Call technology is working on and infringing on the <u>. . . "related screen [,] calendar [,] . . .</u> element on the claim of US-772 **#15 (b)** thereof this is tied to, tantamount to, and very least inferences, part and parcel, inextricable, inextricably related to, inextricably separated, a part of, to the functioning in/on all the known plurality of apps including MiTel, Twilio, *and others* working <u>. . ."in combination with"</u> **(body of #15)** <u>. . ."using the combination of different types" . . . (element 15f)</u> Callinize "Click to Call" widgets are using for <u>. . ."said calendar related implementation" (attribute **# 15d**)</u>: The plurality of other Sixty (60) programs and infringing devices are infringing in the same way, method or process in any reference to <u>. . . "related screens, calendar . . ."</u>. Therefore,

Twilio, CISCO, Genesys, MiTel, 8x8, *et al.* are infringing on US-772, IC#15.

213.     Refer to the lists "Callinize" reported, all the plurality "apps", which are otherwise jointly and severely among The Accused programs' infringing programs' technology.

214.     For essentially the same reason as above, because the nature of the patent and the claims have been set forth reading on more broadly the scope of the Claim 15, but for the evidence that one app or "Widget" gadget, adopter, connector, is producing the infringing device then any/or all among any one infringing this is tied to, tantamount to, and very least inferences, part and parcel, inextricable, inextricably related to, inextricably separated, a part of, to the functioning in/on all the known plurality of apps including the same infringing components cloned repeatedly among *at least* one, The Accused programs' technology, *and others* "related to" the Sixty (60), in connection to The Accused programs' infringing programs' technology on patent US-772. They are from the same egg, that is, the parent of the patent US-772, Independent Claim #15. Just like one cannot separate the "related screens" from the elements, attributes, components: One cannot separate the plurality of the programs described. Simply put, if it is working one then it is infringing on them all. Stemming from The Accused, and from the power of multiplication, each in a pedigree inherent upon the related infringing programs and infringing devices thereof.

215.     The lists including The Accused programs' infringing programs' "Click to Call" technology infringing on patent US-772 has been material discovered and presented as **EXHS. "D"** and **"D-1"**. The lists are not gathered to selectively point out separately

each the components, parts, elements, attributes, features or "steps" in order for an outlined chart or for side-by-side comparisons/contrasts in order to illustrate what is comprising infringing elements, attributes, components, features of patent US-772. Each the Sixty (60) for the list of **EXH. "D"** has all the elements of patent US-772 pointing to at least the Plaintiff's Independent Claim, #15, the parent Claim subject to this complaint in suite and to the case-in-chief. Therefore, illustrating all the elements of the method or process claim(s) is representative of all including The Accused, Defendants' SALESFORCE, Inc. *et al*. infringing programs' Click to[64] Call related technology. All the programs are using all the elements.

216.    Widgets may have more features, "steps", elements, components, attributes that patent US-772. However, all the elements described in the patent and comprising patent US-772 are infringed upon. For example, Defendants' Twilio, Inc. *et al*. programs' infringing technology may be to an extent of infringement involving the "Click to Dial" related infringing technology and infringing device of Defendants'' SALESFORCE, Inc. *et al*. By contrast, Twilio's "Click to Call" technology and related widgets may not be a part of its co-Defendants'. The case-in-chief in this Complaint is limited to the tie and connections to The Accused programs' Click to Call infringements against patent US-772.

217.    Below; The Accused and focusing on Defendants' Twilio, Inc. *et al*. description from video excerpts in selected screen views used herein.

---

[64] There exist many various cheap imitators. Even as enterprise incorporations using variations. "Call and Call" for another instance. The amateur belief is to "just change it a little". In any event, it is not this coined expression claimed. In an alternative, the malleus intent by any/all to infringe and take risk.



**Above;** (emphasis added) Twilio references Salesforce's (SF) and the following;

a.  "Visualforce" (VF); as outlined herein for making the attributes, components of infringing programs' "Click to Dial" infringing technology. Ref. Developer's Guide manual. When Plaintiff demonstrated on the VF Page that patent US-772, IC#15 action and function, converting, providing, invoking means that SF has means for gathering the same method when others are building on SF's platform, **(b)**, below, **any** "Click to Dial command", **(c)**, below "Open CTI **or** SF CRM", **(d)** below, differences may be accessing "voice" programs.

b.  SF's www.Force.com as yet another SF site as platform for building and launching, among other things, the infringing programs' technology on patent US-772.

c.  **["] . . . Completely outside of SF [,] or inside of SF reducing dependencies . . . ["]** (emphasis added). Thus, reducing dependencies on such U.S. Patent-772 and increasing dependencies upon The Accused programs' infringing programs'

technology infringing on at least all the elements of US-772, IC#15. Infringers have also described as "outside" and as "external" points of references and as described with patent US-772. As described by *Twilio, Inc.* et al. engineers.

d. **["] . . .** Embed communications systems **inside** SF" **. . . ["]** . . . allows for things like Click to Dial **. . . ["]** (emphasis added). Providers bring voice (VoIP) and can add "click to call" related widgets. This is import part. See **(a)**, above. The Accused are **15 (f)** imbed . . . "using the combination with different types" . . . , for example, together. Just as Twilio is doing it**:** Others among an at least a list including Sixty (60) **EXHS D, Table D-1** do it, too.

e. The Accused have enabled the plurality means of/for creating hybrid forms, while at the same time and space creating no more or less than unlawful acts against patent US-772 and registrations of The U.S. Patent and Trademark Office.

f. Each infringing machine repeating all the elements at least therewith, as may be extendedly described[65], and as intended described US-772.

218.    Therefore, even as simple as what The Accused is calling a "First step", starting issues on infringing on the element of **#15(a)**. As the user would be dependent on accessing an account on Defendants' SF's sign in / log on screen display on the SF object target program. Part of the infringing element on **15(a)** wherein, taking or stealing users away from the Official patent US-772 process of making an account, the method building the patent US-772 and products/services therefrom Plaintiff

---

[65] Perhaps a differential existing akin to extended analytic *vs.* obvious analytics.
https://books.google.com/books?id=yIldd9K9Rm0C&pg=PA55&lpg=PA55&dq=extendedly+synonym&source=bl&ots=nCv-nrEjAy&sig=G7Sqh7Xg23g0tl-TX6NXfBkQOwQ&hl=en&sa=X&ved=0ahUKEwi-1Y-oO9HTAhXC6SYKHTsBAQ4Q6AEISTAH#v=onepage&q=extendedly%20synonym&f=false

Kaniadakis' accounts causing injury, harm, punitive damages, and disadvantage on every infringing device. Even when the infringing device has been made in the First case or First user or the client has otherwise made available end-users and/or to the public.

219.     US-772, IC#**15(a)** can be using the known object programs' web site application program of The Accused, but for The Accused programs' causing the infringement programs, which unlawfully compete without any or all required authorization, approval and/or licensed from Plaintiff Kaniadakis' patent US-772. The Accused Defendant Twilio, Inc. *et al*. has basic enterprise licenses at approximately $15,000/mo. (fifteen thousand USDs per Month). It is easy to learn *Canadian* companies, *and others*, want to import/export business in *The United States*, using the infringing machine, and to continue to compete against the law here *In The United States of America*.

220.     <u>VoIPStudio App</u> is one among Sixty (60) illustrated below, screen views from their video. The Accused had received Notice and screen views akin to these, among other material, mailed to The Accused.



**Above;** Screen shot of an action, component, element, attribute. Showing **15(d) . . .** "providing by the configuration via the computing device". . . .

 **Below;** element **#15(e)** the "voice" (electronic VoIP/message) is the known plurality. Evidencing client had accessed the configured stored in the memory on each the users' infringing machine. Stored is the provider



for the "voice" (VoIP, telephony, the known part of the plurality). In this event, anybody in the combination of the known plurality of VoIP programs, **Table D-1**, and comprising an element therefrom **#15 (b)**.

221.        VoIP Studio describes the infringing machine as, *"VoIP Studio SalesForce plugin, Open CTI plugin for VoIP Studio"* (emphasis added). After going through every element of/for US-772, then each the users are in essentially play back mode. From the elements, components, attributes, features, list for example comprising Independent Claim #15, the users' machines, which had been given some extent of access to the

interface hereof, which had been the infringing machine process or method producing the access and product/service as **["] . . . any** Click to Call component . . . **["]**. Body of Independent Claim #15 reads on (The Accused infringing on "**<u>any</u>**") <u>. . . "in the combination the plurality including the known type" . . .</u>, namely, Salesforce's programs' technology and interface are displayed and functioning. Infringing on US-772 15 because any "Click to Dial" is accessing "Open" CTI of/for The Accused **15 (d)** <u>. . . "providing by configuration" . . .</u> means for/of **["] . . . allowing . . . ["]** at least the following components and/or attributes:

a.   **["] . . . enabled for Open CTI <u>or</u> SALSEFORCE CRM . . . ["]**;

      **1.**   SF's "Open CTI" for inside/<u>outside (external)</u> the plurality of programs;

            **i.**   The Accused co-Defendant Twilio; infringing programs because functioning inside and outside (external) to SF's interface screen display;

            **ii.**   At least Sixty (60) EXH. D and Table D-1 infringing programs because functioning inside and outside (external) to SF's interface screen display

            **iii.**   Among any/all in combinations thereof above;

      **2.**   "SF's CRM" for <u>inside</u> SF's program interface;

            **i.**   Among at least Sixty (60) referenced above;

            **ii.**   Among "voice" (VoIP) providers Table D-1;

            **iii.**   Among any combinations thereof **<u>and</u>**;

b.   **["] . . . <u>any</u> existing Click to Call . . . ["]**;

1. SF's Lightening "voice";

    i.    Any/all third party apps such as among at least Sixty (60) identified including SF's App Exchange App Store front, **EXH. "D"**;

    ii.    Any/all third party apps such as among providers of electronic "voice" VoIP infringers on #15 (and/or electronic message/mail providers, infringers on reliant claims to parent to #15), **EXHS. "D", Table D-1.** Providers of voice by SF, however, another provider including electronic message/mail feature(s) not provided by SF's "Lightening voice". Reliant on third party providers[66] in **Table D-1**, which have messaging (related) features. **EXHS. "R" and "T-1"**.

2. **["]... Because of Open CTI flexibility ... ["]... ["]... allows for things like click to dial ... ["]**. Any/all described as "Click to Call" (dial, talk, chat, text *et al*.) becoming infringers inside/outside ("external" or third party application programs) of The Accused programs' technology and related screen display programs. **EXHS. "Q", R", "S", "S-1", and "T-1"**.

222.    Outline above textual related charts the process or method from the material publically disclosed at SF's *Dreamforce* with The Accused co-Defendants' presentations including Defendants' Twilio Officers, Managing Engineer, and from Defendants' SALESFORCE's *et al*. "Visualforce" Developer's Guide Manual, in which outlined the method for infringement fits in to and has been causing contributory,

---

[66] This may be where Dreamforce event Marc Benioff presented other combinations of the plurality, *Facebook, WhatsApp, WeChat, SnapChat, Twitter, et al.* As heretofore message program apps. Later, adding voice. Hence, for making a voice phone call and sending electronic messages. Infringing on US-772 in the event "Click to Call" becomes implemented "outside" and as "external" <u>via</u> The Accused, which had already been described with Kaniadakis' U.S. Patent-772, "external" programs.

inducing infringers and infringement with The Accused goods, products/services and continue to be causing the same even after given repeated Notices and warnings The Accused about the same.

223.     The Accused programs' infringing technology "Click to Call" program has made third party programs dependent by law on "Open CTI", **U.S. Patent 8,731,151B2 issued May 20, 2014**. **EXH. "V"**, SALESFORCE'S AS ASSIGNEE (not inventor).



224.     **Above;** the sample submitted including at least Sixty (60) with **EXHS. "D"** and with **Table "D-1"** listing "Genesis, Inc." programs' technology "Click to Call" called "PureCloud", *among others/and others* captures in this "FAQ" literature some inducing and contributory infringement with The Accused;

**["] . . . PureCloud for Salesforce is <u>based on the Salesforce Open CTI</u> APIs, which is what Salesforce currently supports. The CTI Toolkit has reached end of**

**support with Salesforce and is not used with the integration . . . [“][.]** (<u>emphasis</u> <u>added</u>)

**Above;** see the smaller text along bottom of the screen shot reads as;

**[“]. . . PureCloud℠ by Genesys is a cloud collaboration communications, and customer engagement platform that <u>takes full advantage of the distributed nature of the cloud</u>. PureCloud provides rapid deployment, industry-leading reliability, and unlimited scalability, to connect customers and employees in new, <u>more efficient ways . . . [“] [.]</u>** (<u>emphasis added</u>)

   **a.**   Notice infringing technology claimed as "Service Mark" (SM);

   **b.**   Use of the word "ways" could be in terms of "method", and others thereby attributing themselves as having the technology;

   **c.**   Collaborations with infringing upon technology is the among Complaint's concerns, passing along the technology, off shoots, and other concerns which cannot be regulated and accounted for when infringers ignore the law, "distributed nature of the cloud". Taking advantage of **patent US-772**. Even after repeated Notices.

**225.**     "Open CTI" has been promoted technology through The Accused, Twilio and Salesforce, Dreamforce, <u>et al</u>. Open CTI widget had been issued **U.S. Patent 8,731,151 B2 May 20, 2014** US-151. One person named, "Gautam" Vasudev, believed employed by Salesforce, Inc. (SF) was named and referenced with Twilio, Inc. at SF *Dreamforce* as the person who had created Defendant SALESFORCE'S "Open CTI".

226.    Plaintiff Kaniadakis' patent **US-772** predated issue date and as prior art over

patent **US-151**. **EXH. "V", U.S. Patent 8,731,151. (SALESFORCE, INC. AS**

**ASSIGNEE.)** Patent filed <u>after</u> Plaintiff's.

227.    Distinction had been outlined that as adaptors, connectors, consoles, bridges,

modules, tools, apps, scripting code, widgets, gadgets, which connect the infringing

programs' technology, Click to Call, or the various other names used for identifying the

same, are not on the surface what appears to be the emphasis of the extent of

infringement. The extent of the infringing nature may be greater disclosed upon

discovery. By evidence of *Fortune 100 and 500 Companies* which The Accused

collaborate with as well as many including those others outlined with at least Sixty (60)

**EXHS. "D"** and **"D-1"**, makes the number massively greater in the number of

infringing machines.

228.    At least one (1) operational part of patent US-772, IC#15 may be included with

an infringing patent-in suite **# US-151 and/or** The Accused infringing programs'

technology. **SALESFORCE'S (AS ASSIGNEE)** #US-151 reading on **patent US-**

**772**. An emphasis about extent of infringement has been focused herein upon the

elements, components, attributes, parts, features or "steps" as The Accused described;

Namely, comprising Independent Claim **# 15, US-772**.

229.    **SALESFORCE, Inc. patent in-suite # US-151** essentially is in the reference to

the traditional, conventional or known plurality of programs typically called "CTI". A

significant difference appears that with the **SALESFORCE, Inc. patent in-suite # US-**

**151** the universal like connection to the claim of the "browser connector module".

230.　　There exists the known program plurality of such programs other typical CTI. **Patent in-suite # US-151** comprises elements in claims issued over CTI program art, and the "application" appears patentable because the **patent in-suite # US-151** appears to be promoted and described in commercial literatures, technical literatures and so forth, as the new program known as an "Open" type CTI relative to prior art.

231.　　The Accused, SALESFORCE, Inc. *et al*. "Open CTI" **# US-151** is using the method or process and practicing the art in competition to **patent US-772** because infringers have been using and continued to be using the plurality of programs when utilized in the combination the plurality of known type object target programs.

232.　　SALESFORCE, Inc. *et al*. "Open CTI" **# US-151** describes CRM "applications", and drawing embody and appear to describe the typical SALESFORCE "CRM" interface (Graphical User Interface, GUI or UI). **<u>EXH. "V"</u>, Sheet 3 of 5, FIG. 3, part [300]**. Whereas, infringers are using the plurality of electronic "voice"/message elements and "Click to Dial" related widgets of sorts on the plurality of programs and "applications", infringing on Plaintiff Kaniadakis' **patent US-772** including the following way(s);

　　**a.**　inside and outside ("external") to/of the plurality of programs intrinsic and extrinsic to "CRM" and "applications" claimed;

　　**b.**　inbound and outbound "voice" (VoIP) implementations;

　　**c.**　using the combination with different types infringing "Click to Call" widgets;

　　**d.**　using The Accused programs' infringing programs' "Click to Dial" when utilized in the combination with "Open CTI" technology.

233.    The Accused Open CTI **# US-151** appears to describe and appears to claim the action-function of the **["] . . . browser connector module . . . ["]** element, component, part, feature or step as having some action-function in connection to related "Click to Call" widgets.

234.    The Accused Open CTI **# US-151** appears to describe and appears to claim the action-function of the **["] . . . browser connector module . . . ["]** the [67]Claim's elements, components, parts, features or steps as having some action-function means of/for connecting or as the connector Click to Dial and/or "voice" (VoIP) related programs and the plurality of implementations at least infringing on Plaintiff's patent **US-772, IC#15** and/or dependent claims/reliant claims thereof.

235.    The Accused Open CTI **# US-151 part [522][68] "AppEx" FIG. 5** would be consistent to at least one "voice" provider among the list outlined as **EXH. Table, "D-1"**.

236.    The Accused Open CTI **# US-151 part [522] "AppEx FIG. 5** would be consistent to at least in combination of including at least one (1) among the list outlined as **EXH. "D"**, with/without including any one (1) or more of the plurality a combination of providers of **Table, "D-1"**.

237.    The Accused Open CTI **# US-151 part [528] "AppEx FIG. 5** would be consistent to at least one (1) infringing machine, method or process on patent US-772 claims. "Browser Connector Local Storage" reading on patent US-772 **body of**

---

[67] Statutory clause for the Open CTI **# US-151**independent Claim 1 was not obvious to outline with more particularity herein.
[68] Sheet 5 of 5.

**Independent Claim 15** reads …"stored in a memory"… **15(a) . . .** "accessing said memory and the computer database of the client" . . . of the plurality. The Accused Open CTI **# US-151 patent** description described configuration related to "voice" (VoIP) and local storage with reference to the parts, [528] and [522]. Complaint outlined material in reference to addressing the same as outlined herein. US-151 reads on US-772 **#15 (b)** as more broadly claimed;

   **a.**   as when configuration accessing The Accused (SF) CRM as outlined herein and;

   **b.**   as when configuration accessing "Open CTI" in the event of an administrator as outlined herein (co-Defendants' Twilio, Inc. *et al*. samples from *Dreamforce* video presentation screen views and transcripts thereof), and;

   **c.**   as when configuration accessing the plurality of programs whatsoever, thus accessing any users' account as outlined herein.

**238.** For many of the same reasons as provided and outlined above, part [520] "CTI Adaptor Library (.DLL)" storage accessing The Accused programs' connected server(s) on premise and/or in the cloud or in a combination thereof including parts [508], [534], [530] "Database", local and remote connections in combination with parts [502] including said [520], [522] and [518] to plurality of users (plurality of people, programs and machines) [512], [514], The Accused **FIG. 5, Sheet 5 of 5, part [500]**

**239.** [520] "CTI Adaptor Library **(.DLL)"**[69] storage accessing The Accused programs' connected …"using the combination with different types"… to infringing programs' technology **EXH. "D"** and/or, **Table "D-1"** the plurality of electronic

---

[69] An extension term of art which jargon typically describes as having a "call" or "calls to" sort directory action-function. This should be distinguished from action-function layperson's making a "call" or "voice" phone call.

"voice"/message (VoIP) program providers. Once **Table "D"** and/or **EXB. "D"** representative of part **[402]** "Telephone System" in the combination and/or establishing as a part **[404]** identified as **["] . . . partner DLL . . . ["]** with The Accused **EXH. "V"**, **FIG. 4, Sheet 4 of 5, part [400].**

240.        All the elements of the parts comprising the claims on **# US-151** are included and appear infringing on patent **US-772**. The rest of the SALEFORCE **#US-151** "CTI" (connector) is not required to prove infringement.

241.        The Accused programs infringing programs' including "Open CTI" said "application" stated in the claim has, in particular, infringing on the elements to at least of related the components of the **["] . . . browser connector.EXE . . . ["]** with reference to at least one (1) of the plurality of the VoIP programs and/or reliant claims including electronic message programs.

242.        The Accused programs' technology **EXH. "V"**, **["] . . . browser connector module . . . ["] EXH. "A", body of Claim 15** … "when utilized in a combination the known type object target programs" . . . . **#US-151** element appears infringing on **EXH. "A" patent US-772** . . . "when causing the computer system to perform operations, the operation comprising" . . . the elements, components, attributes in the complete list comprising (any order) of at least **patent US-772, IC#15**[.]

243.        The Accused and infringing programs' "Click to Dial" infringing programs' technology. However, **SALESFORCE, Inc. patent in-suite** cannot build **EXH. "V"**, **#US-151** without infringing, so it appears, upon all the elements of **Plaintiff's patent US-772, EXH. "A"**.

244.    The Accused **FIG. 5, Sheet 5 of 5, part [500]** appears infringing on at least one (1) US-772, IC#15 among at least Sixty (60) with **EXB. "D"** when in combination with **Table "D-1"**, SALESFORCE'S *AppExchange* App Store front outlined herein. Parts [516], [522] "Browser Connector **(.EXE)**" <u>and</u> **"AppEx"** (API), respectively, **#15(d) <u>. . . "via</u>** the new program". . .**<u>via</u> the computing device of the phone numbers on the screen in effect **executing** the VoIP in said object target program code and related computer code". . .** . The users accessing The **AppExchange** and the apps code on client's side **. . . "enabling said VoIP including as an extension, add-on and plug-in for the database on the computer" . . .** .

245.    Turning back to sample Callinize (Tenfold) App using infringing programs' technology of The Accused including "Open CTI". Unlike some among the Sixty (60) **EXH. "D"** utilized in the combination with <u>Table "D</u>" of voice (VoIP) providers' programs' "CTI", all using "The Accused programs' "Open CTI", Callinize using SF's Open CTI, and each will come with the infringing programs' "Click to Call" technology. **Below**; <u>. . . on the object target program including appointment **related screens . . .** </u>(emphasis added).



Hands on Salesforce Training Part I





**246.**     "Steps" are essentially irrelevant in screen view samples. Separating elements

comprising all infringing components from any/all "CTI" programs' technology and

focusing on infringing aspects of "Click to Dial" program helps demonstrate where

some infringement becomes evidenced.

**247.**     **Body of Claim US-772 IC #15** reads with the points of reference inside/on and

outside ("external" or third party programs) with "the plurality of the known type"

program(s), "the new program" (e.g., web application or native application) and "the

new program" made (built) using the machine, method or process claim and described.

The Accused programs' Marketplace Apps Sores including programs listed with SF's

**AppExchange EXH. D"**, electronic "voice" (and message) providers, **Table "D-1"**

are in a reference to and among "the plurality" of program(s) "external" and third party programs accessed.

248.     There is no need as such for finding and to describing any/all way(s) that each The Accused programs' infringing programs' technology may be interacting in combination, reading on connecting to such the plurality. Means for/of accessing such as CTI itself and infringing programs' technology helps in reference to separate infringing elements, components, attributes, parts from patents **US-772** and the questions pertaining to patents-in suite **#US-151**.

249.     Screen shots above describing The Accused programs' infringing programs' technology working on CRM screen display and screen display outside and "further including" the plurality. Therefore, **#15 (b)** pointing to the plurality including . . . "appointment book related screens [,] calendar [,] schedulers of event chronology implementations [,] . . . . CRM has these related elements. Also, going from one web page to the next, one program application to the next (tab, window, page, *among other* electronic links) becomes related to the plurality referenced point.

250.     Email client is to the plurality**:** just as to the plurality calendar implementation samples offered. Just as **body of Claim 15. . .** "when utilized in a combination a plurality of known type object target programs**[,]**" was the interface of The Accused programs' CRM related display screens **15(a) . . .** "using the screen display on said computer displaying the object target program interface using said computing devices[,]"



**Patent US-772**: including implementation on the plurality of the application programs.

**Top**; E-mail program applications; **Bottom;** Calendar program apps.



**Below;** At the SF's *Dreamforce*, Developer Event, a Twilio Inc. *et al.* role teaching, practicing and infringing on the art against **patent US-772**.







**251.** Using the plurality, connecting the plurality in reference to using VoIP/message programs on the plurality of program applications e.g., web site applications, e-mail clients, advertisements, business and networking, social and search page program application sites. The Accused have spread the amount of the infringement moving as screen shots have shown on *Dreamforce* events to using the plurality, social application programs and so forth.

252.     A **chart patent in-suit US-151 IC #9**: Legend bold introducing the

component. When the element has been already introduced then reading on later

infringes on which element was already the introduced element. Thus, the element

reading on (order of) the claim;

**CHART KEY**[70]: **Bold face claim language of The Accused's #US-151 which**

**seems to read on patent US-772:**

| Description/Claim | Patent US-151 | Patent US-772 |
|---|---|---|
| **US-151 Body of Independent Claim # 9.** | **A CRM system** for use **with** desktop **computer**[,] **comprising [:]** | **a plurality of known type object target programs [,]** ...using a computing device [,] **a computer system** [,] program codes **accessing the new program stored** in a memory... **[,]**the operations **comprising [:]** |
| US-151 element(s) of **#9 (b)** | a **browser** connector **configured to exchange call messages** with said adapter; | the new program further including and **enabling said VoIP including as an extension, add-on and plug-in** for the database on the computer |
| US-151 element(s) of **#9 (c)**<br><br>**(Continued . . . )** | a **plurality** of CRM **browser windows**;<br><br>**(Continued . . . )** | accessing said memory and the screen display on said computer displaying **the object target program**<br><br>**(Continued . . . )** |

---

[70] It is not necessary and there is no significance to the use of letters, as with US-772, and The Accused's patent does not use letters. For convenience to describe, compare/contrast the two letters are used comprising elements, components, parts, steps, attributes of The Accused's patent. The first was given as **"(a)"**.

| US-151 element(s) **9 (d)** | a **web application configured** to display **said CRM** said **browser windows and to communicate with said browser** | changing the memory and the computer database of **the client** via **the new program a configuration accessing** the database of the clients computing device **enabling** the known VoIP **on the object target program** |
|---|---|---|
| **Description/Claim** | **Patent US-151, IC #9** | **Patent US-772, IC# 15** |
| *"wherein"* of **9(e) and 9(b)** element(s) in claim language and, back to US-151 **body IC # 9** | **said browser** connector **is stored on and executable by** said desktop **computer** | **executing[,]** by accessing **one or more processors** in using a computing device, **a computer system**[,] |
| *"wherein"* of **9(f)** element(s) **9(b)** claim language, and back to **US-151 body IC # 9** | **said browser** connector **comprises** an integrated **set of computer executable instructions residing on and executable by said** desktop **computer** [;] and | **A new computer program code scripting** [,] performing [,] **executing** [,] by accessing one or more **processors** in **using** a computing device **[,] a computer system** |
| *"wherein"* of **9(g)** element(s) **9(b)** and **9(d)** claim language and, back to **US-151 body IC # 9[.]** | **communication** between said **browser** connector **and** said **web application** is local to said desktop **computer [.]** | A method for a client **using the plurality of known VoIP** in contacting **and communicating with a** plurality of people **said VoIP implementation** when utilized **in a combination . . .** |
| **(Continued . . . )** | **(Continued . . . )** | **(Continued . . . )** |

| Description/Claim | Patent US-151, IC# 1 | Patent US-772, IC #15 |
|---|---|---|
| **Body of US-151 Independent Claim #1.** | **. . .** application for managing **customer** service **calls on a** desktop **computer [,] comprising [;]** | A method for a client **using the plurality of known VoIP** in contacting and communicating with **a plurality of people said VoIP implementation** when utilized in a combination **. . . [,]** the operations **comprising [:]** |
| *"wherein"* clause of **1(c)** element(s) **1(a)** and **1(b)** claim descriptions and, back to **US-151 body of IC# 1** | **[;]** wherein **communication between first and second domains is local** to **said** desktop **computer [;]** | A method for a client using the plurality of known VoIP in contacting and **communicating with** a plurality of people said VoIP implementation **when utilized in a combination**  <br><br>**a plurality of known type object target programs [,] …**using a computing device [,] **a computer system [,]** program codes **accessing the new program** stored **in a memory and a hard drive of a non-transitory computer readable storage medium of said computer system causing . . . [,]**the operations comprising [:]  <br><br>**15(d) . . .** "wherein **creating a new use of the client's screens including VoIP** therewith" . . . |
| **(Continued . . . )** | **(Continued . . . )** | |

| (Continued . . . ) | (Continued . . . ) | 15(f) **. . .** "using the **combination** with different types of the **object target program**" . . . |
|---|---|---|
| *wherein* clause of element(s) **1(d)**, **1(a)** and **1(b)** claim language, and back to **#US-151 body IC #1[.]** | **[;] and** wherein said first and second modules **comprise as integrated code base stored in a non-transitory computer readable storage medium in said desktop environment [.]** | This also will read on latter claim language cited above in bold. |
|  |  |  |
| **Description/Claim** | **Patent #US-151, dependent claims** | **Patent US-772, IC# 15** |
| US-151 claim language of **# 3** reads back on **#1** | **. . .** of claim **1**[,] wherein said second module **functions as a browser connector for said telephony application** [.] | 15 (b) **. . .** [,] the new program further including and enabling said VoIP including **as an extension, add-on and plug-in for** the database on the computer**[,]**<br><br>15(d) **. . .** "wherein **creating a new use of the client's screens including VoIP** therewith" . . .<br><br>15(f) **. . .** "using the **combination** with different types of the **object target program**" . . . |
| US-151 reliant claim **# 4** language reads back on **#3** | of claim 3[,] "wherein **said web application** includes an | 15 (a) **. . .** "**the screen display** on said computer |

| | | |
|---|---|---|
| | iFrame for supporting **said softphone [,] and said browser connector is configured to communicate with said iFrame" [.]** | displaying **the object target program interface** using said computing devices". . . [,]<br><br>**15(b) . . .** "changing the memory and the database of the client via **the new program a configuration accessing** the database of the clients computing device **enabling the known VoIP on the object target program"** . . . . |
| | Refer to other IP Charts at **PLAINTIFF'S EXH. "U"** | |
| | | |

253.     The Accused patent **#US-151 ¶** 7 described claim # 4 reliant of  dependent

claim # 3 with the following [**"**] **. . . Fig. 3 illustrates an exemplary graphical user

interface [300] including a softphone graphic [304] such as an iFrame-

supported window . . . ["**]. The element is not needed to be described reading on

patent US-772, the parent IC#15 and/or on reliant claims. **EXH "A"**, Patent US-772

claims and elements thereof more broad. Therefore, the detail specified with **EXH.

"V"**, #US-151 is not required for The Accused to be infringing.

254.     Again, the focus remains upon the action-function of "Click to Dial".

Infringing action-function focusing on the known "voice" program applications or

means of/ for connecting to the same is more specified with **patent #US-151** than

more broad in **patent US-772**.  Patent **15 (a)**, **15 (b)** has been described for accounts

accessing the plurality of known programs (applications) including The Accused

programs' account log on/sign in . . ."the display screens as object target program". .

. ,also, as the "new program the configuration accessing the database of the clients

computing device enabling know VoIP on the object target program" . . . . It is not

the known programs' VoIP producing the voice described or the more than the

means of/for connecting (the "connector[s]") other than as described with patent

772.

**255.      Claims chart patent in-suit US-151 IC #1 (above); Patent US-772** and

**#US-151** describe screen displaying, browser connections, windows, frames

("iFrame"), page(s), tab(s), pop-up(s) are described with some specificity, as

mentioned and outlined herein. Refer to **EXH. "U"** for more on claims chart.



**Claims Chart; Top:** Patent US-772, IC# **15 (c) [,]**"converting via the new program a listing of phone numbers into interactive electronic commands or a command graphic therefrom the scripting and displaying on the object target program interface"**[,]** **Note:** This element of **US-772** is evidenced on the plurality of programs. **Bottom:** Screen shots of elements, which **#US-151 # 4** claim language described as an **["]…iFrame for supporting softphone… ["]**. Therefore, "softphone" (VoIP) is populating browser window or "pop-up", and the "voice" (VoIP) program's interface populates the screen display field.



**Claims Chart; 15 (d)…**
"providing by the configuration"…executing the VoIP"… [,]

**15 (e)…**"invoking the command graphic for making each telephonic call by the client in the configuration" [,]

Elements of **US-151 claims 3 and 4** described. This is the same as **patent US-772**.

"CTI" evidences **["]** . . . a browser connector . . .**["]** element.



**Claims Chart; 15(f) [,]**"repeating (a) through (e) for making changeable to another known type VoIP using the combination with different types of the object target program making each telephonic call". . .
**Left:** Changed to "Five9" app.

256.      **Below;** Twilio *Dreamforce* presentation on Developer's instructions. [ **"**]. . .
**Click2Dial-Only** . . . [**"**] (emphasis added) described as the basic the "only", the
component, attribute or widget. "TwilioCallCenter" as the "big fancy one", provider
of "voice" (VoIP)/message implementations. The transcript reads as the "standard
object" is the browser, page, tab, iFrame, window or link that opens. Invoking the
link on the browser window or page  opens the "domain" page link for "Click to
Call" widget, The Accused programs' infringing programs' technology.



**Above; 15 (f)** . . . repeating (a) through (e) for making changeable to another known
type VoIP using the combination with different types of the **object** target program" .
. . **(emphasis added)**. Here, the following events become invoked and take place
using The Accused programs';

a.   "making changeable" the voice provider and/or Click to Call technology;

b.   the "object target" is in this event the browser application programs', window,
     frame, page, tab, link that opens on the other interface object target program,

Salesforce CRM programs' technology. It is akin to opening two browser pages or "tabs", and one opens or runs on top of the other page, as a smaller pop-up box or interface;

**c.** the "object target" can be the web page browser program, web program application, site, native program, the new program using the combination, the provider "voice" (VoIP), third party, external or internal programs.

**257.** It appears that term as "browser" when used in combination with The Accused and/or the inventive word, term, or phrase as "browser connector" and/or maybe "browser module", might well be contributing to infringement part of The Accused use of what might have become a generic type phrase as "Click to Call", (*e.g.*, to Dial, to Chat, to Talk, *et al.*).

**258.** The Accused, Defendants' Twilio, Inc. *et al.* referenced co-Defendants' patent by name with a reference to "Open CTI" and named said creator of Salesforce programs' "Open" type CTI as, "Gautam". (His full name believed to be in a Twilio-Salesforce *viz* reference to one, "*Gautam Vasudev*" of **patent #US-151**, **EXH. "V"**.)

**259.** Whereby; "browser connector" appears to be tantamount to a commercially appealing, but outdated generic, heretofore, generally coined phrase for certain action-function as, "Click to Call". The reference thereto as "EXE" (the extension term of art employed meaning "executable" file, binary, action-function type directory leading to computing code) found described references among drawings published with **#US-151**.

260.     The Accused **EXH. "V"**, **FIG. 5, Sheet 5 of 5,** part [500] as **Parts [516], [522]** "Browser Connector (**.EXE**)" <u>and</u> **"AppEx"** (API), respectively, **#15(d) . . .** "<u>via</u> the new program". . .**via** the computing device of the phone numbers on the screen in effect **executing** the VoIP in said object target program code and related computer code". . . . The users accessing The **AppExchange** and the apps code on client's side **. . .** **"enabling said VoIP including as an extension, add-on and plug-in for the database on the computer" . . .** .

261.     The Accused programs' infringing programs' technology, as mentioned and outlined herein, do not require a number of programs' elements in order to show all, each and every, infringing element(s) and to infringe on all the elements of patent US-772, IC#15 for instance. As a matter of convenience and as a matter of available material before discovery a representative sample has been obtained and outlined herein. Each will be a sample representative of The Accused essentially (single) infringing behavior on **patent US-772, EXH. "A"**.

262.     CTI and/or "open CTI" may not itself be subject to infringing elements, but for material including or in a connecting infringement, contributory, inducing infringement, and direct and/or indirect infringement, thereof. In any event, terms such as Click to Call, browser "connector" from browser "module" action-function(s) must hereby give differentiation. Accordingly, a particular CTI "connector" or any of the sorts of "connectors" must become differentiated from other connectors, adaptor, and such other widgets and/or gadgets. Discovery will further be of assistance to the parties and according This Court's findings as juror.

263.    The Accused program' infringing programs' technology are offshoots from the Defendants' connections with *Visualforce* <u>Page 600</u>, "Click to Dial" component, attribute described herein, and Defendants' <u>www.Force.com</u> web site application, the latter serving to contribute and induce infringing behavior.

264.    The links, pages about *Force.com* set up with The Accused providing a platform or stage to build program applications and eventually launch programs competing and/or unlawfully using and infringing programs including programs against Plaintiff Kaniadakis' intellectually property *and others* registered in our *U.S. Patent and Trademark Office*. Developers are from inside and outside the *United States of America*, and they are working to on these programs and others of The Accused programs' applications. **EXHS. "D"/TABLE "D-1"**.

265.    The Accused **<u>EXH. "V"</u>**, **#US-151 Claim 1**, first element appears as a container or "module" to package the browser program application "a first "module" linked to a domain (a web site application link), second element appears as a telephony or known plurality of VoIP the provider of electronic voice/message program application "a second module" linked to a domain (a web site application link). Therefore, claims are linking two web application sites in a combination.

266.    **#US-151 claim 2** will take place in known VoIP (softphone) programs. As evidenced with screen shots the browser window frame or pop-up opens, runs and appears on (top of) the same display screen of the interface. Therefore, the pop-up opens in the same browser window as a smaller (window) frame or pop-up (window) on the browser page. Simply put, the VoIP browser application program will be

applied by going inside by populating the space or field of the small pop-up

(browser) window.

267.     **#US-151 Claim 1** First module=first domain (web application site link).

Second module= second domain (web application site link, in connection to the first.

Claim language is followed by the semi-colon with the term "and**"**

$$\textbf{. . . [;]" and"}$$

This appears to mean the two may be linked.

268.     This appears to read on **patent US-772** claim language reciting;

$$\underline{\textbf{... ["] in the combination ["] ....}}$$

Above; this is in **patent US-772**, **body of Claim** with **15 (e)** element. Except; patent

US-772 is more broadly read, in that, there is not a first and second or limitation to <u>. .</u>

<u>. "the combination of the plurality" . . .</u> or <u>. . . "combination with different types of</u>

<u>the object target program" . . .</u>, respectively.

By contrast to **#US-151 Claim 1**the "first domain" link and the "second domain"

link. Two (2) domain links appear given as the combination.

269.     **#US-151 claim 3** appears to teach that Second module **=** a browser connector

(for the VoIP "voice" provider or "softphone"). Therefore, tantamount that the

function of Second module is the second domain link which "functions as a browser

connector". The following appears as a summation of claim language of patent #US-

151;

Browser connector **=** Second module **=** Second element **=** Browser module

**=** Second domain link

**Above;** claim language working back from language reciting a "browser connector" to The Accused's **patent #US-151; Claim1**. It appears that the "browser connector" is operational to the component/attribute fundamental to any/all given AppExchange App Store front**, EXHS. "D"**, **Table "D-1"** and The Accused "Click to Call" and to The Accused widgets, namely; The Accused SALESFORCE Defendants' *Visualforce* attribute/component and to The Accused "Lightening voice" **EXH. T-1**.

270. **Below;** If **patent US-772, IC#15** is put in the browser then the same browser windows, frames, tabs, pages, domains, links, will open or run the program applications in the combination on The Accused programs' CRM interface screen display. Below is the plurality of web program applications that can open in one or more (the plurality of) browser windows.  The Accused's patent **#US-151 claim #3** claim language reciting from the "second element" of The Accused's Claim #1 reading that the "second module", from Claim 1, "functions as a browser connector". Whereas, The Accused's' patent's **claim #4** further limiting the claims' First element, First module **["] . . . configured to present a user with a browser window having the embedded... ["]** voice (VoIP or "softphone") program embedded browser window **claim #4[,]** **["] . . . includes  an iFrame for supporting the web-based application said softphone . . . ["]** (emphasis added). The AppExchange Store App populates the field marked as **"A"** below, which is the limited, so called "slim or skinny", reduced sized window and/or in this instance as "include an "iFrame" opening on the same (single) relatively larger browser  window.





**Above;** one (1) browser "window" on the plurality of known web application programs, namely the Google search page application site. Clicking on the Google map can open another tab, window, page, link on the Google browser. Open in the same window. Or, opens as a new window, page or tab as a "skinny" (thin, limited) or smaller "pop-up". Please also refer to other claims chart with **EXH. "U"**.





**Top;** Plaintiff's **patent US-772 #15 (c)(d)(e) …"invoking the command graphic"…** .

It appears with The Accused **patent #US-151** that this is the same component. **#US-151** component 1, ["]…browser window having embedded softphone… ["] 4, ["] i-Frame["], pop-up, populating related to softphone element. **Middle: 15(c), 15(e).**

**Bottom;** In this event, figure to the left, is not …"providing by the configuration"… **US-772 #15 (d).** No calling function. No "voice" provider app. Contrast to top figure. It shows it is the same element.

271.     One among The Accused programs' infringers called, "InGenius Connector

Enterprise Open CTI" on "AppExchange" App Store front. This program is one

*among the others*. This **EXHS. "D", Table "D-1"**, published its claims as a **["] . . .**

**contributing. . . ["]** with InGenius publishing the following related statements;

**["] . . . InGenius was involved from the get-go, contributing to the specification**

**and implementing InGenius Connector Enterprise <u>before the Open CTI spec</u>**

**<u>was made available to the public[!]</u> When Open CTI was announced at**

**Dreamforce 2012. InGenius was one of the featured applications . . . ["].**



**Above;** website in a connection to The Accused programs *AppExchange* programs'

technology (emphasis added), and others "contributing" roles. **EXHS. "V-1"**, **"DD"**.

272.     The Accused AppExchange App Store front has "InGenius" App claiming the

following;

**["] . . . Computer Telephony software product company. Flagship product**

**InGenius Connector, provides <u>click-to-dial and screen pop functionality</u>**

**directly integrated into the Salesforce.com UI . . . ["]** (emphasis added).

<u>**Above;**</u> This appears to evidence that any/all components, attributes, parts, elements

of a "connector" element appears to be including, packaging and bundling, elements

of at least all the elements, attributes, components of **patent US-772, IC#15**.

273.    Again, identifying "Click to Call" as including other programs' widgets with

the infringing device. The "InGenius" App sheds some light upon reading on often

used catch phrase called, "screen pop", which  appears to be identifying **patent #US-**

**151, Claim 1**and first element in a product list; namely as, **["] . . . a browser**

**window having an embedded softphone[,]["]**. The preceding introduction as a

sentence that appears to be The Accused programs' web application site domain

link, as "a First Module", as the subsequent element, later identified as "a First

domain", thereof. Whereby, "screen pop" akin to a typical "pop-up" people have

learned to recognize in computing terms of art. Thus, "screen pop", which appears in

**patent #US-151** claim language.

274.    **Patent #US-151**reading **"[;] and"** a **["] Second Module ["]** as a second

element in the product list. Subsequently, #US-151 claim language reading the

Second Module as later identified as **["]a Second domain["]**, thereof. **#US-151**

appears to simply be connecting the combination of web application program links

domain sites together; First and Second.

275.    **Patent #US-151 reliant claim # 3** subsequently reading that the Second

Module apparently identified that said second module element, **. . . ["]** functions as a

Browser Connector **["]** . . . element. (Emphasis Added.)

**276.**　　　It appears that with **#US-151** <u>Claim 1</u>**[:]** Second element = Second module = Second domain link. Reliant <u>claim 3</u> said second module **=**Browser Connector. Therefore, Browser <u>connector</u> ="browser" <u>module</u>. The **#US-151** part or component given this reading on the claims language that the element as "browser module" and "second module" will appear as having the same structure, or the elements as having the characteristic, iteration, ramification as to "functions as" the same thing(s).

**Therefore;**

**a.** If this is the correct part, then it appears that at all the elements of **patent #US-772, IC#15** will be present with at least one element, as a common thread with "functions as a browser connector"/"second domain"/"said second module" with components needed for making  or fabricating **patent #US-151**;

**b.** If this the correct component, then it appears that all the elements of patent US-772, IC#15 and/or elements included with dependent or reliant claims to the parent claim(s) may be adding to infringement of US-151 on US-772. For instance, sending electronic messages/mail in the context of the users of the programs' technology.

**c.** If this is correct component, then the component related to The Accused SALESFORCE'S *Visualforce* identified from <u>Developer's Guide Manual</u>, **Page 600**, of the same, and component(s) present as virtually the same as  the component which reading claim language describes and corresponds to reading as "functions as a browser connector".

**277.**     The action-function of the machine,  method or process described in patent US-772 is invoking the plurality of the VoIP ("voice") programs on the plurality of the program applications, such as, including The Accused programs' CRM, websites (web program application sites), search page program sites, "appointment book related screens". Therefore, as US-772 had evidenced the method working "inside" and "outside" the plurality of the programs and as described in Plaintiff Kaniadakis' patent US-772. Working "outside" with invoking "external" program applications in order to perform the known plurality of the programs, electronic voice and/or message actions-functions including on The Accused programs' CRM and The Accused Page 600 widget, which has been evidenced as functioning as at least "a browser connector", or "Click to Call" component, attribute, and the latter element at least infringing on all the elements on US-772, IC#15.

**278.**     Just as patent **US-151 Claim 1 is** to ["] a First Module ["] appears to be serving ["] a browser window ["] or even as a window frame (so called i-Frame) may become utilized for popping up[71], populating or filling in (embedding) the "voice" (VoIP) program **: patent US-772** claim language is to read on **15 (b)** …"enabling the known VoIP on the object target program" . . . . Just as **#US-151** is to ["] Second Module ["] CTI adapter and Click to Dial components ["] functions as a browser connector [" ]: is to **patent US-772** reads on the known plurality of programs, CRM, "voice" (VoIP or "telephony" program applications) providers' programs. **15(c) [,]** …"converting via the new program a listing of phone numbers

---

[71] "Pop-up" is short for "populating". As with **# 15(a)** *e.g.,* populating the **…**"screen display on said computer displaying the object target program interface using said computing devices" **[.]**

into interactive electronic commands or a command graphic therefrom scripting and displaying on the object target program interface"… . Accordingly, infringing on at least all the elements of **patent US-772, IC#15**.

279.  Component of "CTI adapter" "voice" (VoIP or telephony module or connector) means of/for functioning, adapting, of connecting is not needed to infringe on **patent US-772**. It appears that **patent #US-151** will have all the components of "Click to Dial" and reliant upon using the plurality of "voice" (VoIP, telephony) programs will infringe on all the elements of **patent US-772**.

280.  It appears that so called "Open CTI" and The Accused programs' infringing programs' technology with the included window pop-up populating "Lightening voice" including any/all **EXHS. "D", Table "D"** with The Accused programs' *AppExchange* program has a means for causing, inducing, contributing infringement on patent US-772. **EXH. "U"**.

281.  It appears that a means for connecting infringement on **patent US-772** has a likelihood of involving The Accused Defendants' **patent #US-151**.

282.  *Visualforce Developer's Guide Manual* is making available to the public a means for/or and/or process infringing on Plaintiff Kaniadakis' patent US-772. Page 600 of said Guide manual has the widget The Accused has joined in using a generic like coined expression calling the widget as "Click to Dial".  Except, not as a "Call button"; rather, as the method of The Accused programs' teaching, practicing and/or launching technology working on infringing programs' products is turning and using **#15(c) . . .** "a listing of phone numbers into interactive electronic commands or a

commend graphic therefrom the scripting and displaying on the object target program interface" . . . via ["]a browser window["] and/or ["]a browser connector["], a component of which at least ["]functions as["] all the components infringing on **US-772, IC #15** following invoking said phone number on the plurality of programs and using the plurality of "voice" (so called telephony, VoIP, ) programs. **EXH. "S"**.

283.     If #US-151 any/all claim language of claims1, 2, 3 will become included as the means and/or the component **Page 600** "Click to Call" "scripting" thereof, then **#US-151** will infringe on Plaintiff's patent **US-772**. Arguments about widgets and terminology or semantics other than the legal terms of art for/of claim language and the patent description may be forthcoming with respect to patent #US-151.

<u>**The U.S. Trademark # 5, 021, 480**</u>

284.     The Accused are using in connection to goods/services registered U.S. Trademark # 5,021,480 in association to/with products/services thereof. There is an uncanny similar resemblance, confusing similar to Plaintiff's "Talking Head graphic art design logo/icon". Because complaint also concerns cumulative effects, outlined and as set forth herein, there is a likely some confusion playing a role on this front given this issue on Zendesk (f/k/a) "Zopim". Plaintiff's use helps associate and to identify the source or his goods, products therefrom U.S. Patent 8,666,772, as **patent US-772**. Because of the following outlined and because of aforesaid mentioned outlined herein there appears to be a likelihood of causing confusion, misleading or false designation of origin, among other issues with **registration U.S. Trademark #5,021,480** and the graphic logo/icon art used on products/services thereof The

Accused. **EXH. "BB"**. The Accused participation in/with The Accused is in connection to the company, products/services related to "Zendesk".  The Accused programs' *AppExchange* App Store front is akin to Zendesk's collaborating parts. Zendesk Marketplace App Store front hosts many of the same program applications ("apps") as The Accused programs' infringing programs' technology including Click to Call. Reliant claims have electronic "voice" providers and/or message provider goods/services. The Accused host Zendesk programs, and Zendesk hosts The Accused programs. Zendesk is typically in use as a service provider with online chat and support connections among the plurality of web application program sites.

## COUNT 1

### U.S. PATENT INFRINGEMENT AGAINST DEFENDANTS PURSUANT TO 35 U.S.C. § 271 § 281

### Infringement of United States Patent No. 8,666,772

285.     Plaintiff Kaniadakis repeats the allegations referenced and contained in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

286.     Upon information and belief, The Accused (Defendants), have been infringing and continue to infringe on the **patent US-772**, directly and by contributory infringement and by inducement of infringement, and/or by inducing behavior of any combination thereof by making, using, selling, offering to sell, distribute, distributing, putting the patented material on sale or otherwise made available to the public in this judicial district and elsewhere, patent US-772 machine, method or process, product/services therefrom which embody the patent US-772, with the patented invention of the patent US-772 described by the work.

287.     Pursuant to **35 U.S.C. § 271 (a)**, The Accused are liable for direct

infringement of the patented invention US-772 by having made, used, sold or offered

to sell and continuing to make, use, selling and/or offering to sell, on sale or

otherwise made available to the public the implementation of the patented

technology and/or The Accused programs' machine, method or process material

products/services including products/services from/of the patent US-772;

a.   The Accused infringement includes, but so as not to limit to, the manufacture, use,

sale, importation, exportation and/or offer sale of the patented technology and/or The

Accused programs' machine, method or process material products/services including

products/services which embody and describe the patented invention of US-772;

b.   The Accused have contracted to sell and have sold, offer, made for sale, on sale or

otherwise made available by way of contract and distribution in the chain in a

connection to The Accused products/services in combination and separately with

configurations accessing infringing material of others as outlined in the allegations

previously made herein and in the preceding paragraphs to *inter alia*, material

support, AppExchange programs, Marketplace programs, advertisements and

promotional schemes, to customers, users, consumers, enterprise, entities, the client

of The Accused,  *and others*;

c.   The Accused continue to make, use, sell, offer to sell, import in combination

with/without importation of the of the patented technology and/or The Accused

programs' machine, method or process material products/services including

products/services including products/services material to patent US-772 or otherwise

make available to the public including various distributions on sale or otherwise

made available to the public despite having actual knowledge of the infringement of

the patent US-772 communicated by and through the Plaintiff Kaniadakis as outlined

herein *supra*;

**d.**   The Accused continue with the same infringing pattern and course of

conduct/practice that is functioning substantially the same and resulting in the

substantially same actions and functions as Plaintiff Kaniadakis' patented

technology and exactly the same results as with patent US-772.

**288.**   Pursuant to **35 U.S.C. § 271 (b)**, The Accused are liable for inducement

infringement because of having, and continuing to, knowingly cause or intend to

cause the direct infringement of patent US-772 by users, but not limited to,

configurations accessing infringing material of others as outlined in the allegations

previously made herein and in the preceding paragraphs to *inter alia*, material

support, The Accused programs' AppExchange programs, Marketplace programs,

advertisements and promotional schemes, to customers, users, consumers, enterprise,

entities, the client of The Accused,  *and others*. Each having similarly advertised,

promoted, distributed, sold, or offered to sell, on sale or otherwise made available to

the public and continuing to sell or offer, on sale or otherwise made available to the

public said material.

**289.**   Pursuant to **35 U.S.C. § 217 (c)**, The Accused are liable for contributory

infringement of patent US-772 by having sold or offered to sell and continuing to

sell or offer to sell, on sale or otherwise made available by way of contract and/or

distribution in the chain in a connection to The Accused products/services in combination and separately or in a connection with configurations accessing infringing material of others as outlined in the allegations, and components thereof, which comprise a material component of the invention embodied in the patent US-772, claims and description;

a.  which is especially made or adapted and/or adopted for use in infringing on the patent US-772, and;

b.  which such adaptor, adopter, connector, making, generating, connecting widgets not suitable for any substantial non-infringing functional use;

c.  which such infringing programs' technology is especially made for, making, generating, connecting products/services from the machine, method or process described in all the components of patent US-772;

d.  which cause infringing gadgets, equipment/hardware and infringing devices;

e.  which each infringing device is causing the cascading scheme of/for all related infringements to The Accused with the plurality of program applications because they are producing resultant actions and functions as patent US-772;

f.   which only in order to provide The Accused products/services that may often become related to The Accused programs' infringing technology, to users and The Accused having knowledge that the patent US-772 was and is being directly infringed by users, customers, entities, enterprise, consumers, *and others*.

290.    Pursuant to **U.S.C. 35 § 271 (f)** The Accused are liable for infringement of the patent US-772 by knowingly supplying customers and others outside of our *United States of America* with components of The Accused;

   **a.**   The components having no other substantial non-infringing functional use and not otherwise being staple articles or commodities of commerce. Further;

   **b.**   the combination of components supplied by The Accused to foreign said entities and others would infringe on the patent if such combination occurred within *The United States of America*;

   **c.**   Each the infringers would comprise all the elements, components, attributes, features of the patent US-772. Therefore;

   **d.**   even with and without combination, such of the infringers need not be in the combination in order to infringe on each and every one of the elements of the patent US-772 described and any combination of elements of the patent US-772. The combination is not required for infringing on described patent US-772.

291.    Pursuant to **U.S.C. 35 § 271 (d)(3)** The Accused are liable for infringement of the patent US-772 by knowingly supplying customers and others outside of our *United States of America* with components;

   **a.**   of which The Accused such infringing programs' technology is especially made for, making, generating, connecting products/services from the machine, method or process described in all the components of patent US-772;

   **b.**   of which The Accused cause infringing gadgets, equipment/hardware and infringing devices;

c.  of which each infringing device The Accused is causing the cascading scheme of/for all related infringements to The Accused with the plurality of program applications because they are producing resultant actions and functions as patent US-772.

292.  Pursuant to **U.S.C. 35 § 271 (f)(1)** The Accused are liable for infringement of the patent US-772 by knowingly supplying customers and others outside of our *United States of America* with components of The Accused as outlined herein.

293.  Upon information and belief, The Accused infringement of the patent US-772 is willful, deliberate, malicious, maliciously and **oppressively** infringing, with willful disregard, and intentional by continuing its acts of infringement and infringing behaviors with knowledge of the patent US-772. Thus, acts of reckless disregard of Plaintiff Kaniadakis' Patent Rights *In The United States of America*.

294.  As a result of The Accused acts of infringement of the patent US-772 Plaintiff Kaniadakis has suffered injury, punitive damage, harm to his business and property granted In The U.S. Patent and Trademark Office in the amount to be determined as total damages, and he will continue to suffer other such painful damages in the future;

a.  Unless an injunction is issued immediately enjoining The Accused and their Officers, agents, servants, employees, third parties, independent contractors, representatives inside and outside our United States and U.S. and foreign attorneys representing The Accused inside our United States of America, and all persons in active or past concert, participation, collaboration, culpable

participants, aiders and abiders with, for/of The Accused from infringing on the patent US-772, Plaintiff will be furthermore irreparably harmed, injured, and will have suffered greater because he has been put in disadvantage against The Accused who have gained an unlawful advantage upon said Rights we hold.

b. Unless a Declaratory Action is granted in favor of Plaintiff Kaniadakis but for The Accused infringement of said Rights and mainly because The Accused have attacked the integrity of The United States Patent and Trademark Office by asserting written claims against Plaintiff's issued United Stated Patent without The Accused having provided even one (1) thin ounce of evidence of such adverse inflammatory statements, bold and unfounded allegations against our system. Despite a great deal of material provided to The Accused including evidence of The U.S. Patent and Trademark Office registrations issued.

c. By virtue of the fact that The Accused have been given sufficient Notice by Plaintiff Kaniadakis and The Accused, Defendant SALESFORCE, Inc. *et al.* have infringed in other ways described herein adding enhancement of a likelihood that The Accused have been blazingly ignored our rule of law in The United States of America, In U.S. Patent and Trademark Office.

295.    Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

## COUNTS 2 – 60

### U.S. PATENT INFRINGEMENT AGAINST DEFENDANTS PURSUANT TO 35 U.S.C. § 271 and § 281

### Infringement of United States Patent No. 8,666,772

**296.**     Plaintiff Kaniadakis repeats the allegations referenced and contained in the

preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

**297.**     For the same reasons as set forth for COUNT 1 as for COUNTS 2-60 (two

through sixty). COUNTS herein including at least one or more than the number of

counts including The Accused among those attached infringers of **EXHS. "D",**

**Table "D-1"** The Accused programs' infringing programs' technology caused by

The Accused and because of The Accused infringement as outlined herein.

**298.**     Plaintiff has been harmed by Defendants' pattern and course of conduct or

practice as alleged above in an amount not yet completely known.

**<u>COUNT 61</u>**

**TRADEMARK INFRINGEMENT AGAINST DEFENDANTS PURSUANT TO
15 U.S.C. §§ 1125(a), 1114**

**Infringement of United States Trademark No. #4,469,219**

**299.**     Plaintiff Kaniadakis repeats the allegations referenced and contained in the

preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

**300.**     By virtue of The Accused infringing on U.S. Patent type issues just

demonstrates the insult to injury that The Accused have continued with by adding

names that are confusingly similar. The Accused, Defendants' SALESFORCE, Inc.

*et al*. have allowed the continued use of the name "Call Calendar" in a connection to

its domain, products/services. "Call Calendar" is one among the various program

applications or "apps" on The Accused programs' *AppExchange* App Store front,

which is also including the domain site connection listing of the plurality of programs identified with The Accused and U.S. Patent infringement issues.

301.    By virtue of Plaintiff Kaniadakis' intellectual property having inherent value and quality in connection to the U.S. Trademark registrations and U.S. Patent registration issued, any/all The Accused misuse, misrepresentation, and likelihood to cause confusion on the name and on the technology (technology "product", tangible or not). The Accused technology being marks in connection to related technology can likely fool the public. Impacting because of causing disadvantages on the value and quality of Plaintiff's product source. The Accused cumulatively creating a likelihood of causing confusion of the products source's value.

302.    The Accused could never be given a U.S. Patent in 17-20 years on their described technology. One main use in Plaintiff's promoting and marketing the intellectual property has been to impart a high quality with the title of The United States Patent and Trademark applied to the products. Defendants cause compromise and negotiated Plaintiff's distinguishing features, parts and attributes against Plaintiff's intent and against Plaintiff's license requirements.

303.    The Accused programs' likely to cause continued unlawful acts and disruptiveness against the law. Plaintiff's reputation and quality representing his work will always become subjected to The Accused resulting actions and resulting inactions.

304.    Plaintiff Kaniadakis maintains value of his high-quality technology and products securing licensees from The Accused infringing technology. U.S.

Trademarks separate his program applications therefrom infringing products and/or technology.

305.     The Accused misuse and misrepresenting the quality in relation to the U.S. Patent as Plaintiff's product source, distinguishing features and parts of the described method therein. Defendants' false description, misrepresent the nature, traits, characteristics, qualities and reputation of Plaintiff's intellectual property and source thereof. Plaintiff's U.S. Trademark identifies the product's source, "Calendar Call" one commercially named product from the source.

306.     The Accused, Defendants' SALESFORCE, Inc. *et al*. have caused disadvantage over Plaintiff Kaniadakis' intellectual property including but not limited to reasons because of unlawful use of his registered U.S. Trademark because, The Accused gain additional value including but not limited to valuable data, account information, promotional, advertisements, and selling The Accused programs' products/services as well as The Accused programs' technology infringing programs' related widgets such as "Click to Dial" *et al*. related programs' value even in the event distribution appears to be "free" therefrom any/all related program applications as outlined herein. For some of these following instances;

a.   Data is a commodity. Data is negotiable. Data could be sold and/or a means of use for leverage against Plaintiff Kaniadakis' intellectual property unlawfully in competition and for The Accused to gain material and actual physical value with/without monetary gains over Plaintiff Kaniadakis;

**b.** Material components related to the goods/services and The Accused programs' technology have been in use, distributed, made for sale, sold, offering to sell, selling, importing, exporting on sale or otherwise made available to the public which relays upon value including but not limited to components of the goods/services in a connection to the U.S. Trademark including each of The Accused connections … "a listing of phone numbers into interactive electronic commands or a command graphic therefrom the scripting" … which has added value for such contacts and connections in use, as imported and/or exported data, data points and/or data sets used in connection to Plaintiff Kaniadakis' intellectual property issued in The U.S. Patent and Trademark Office;

**c.** The Accused infringers in connection to the U.S. Trademark  and The Accused programs' technology, products/services, gain added value over and compete unlawfully against Plaintiff Kaniadakis registrations in the U.S. Patent and Trademark Office because The Accused continue to be operating in connection to … "the object target program making each telephonic call" …;

   **i.** Each object target program among at least EXHS. "D" and Table "D-1" gain advantage wherein The Accused leverage Plaintiff Kaniadakis' U.S. Trademark  including those external or third party programs as the known plurality of object target program making electronic phone calls and sending messages in connection to The Accused use and/or misuse of the mark;

ii. Each object target programs' reference in a connection other web program applications and sites as the known plurality of object target programs such as search page programs, web site applications, e-mail client programs, banner advertisements, *among others*, . . . "including appointment book related screens" . . . making electronic phone "voice" calls and sending electronic messages with each of the programs in connection to The Accused programs' infringing programs' technology and use of the U.S. Trademark;

iii. Each "call" could be as the "voice" ("telephony", VoIP) phone call and/or as the "call"[72] to the so called "DLL" and/or server of The Accused wherein The Accused gain valuable data from each the "calls" and/or each "call" as an electronic message to each the server(s) including The Accused programs' infringing server with each the electronic phone number and each the list of phone numbers as including valuable data commodity which could be sold and/or negotiated to benefit none other than The Accused and those in a connection to infringing **U.S. Trademark #4,469,219**;

307.    The Accused have gained advantage over Plaintiff Kaniadakis' intellectual property including but not limited to reasons because of unlawful use of his **registered U.S. Trademark** for essentially the same reasons as set forth herein in the event The Accused cause disadvantage over Plaintiff Kaniadakis' by use/misuse

---

[72] "A dynamic link library (DLL) is a collection of small programs, any of which can be 'called' when needed by a larger program that is running in the computer".

of the mark in connection to programs of The Accused and The Accused further acting against the law passing off as its property and its connections to **U.S. Trademark #4,469,219**

308.    Therefore, for some of the forgoing reasons The Accused continue to gain increasing value even in the event such technology in connection to Plaintiff's **registered U.S. Trademark** may appear that The Accused continues to be offering and offered material "free", the distribution of material is causing loss among to the Plaintiff in a reference to data value benefits to The Accused including any/all programs in connection to The Accused.

309.    The Accused gain advantage because use of the U.S. Trademark is helping associate The Accused programs infringing programs' technology with Plaintiff's intellectual property including Plaintiff's U.S. Patented technology, #8,666,772. Specifically in association to described patent and US-772 IC, #15 and the related claims thereof. By virtue of The Accused filing for #US-151 and awarded such related patented technology to Plaintiff's US-772 as set forth and outlined herein.

310.    By virtue of The Accused gain advantage by use of the **registered U.S. Trademark** to promote, sell, offer, offering for sale, on sale or otherwise made available to the public their own programs' technology such as "CRM" with/without "voice" (VoIP) provider program applications and infringing components. Therefore, even in the event enterprise and/or consumers do not obtain others' products/services, The Accused sells goods/services including connected products/services such as those outlined herein. Some ways The Accused continue to

gain advantage over Plaintiff Kaniadakis by including his intellectual property are typical of the following examples;

a. The Accused in direct connection to products/services of "Lightening voice". The Accused will be provider of "voice" related programs; **EXHS. R and T-1**.

b. The Accused Defendants' Twilio, Inc., *et al*. related electronic voice/message programs (VoIP) along therewith Twilio's Marketplace App Store for the same related products/services adding in connection those in a connection to Twilio's programs;

c. The Accused products/services of Defendant SALESFORCE, Inc. *et al.* "CRM" with/without being in combination with/to their "voice", program application(s), however;  including others' programs inside and outside (external programs) indirectly/contributory to selling advertising, data, and other connections to data related products/services thereof. *e.g.,* "Zendesk", *et al*. (*Ref.* Count 63.)

311.     By virtue of its use, Plaintiff Kaniadakis is the owner of, and he has established valuable goodwill in, the Plaintiff's registered mark, called, "Calendar Call" as used throughout The United States of America and internationally in connection to computing equipment program applications prior to The Accused, Defendants' SALESFORCE, Inc. *et al*. and "Call Calendar, Inc." misuse, misrepresentation, misleading others of Plaintiff's Registered Mark. By virtue of Plaintiff's Mark "Calendar Call" being applied to Plaintiff's user interface or graphical user interface (UI, GUI). By virtue of Plaintiff's Mark "Calendar Call" being applied to Plaintiff's website content and in connections to Plaintiff's other

public sites under his control, YouTube, Facebook, Twitter, Linked-in, Google Plus, and miscellaneous website applications, including Defendants' website program application posts and blogs, and among other places. Plaintiff applied the official symbol material to use of the registered U.S. Trademark and in connection to complaint.

312.     Upon Plaintiff's belief and understanding safe harbor provisions do not provide any protection to Defendants against U.S. Trademark infringement under **Section 230** of The Communications Decency Act (**CDA § 230**). **CDA § 230** protects website owners from many claims based under Defendants' hosted content, user comments, user-generated, and other third party content. However, safe harbor and **CDA § 230** does not apply to "intellectual property" claims, **47 U.S.C. 230 230 (e) (2)**. Therefore, Defendants should not be provided protection against U.S. Trademark claims alleged in complaint.

313.     By virtue "Call Calendar, Inc." *via* The Accused, Defendants' commercially branded, published online, developed, made a product, among other said concerns, applied the name "Call Calendar", continued to publish and update referenced content in connection to the infringing trademark. The fact that The Accused, Defendants applied and continued to allow a commercial brand remarkably similar to Plaintiff's U.S. Trademark #4,469,219 coupled to intellectual property in connection to products/services of the same or substantially the same makes content have a likelihood to causing marketing deception, among various levels of companies, incorporation, developers, consumers, enterprise, *and others*. The

commercial labeling using "Call Calendar" in search can deceptively lead (mislead) the people, consuming public, commercial vendors, sponsors, enterprise level organizations and other consumers away from Plaintiff Kaniadakis' domain misleading people and machines to result in the domain competing in this market place, The Accused programs' infringing technology, products/services.

314.     By virtue of Plaintiff Kaniadakis' **registered U.S. Trademark # 4,469,219** pronounced as "Calendar Call" (or "Callendar Call"), and The Accused programs' products' technology and/or embedded tool(s) enable programs' to be working substantially similar and/or substantially the same or the same action and function the same resulting action of Plaintiff Kaniadakis' **patent US-772**, the name "Call Calendar" should have been a red flag for The Accused to have taken action to avoid infringement risks. On the contrary, The Accused had an infringing behavior which began a rather evasive pattern and course of conduct or practice rather than to say the least any legitimate attempts to be amenable to resolve concerns. This compounded The Accused likelihood of having exhibited adverse intent and to cause or allow infringement, take enhanced risks of infringement, and these are taken as aggravating factors in this case.

315.     Upon information and belief The Accused having infringed on the U.S. Patent could confuse the public, consumers and enterprise that the products and technology are confusingly similar, the same, substantially the same or substantially similar to Plaintiff Kaniadakis' U.S. Patent **and** U.S. Trademark **and** vise-a-versa.

**316.**     By virtue of The Accused are using a machine, method or process, products/services that is functioning substantially the same and resulting in the substantially same actions and functions as Plaintiff Kaniadakis' patented technology and exactly the same results as with patent US-772. The Accused programs' Store has Sixty (60) "apps" identified using Plaintiff's U.S. Patented technology.  The Accused have allowed the infringing name "Call Calendar" to remain on its domain and in a connection to The Accused goods/services provided. For example, any could use "Call Calendar" conveniently in combination with/to The Accused "voice" (telephony, VoIP) provider products/services like Defendants' SALESFORCE'S Inc., *et al*. "Lightening voice" and/or Defendants' Twilio's, Inc., *et al*. products/services of electronic "voice" and/or electronic messages to/with "Call Calendar" program applications. Therefore, The Accused knows or should have known that they have a likelihood of causing confusion. The Accused will benefit in either way by allowing the infringing U.S. Trademark. In an alternative, The Accused have a likelihood of causing mistake by others and unlawfully gaining advantage over Plaintiff in the event any others among the Sixty or more of the plurality of programs on *AppExchange* added to the number on *Twilio's Marketplace App Store* fronts added to the numbers on *Zendesk's Marketplace* in some other combination of the plurality of programs and still producing the same results of Kaniadakis' **patent US-772** and using the confusingly similar name "Call Calendar" of Kaniadakis' **registered U.S. Trademark # 4,469,219**. Even if in the event The

Accused and "Call Calendar" programs claims this is not their apps functions-

actions.

317.      Upon information and belief that The Accused inducing other unscrupulous

dealers and counterfeiters to mock up, fake and cause infringement with The

Accused participation. The registered U.S Trademark violation evidences The

Accused state of mind (so called *mens rea*). The Accused's program has means for

enabling the two programs result in programs' working substantially similar and/or

substantially the same or the same action and function in the event that the "Call

Calendar" program is running or working on The Accused's program or web

application site. This is because The Accused enabled means for result in programs'

working substantially similar and/or substantially the same or the same action and

function resulting as with the patent US-772 action. The Accused had developed

essentially a fake generic version. The Accused had embedded development the

"tool" to result with programs' working substantially similar and/or substantially the

same or the same action and function the same action as the patent US-772 works.

The Accused had "white labeled" the product's technology. Therefore, The

Accused's has knocked off a generic or non-branded template-like structure which

has been enabling The Accused's contributory infringement to at least one of Sixty

(60) or more other programs that result in result in programs' working substantially

similar and/or substantially the same or the same action and function the same

operation.

318.      By virtue of The Accused content with description is remarkably the same or

identical in connection to 'relatedness of the products are sufficient confusingly similar', technical space and market, as Plaintiff Kaniadakis offers under the Plaintiff's Registered Mark and Official *Final Description* pronounced as "Calendar Call" (Callendar Call); namely, the computing program app.

319.    By virtue that The Accused continued publically broadcasting an "app" that has features and functions which are confusing similar or in rear resemblance to elements or aspects of the Plaintiff's "app". The description and name is confusingly both similar to the Plaintiff's Registered Mark.

320.    Upon information and belief of Defendants' SALESFORCE, Inc. *et al*. continued using, misusing, misleading, misrepresenting, causing deception, deceit, on the name "Calendar Call" and this is misleading the public, commercial markets, sponsors, enterprise and other consumers. The Accused act of identifying the "Call Calendar" name with The Accused content infringing on the Plaintiff's use of **registered U.S. Trademark** called, "Calendar Call", in connection to Plaintiff's products, intellectual property, patent US-772 and **registered U.S. Trademark**. The Accused act raises an existing a likelihood of causing to deception, confusion, misleading and mistake in the minds of the public at large, prospective purchasers, commercial purchasers, consumers and enterprise level markets, sponsors, vendors, distributors in this same technical space, and unlawfully competing against Plaintiff Kaniadakis' pursuits for the same contracts and buyers. The Accused's actions have a likelihood of causing said people, companies and entities, among others, into believing that The Accused's content in connection to The Accused's product emanate from, are

authorized by, and/or are in some manner affiliated with or endorsed by or with official documents, intellectual property, Plaintiff's Kaniadakis' U.S. Patent and U.S. Trademarks. The Accused has gathered many competing programs on SALESFORCE's *AppExchange* and Twilio's *Marketplace Apps Stores*. These apps will have raised a likelihood of contracting with Plaintiff Kaniadakis rather than the risks of contracting with infringers of the technology, but for bring The Accused to lady justice. This could cause Plaintiff's disadvantage competing for among other things, advertisement revenue, data, and royalties from similar apps in connection to Plaintiff's technology.

**321.**     By virtue of The Accused Defendant's unauthorized misuse in commerce is an infringement of Kaniadakis' **registered U.S. Trademark** in violation of **15 U.S.C. §1114(1)**.

**322.**     Upon information and belief of The Accused Defendant's causing violations leading to **15 U.S.C. §1125 – FALSE DESIGNATION OF ORGIN, FALSE DESCRIPTIONS** issues.

**323.**     Upon information and belief The Accused have violated the law pursuant to **15 U.S. Code § 1125(a)(1)(A)(B);** Subsections (B) The Accused "Call Calendar" misrepresents the nature, characteristics, qualities of Plaintiff Kaniadakis' **U.S. registered trademark**. The Accused infringement misrepresents the nature of "Callendar Call" (calendar call, callndr call) representing the nature of its connection to the patent US-772 certifying that it is the product's source has been produced from the official U.S. patented technology. Otherwise the quality is immensely different, not

original, and may be gathering data among other things. For many of the reasons outlined herein characteristics are differentiated by the official U.S. Patented technology #8,666,772. The Accused U.S. registered trademark cannot compete and cheating by confusingly similar names, logos/icons and/or graphics are likely reasons The Accused attempted to get away with infringing on each, Plaintiff Kaniadakis' U.S. trademark and U.S. Patented technology. The Accused imitator of Call Calendar does not itself represent the true functions-actions, and the infringer is not representing the original article from the product's source, patent US-772. The pubic and others cannot get the quality of patented technology is compromised with infringers' name. The nature of the imitators falsely may be obtaining functions-actions from The Accused programs' infringing programs' "Click to Call" programs, any one of Sixty or more and The Accused programs' providers of "Lightening voice" and/or Twilio's "voice" programs among the known plurality of VoIP (telephony) programs. Even greater impacted is the fact that US-772 can be properly represented with Plaintiff Kaniadakis' other **official U.S. trademarks** representing characteristics that the intellectual property intended to work on the plurality of programs not limited to "calendars". The Accused imitations and infringements cannot properly convey these characteristics of the marks, which help describing products' source, the patent US-772. The Accused infringements, accordingly, misrepresenting Kaniadakis' quality, characteristics, and the nature of the **patent US-772**, and convey a different product source, designation of origin among other issues outlined herein.

**324.**    Plaintiff has been harmed by Defendants' pattern and course of conduct or

practice as alleged above in an amount not yet completely known.

## COUNT 62

**TRADEMARK INFRINGEMENT AGAINST DEFENDANTS PURSUANT TO
15 U.S.C. § §1125(a), 1114**

### Infringement of United States Trademark No. # 5,021,480

**325.**    Plaintiff Kaniadakis repeats the allegations referenced and contained in the

preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

**326.**    By virtue of The Accused infringing on U.S. Patent type issues just

demonstrates the insult to injury that The Accused have continued with by adding

names that are confusingly similar. The Accused, Defendants' SALESFORCE, Inc.

*et al*. have allowed the continued use of the graphic art design logo/icon

representative of "Talking Head" in a connection to its domain and

products/services. The infringing graphic art design logo/icon representative of

"Talking Head" is found on at least one among the various program applications or

"apps" on The Accused programs' *AppExchange* App Store front, which is also

including the domain site connection listing of the plurality of programs identified

with The Accused and U.S. Patent infringement issues.

**327.**    By virtue of The Accused have rendered a logo/icon graphic that looks like

the Official mark, Plaintiff's **registered U.S. Trademark # 5,021,480** graphic art

design logo/icon of "Talking Head" is used in connection to the Plaintiff's related

products. The **registered U.S. Trademark # 5,021,480** is used to identify the origin

of designation of the Plaintiff's patent US-772. The graphic art design logo/icon of

220

*Talking Head* also will distinguish the product brands as related to the Plaintiff

Kaniadakis' official patented technology, machine, method or process with products

produced therefrom. **<u>PLAINTIFF'S EXHS. "B" and "BB"</u>**, the latter the infringer's.



**Above left side;** Infringers' graphic design art logo/icon. **Above right side;** Plaintiff's

U.S. **registered Trademark #5,021,480**; Head to head.



**Above;** one way infringers' logo/icon is applied to products/services. Here in

connection to "chat" (support) electronic message app.  Zendesk f/k/a "Zopim" as

evidenced above. Zendesk has "Talk support" ("voice" applications) as well. Above is

a browser connected window pop-up display screen program application serving as

support to products/services including The Accused programs' infringing

products/services. Just as to "Call Calendar" displayed on browser window tab**:** is to

this infringers' logo/icon graphic displays also on tab(s) of the browser application

program. **EXH. "BB"** is the infringer's graphic/logo. **EXH. "B"** is Plaintiff's.

**Below;** infringers' graphic art design logo/icon displays on browser tab(s) among other

sites;



**Below;** The name "Zopim" has the dot on the letter " **i** " forged to look like **registered**

**U.S. Trademark #5,021,480** graphic art design logo/icon.

  

**Above;** Cumulative effects with a likelihood of causing confusion, false or misleading

designation of products/services origin, among other issues outlined herein an

association of U.S. Patent and Trademark with the name and in connection to The

Accused. The letter " i " emphasis by substituting the "eye" in actual mark.

**328.**     On information and belief "Zendesk", *et al*. is a program on The Accused

programs' infringing technology programs Salesforce's *AppExchange* and Twilio's

Marketplace use the infringing like graphic. Added these infringing programs of U.S.

Patent and Trademark are the *Zendesk Marketplace App Store*, which "Zendesk" manages from its business end.

329.     By virtue of each The Accused using the Zendesk mark at issue and in near resemblance as outlined including The Accused Defendants' Twilio, Inc. *et al*. to help handling of Twilio's online support "app" is the Zendesk app and marks at issue. (As mentioned also in connection to Twilio's Marketplace App store front.)

330.     For essentially the same reasons as set forth herein for The Accused allowing use among other concerns of "Call Calendar" Plaintiff incorporates COUNT 61 in this count against The Accused in reference to The Accused infringing on his **registered U.S. Trademark # 5,021,480** called, "*Talking Head* graphic art design logo/icon".

331.     By virtue of The Accused Defendant's unauthorized misuse in commerce is an infringement of Kaniadakis' **registered U.S. Trademark** in violation of **15 U.S.C. §1114(1)**.

332.     Pursuant to **15 U.S. Code § 1125(a)(1)(A)(B);** Subsections (B) misrepresents the nature, characteristics, qualities. The Accused infringement misrepresents the nature of *Talking Head* graphic art design logo/icon representing the nature of its connection to the patent US-772 certifying that it is the product's source has been produced from the official U.S. patented technology. Otherwise the quality is immensely different, not original, and may be gathering data among other things. For many of the reasons outlined herein characteristics are differentiated by the official U.S. Patented technology #8,666,772. The Accused U.S. registered trademark cannot compete and cheating by confusingly similar names, logos/icons and/or graphics are likely reasons The Accused

attempted to get away with infringing on both, Plaintiff Kaniadakis' U.S. trademark and U.S. Patented technology.

333.    Upon information and belief that an even greater impact becomes likely by virtue of US-772 products/services therefrom the method could be properly represented with Plaintiff Kaniadakis' other **official U.S. trademarks** representing characteristics that the intellectual property intended to work on the plurality of programs not limited to "chat" or electronic messaging. The Accused imitations and infringements cannot properly convey these characteristics of the marks, which help describing products' source, the **patent US-772**. The Accused infringements, accordingly, misrepresenting Kaniadakis' quality, characteristics, and the nature of the **patent US-772**, and convey a different product source, designation of origin among other issues outlined herein.

334.    By virtue of an even greater information and belief that these concerns outlined herein are in a combination with The Accused programs including infringing programs' implementations of chat and electronic message app gaining advantages of the "voice" (telephony, VoIP) and the patented technology of phone number characteristics, elements, components, attributes, which are exclusive to Plaintiff Kaniadakis' **patent US-772** as outlined herein and attached described in the patent. This stresses how characteristics, nature of the patent, quality representing Plaintiff's original article is smeared by infringers of intellectual property of registered U.S. trademark and issued U.S. Patent, both. The infringing technology and official technology can be demonstrated working on "Zendesk" and others, with the plurality of "Zendesk", and more.

**335.**     By virtue of Plaintiff Kaniadakis' intellectual property having inherent value and

quality in connection to the U.S. Trademark registrations and U.S. Patent registration

issued, any/all The Accused misuse, misrepresentation, and likelihood to cause

confusion on the name and on the technology (technology "product", tangible or not).

The Accused technology being marks in connection to related technology can likely

fool the public. Impacting because of causing disadvantages on the value and quality of

Plaintiff's product source. The Accused cumulatively creating a likelihood of causing

confusion of the products source's value.

**336.**     Upon information and belief that The Accused could never be given a U.S.

Patent in 17-20 years on their described technology and even longer on the U.S.

registered trademark(s) at issue. One main use in Plaintiff's promoting and marketing

the intellectual property has been to impart a high quality with the title of The United

States Patent and Trademark applied to the products. Defendants cause compromise

and negotiated Plaintiff's distinguishing features, parts and attributes against Plaintiff's

intent and against Plaintiff's license requirements.

**337.**     Upon information and belief The Accused programs' likely to cause continued

unlawful acts and disruptiveness against the law. Plaintiff's reputation and quality

representing his work will always become subjected to The Accused resulting actions

and resulting inactions.

**338.**     By virtue that Plaintiff Kaniadakis maintains value of his high-quality

technology and products securing licensees from The Accused infringing technology.

U.S. Trademarks separate his program applications therefrom infringing products and/or technology.

339.     Upon information and belief that The Accused misuse and misrepresenting the quality in relation to the U.S. Patent as Plaintiff's product source, distinguishing features and parts of the described method therein. Defendants' false description, misrepresent the nature, traits, characteristics, qualities and reputation of Plaintiff's intellectual property and source thereof. Plaintiff's U.S. Trademark identifies the product's source, "Talking Head graphic art design logo/icon", which is one commercially named product from the technology and product's source therefrom.

340.     On information and belief that The Accused Defendant's causing violations leading to **15 U.S.C. §1125 – FALSE DESIGNATION OF ORGIN, FALSE DESCRIPTIONS** issues.

341.     Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

## COUNT 63

### UNFAIR COMPETITION UNDER THE LANHAM ACT

### Infringements of U.S. Trademark

342.     Plaintiff Kaniadakis repeats the allegations referenced and contained in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

343.     On information and belief that The Accused Defendant's pattern and course of conduct or practice constitutes a violation of the law leading to unlawful acts arising under federal trademark laws ("The Lanham Act of 1946") **Title 15 U.S.C. §§ 1051**

*et seq.*, §§ 1051-1141 *et seq*. Pursuant to **28 USC § 1338(a)(b)**.

344.    On information and belief that as a result of The Accused's longstanding misuse, alleged misrepresentations and unlawful acts involving trademark law more particularly outlined in complaint elsewhere, advertising, marketing, Plaintiff Kaniadakis' properties have acquired improperly described and wrongfully applied secondary meaning and mislead to The Accused's content, product and services, among the public and Official Offices who have come to identify with Plaintiff's intellectual property, **registered U.S. Trademark #4,469,219** and **patent US-772** as evidenced in Official recordings.

345.    The Plaintiff believes that the U.S. Trademark is part and parcel to identifying the origin of designation that is patent US-772. However, The Accused has violated the law under Lanham Act, *supra* with respect to Plaintiff's Federal Trademark Rights, Unfair Competition, and as set forth herein.

346.    On information and belief that The Accused have willfully misrepresented and continued to misrepresent to the general public that they are Official, sanctioned or sponsored and legitimate intellectual property by Plaintiff Kaniadakis.

347.    On information and belief that Defendants' pattern and course of conduct or practice constitutes a violation of the law under **Section 43 of the Lanham Act, 15 U.S.C. §1125.**

348.    On information and belief that Defendants cannot be provided protection under said **CDA §230** against violations of the law and unlawful U.S. Trademark acts under said Lanham Act for the basis of said intellectual property, **47 U.S.C. § 230(e)(2)**.

**349.**     On information and belief that The Accused have obtained revenue, gains,

profits, advantages and unfair advantage over Plaintiff Kaniadakis as a result of their

unlawful trademark infringement acts.

**350.**     By virtue of The Accused acts as alleged herein and in considering The

Accused's sheer size, prominence, exposure, and The Accused making the infringing

material, products/services and components in a connection to the products/services

"free" or otherwise available to the public along with other available public access of

their website application in the marketplace causing disadvantages over Plaintiff's

intellectual property, technology and products. Despite Plaintiff's exclusive Rights in

the market including Plaintiff's exclusive Rights to exclude anyone and anybody.

Plaintiff's believes that the **patent US-772** is essentially part and parcel to **registered**

**U.S. Trademark**. U.S Trademarks are a way of branding each commercial application

of Plaintiff's U.S. Patent. Therefore, The Accused have been causing aggregating

factors, and enhancing the nature of the infringements and unfair competition. The

Accused's infringements herein. Accordingly, patents and trademarks among other

things in connection to Plaintiff's commercial branding of Plaintiff's technology is

essentially integral and inextricably related to, inextricably separated, part and parcel, a

part of, to the functioning in/on all the known plurality of apps workings of his

intellectual property and Unfair competition under said Lanham Act.

**351.**     By virtue of this case, infringements of Plaintiff's U.S. registered trademark(s)

are in a connection to U.S. Patents. Therefore, Plaintiff has the Right to exclude others,

in effect, right for essentially no competition (with his technology when it is the same)

and represented by the marks. It is "fair" for the Plaintiff to in effect exclude competition, however, in this case not for The Accused no matter how big they are and in light of bearing the patent and trademark. For The Accused to cause "unfair competition" in light of the unlawful exploitation of U.S. Trademarks which also have Rights of U.S. Patents, and both become infringed, demonstrates frank intent for pressing and subverting the laws of The United States as The Accused take move with offensive, aggravating factors which enhance the infringing nature by The Accused in this present case.

352.     Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

<u>COUNT 64</u>

**UNFAIR COMPETITION AND UNJUST ENRICHMENT UNDER FLORIDA COMMON LAW**
**AGAINST THE ACCUSED**

**Infringements of U.S. Patent and Trademark**

353.     Plaintiff Kaniadakis repeats the allegations referenced and contained in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

354.     On information and belief that The Accused's acts as alleged herein constitute trademark infringement as unfair competition in violation of the common law of The State of Florida.

355.     By virtue of The Accused business exists/thrives, lives and is at home *via* its online presence including, but not limited to, advertisements, interstate commerce, distribution, in promotion materials, The Accused's local office and otherwise local

presence, Plaintiff's home local to district; therefore, that Plaintiff has afforded

rights under common law throughout The United States. Accordingly, Defendants'

online presence for the same extends Plaintiff's rights against The Accused.

**356.**　　　Pursuant to **§501.204(1), Fla. Stat.** The Accused violate Florida law.

**357.**　　　By virtue of Plaintiff Kaniadakis is the owner of, and he has established

valuable goodwill in, the Plaintiff's **registered U.S. Trademark # 4,469,219**

"Calendar Call" and **registered U.S. Trademark # 5,021,480** "Talking Head graphic

art design" as used in connection to said **patent US-772** program's technology. By

virtue of its online content, videos, instructional videos, promotional videos, and

advertising Plaintiff's use of "Calendar Call" in public domain, along with website

domain names "Calendar Call" and "Callendar Call" with variations representative

of Plaintiff's **registered U.S. Trademark # 4,469,219**. By virtue of Plaintiff's

**registered U.S. Trademark # 4,469,219** "Calendar Call" being applied to Plaintiff's

website content and in connections to Plaintiff's other public sites under his control,

YouTube, Facebook, Twitter, Linked-in, Google Plus, and miscellaneous posts,

blogs including Defendants' articles and among other places. Plaintiff applied the

official constructive notifications as "Registered U.S. Trademark" and as encircled

letter "®" symbol material to use of the registered U.S. Trademark and in connection

to the material, which was registered and material to complaint. Plaintiff Kaniadakis'

numerous other Official documentations evidences his prior use and  his actual use

including screen shots, U.S. Copyright Office documents of his entitled works, U.S.

Patent Office documents.

358.      Upon information and belief that The Accused's are charged with unfair competition, including but not limited to, because The Accused's sheer size, prominence, exposure, and infringing material otherwise made available to the public "free" along with other available public access of their website application in the marketplace causes disadvantages over Plaintiff's intellectual property, U.S. Patent and Trademark registrations. Despite Plaintiff's exclusive Rights in the market including Plaintiff's exclusive Rights to exclude anyone and anybody. Plaintiff's believes that the **patent US-772** is essentially part and parcel to **registered U.S. Trademark**. U.S Trademarks are a way of branding each commercial application of Plaintiff's U.S. Patent. Accordingly, patents and trademarks among other things are integral to his intellectual property including under Florida Common law Rights.

359.      On information and belief that by authorities in the **America Invents Act (AIA)**[73] that was enacted in 2013, Plaintiff's belief that virtually any/all distribution is in violation of The U.S. Trademark *viz* citations in The U.S. Patent law. Citing *Helsinn v. Dr. Reddy's and Teva (D.N.J. 2016)*. The specific statutory provision affected by the comma was **AIA 35 U.S.C. § 102(a)(1)** which states that:

> **"a person shall be entitled to a patent unless the claimed invention**
>
> **was patented, described in a printed publication, or in public use, on**

---

[73] Distinguishing "Common terms under the 1952 Act". Though, District Court says secret or submarine patents and sales are not prior Art Under The AIA, the statutory clause now changes may well change other interpretations such as this posed by Plaintiff today.

**sale [,] or otherwise available to the public before the effective filing**

**date of the claimed invention."** (emphasis added)

The comma is in the phrase meant that the phrase also modifies the phrase "on sale."

A case on pointe of how the court interpreted the patent because of the comma

*3Form, Inc. v. Lumicore, Inc. (Fed. Cir. 2015, non-precedential).* In this case, the

clause was that 'otherwise compresses' is a catch-all that sweeps in 'other

deformative acts', including those specifically introduced earlier in the series of

claims construction;

a.   Therefore, with patent structure and procedural language such as, the presence or

absence of the comma in a list may affect the way that the list is interpreted;

b.   Therefore, by contrast to, based on the desired end result intended by the patent

drafter;

c.    Therefore, an additional sentence to indicate whether the last item in the list

does or does not modify the items in the list that came before it, or change the

structure of the language in construction to make the meaning more clear (or not,

if intended, so as to make construction more broadly interpreted). Although,

there appears to an application to so called "submarine patents", the phrase in the

**AIA** language **"on sale or otherwise made available to the public"** could be

pertaining to statutory "use", among other things, is believed to be extended to

mean that the product, machine, method or process being produced therefrom the

patent need not be sold or "on sale". Since, according to Plaintiff's reading of the

law, phrase constructing this sentence *"or otherwise made available to the*

*public"* has plausibility and/or a likelihood of meaning AIA had changed the question involving if the thing is on sale versus distributed such as made available to the public "free".

**360.**    Citing *Helsinn v. Dr. Reddy's and Teva (D.N.J. 2016)* specifically ruled on **AIA 35 U.S.C. § 102(a)(1)**. Though, pertaining to "use" re-defined or Courts adding clarification in **AIA** language, *supra*, why cannot this be applied or intended to be in use In The U.S. Patent and Trademark Office including U.S. Trademark language on "use"?[74] (It is The U.S. Patent <u>and</u> Trademark Office in the conjunctive terms and not the disjunctive "or", Patent <u>or</u> Trademark Office, by our framers of The U.S. Constitution, Article I, Section 8, Clause 3, 8, respectively.) Therefore, from the point of perspective or view in reference to "use" even if offered, offering, on sale, sold as this pertains to U.S. Trademark infringements "or otherwise made available to the public" in commerce and/or interstate commerce is in use or misuse even if "free". In light of our internet world of things and "free software", yet selling data in a connection to pretenses the product has been "free" and otherwise made available to the public. Traditional wisdom says our capitalism is wisely founded on business principal by putting products/services "on sale", selling, or have sold products/services in our *United States of America*. Shortly put, USA is all about capitalism. The so called global marketplace has tended to cause subversion of our American ways founded on selling. To be a foot into the door of our markets and compete with The USA. Patents and trademark laws global markets have found a

---

[74] Presented with this same question posed to the legal department of The U.S. Patent Office, their position did not exclude or preclude the same continuum. "Good question" was the short answer.

loop hole. At the heart of this is the software industry sharing things for "free".

Outside software has flooded our gates, and The Accused is part of this scheme.

361.     Upon information and belief that The Accused likely position of the

Trademark "Call Calendar" is "free". The Accused programs' infringing programs'

"free" or "Open" (as in The Accused "Open CTI", *i.e.*, including the pattern and

course of conduct or practice distribution scheme in combination with various

widgets "free") should be held to the standard of **AIA**, and in some light of recent

rulings. In an alternative, presented this particular present case, Plaintiff had outlined

the case that his intellectual property has essential part and parcel ties to his United

States Patent, **patent US-772**, as products' source from which his **U.S. registered**

**trademarks** have been produced, identified with, characteristics and qualities arising

from, arises or flowing therefrom his patent. Registered U.S. Trademark considered

tantamount to, and very least inferences to, part and parcel to, inextricable to,

inextricably related to, inextricably separated, a part of superior qualities and

characteristics to the functioning in/on all the known plurality of apps including "free"

and "Open CTI" and other "widgets" employed and/or imported by The Accused

infringements.

362.     By virtue Plaintiff Kaniadakis has expended significant resources in

developing, promoting, advertising and marketing sale of intellectual property, the

**patent US-772** and **registered U.S. Trademark** to gain livelihood, innovation in

creating a consumer and enterprise demand for such intellectual property in This

judicial district, Middle District of Florida (MD of Florida), The State of Florida and elsewhere in The United States of America and internationally.

363.     Upon information and belief that The Accused's acts of unfair competition are deliberate, willful and wanton, as well as intentional and malicious and with **oppressive** type behavior.

364.     On information and belief that The Accused's acts constitute unfair competition and will, unless enjoined by This Court, result in the destruction of goodwill in Plaintiff's intellectual properties to the unjust enrichment of The Accused.

365.     By virtue that in this case infringements of Plaintiff's U.S. registered trademark(s) are in a connection to U.S. Patents. Therefore, Plaintiff has the Right to exclude others, in effect, right for essentially no competition (with his technology when it is the same) and represented by the marks. It is "fair" for the Plaintiff to in effect exclude competition, however, in this case not for The Accused no matter how big they are and in light of bearing the patent and trademark. For The Accused to cause "unfair competition" in light of the unlawful exploitation of U.S. Trademarks which also have Rights of U.S. Patents is really offensive, aggravating factors which enhance the infringing nature by The Accused in this present case.

366.     Plaintiff Kaniadakis has been harmed by The Accused's pattern and course of conduct or practice as alleged above in an amount not yet fully known.

## COUNT 65

### UNFAIR BUSINESS PRACTICES, BAD FAITH AND UNLAWFUL ACTS, AND OTHER BAD ACTS

**Common to and Against Defendant SALESFORCE, Inc. *et al.***

**367.**     Plaintiff Kaniadakis repeats the allegations referenced and contained in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

**368.**     Pursuant to **501.204(1)(2)** unlawful acts and practices, **(2)** relating to **s. 5(a)(1)** of the ***Federal Trade Commission Act***, **15 U.S.C. s. 45(a)(1)**;

**369.**     On information and belief that The Accused's Defendants' SALESFORCE, Inc. *et al.* exhibited a pattern and course of conduct or practice making written record of falsehoods, false, misleading statements, misrepresentations and deceptive practices to Plaintiff Kaniadakis.

**370.**     By virtue that in addition to infringing behavior outlined herein, The Accused's Defendants' SALESFORCE, Inc. *et al.* exhibited has included bad business practices and bad faith type acts, because The Accused knowingly, knew or should have known, willfully infringed and acted with disregard, maliciously infringing, and even with the type of <u>oppressively infringed</u> behavior cited that is against the Law of the Land, despite merits of infringements and accepted official presumptive validity, continued committed alleged acts with the intent to injure Plaintiff Kaniadakis as The Accused's Defendants' engaged in acts so as to cause to make culpable participants in a scheme to cause *unlawful intent* to violate of the law.

**371.**     By virtue that The Accused's Defendants' SALESFORCE, Inc. *et al.* were caught representing that they had found no packages or Notices mailed to them. By contrast, The U.S. Post office has supplied on multiple times/dates evidence that would contradict The Accused false statements.

236

372.    By virtue of The Accused's Defendants' SALESFORCE, Inc. *et al.* were

caught representing that they had found no material packages mailed, when U.S.

mail had supplied evidence of delivery. The size and weight of the packages

predispose that more than a thin letter were delivered on numerous dates.

373.    By virtue that The Accused's Defendants' SALESFORCE, Inc. *et al.* were

caught representing that they had found no material related to the U.S. Trademark

infringement. Only after being further confronted and pressed more, <u>about five (5)</u>

<u>years later</u> from the initial documentations, The Accused had acknowledged the

following;

**["] . . . we note that it appears that it appears to be <u>artifact</u> of**

**changing their name . . . ["] [.]** (emphasis added)

**Above;** evidences that the infringing U.S. Trademark remained, and The Accused

had not taken action to completely and timely resolve infringement concerns. The

Accused continued to be begrudging to be abiding by the law.

374.    Upon information and belief that The Accused cannot be provided any

protection, mediation or relief since complaint concerns U.S. Trademark infringement.

The Accused cannot be provided or afforded substantial protection, mitigation, relief or

substantial offsetting relief under **Section 230 of The Communications Decency Act**

**(CDA § 230). CDA § 230** protects website owners from many claims based under The

Accused's hosted content, user comments, user-generated, and other third party content.

Furthermore, safe harbor and **CDA § 230** does not apply to "intellectual property"

claims, **47 U.S.C. 230 230 (e) (2).** Therefore, The Accused is participants in unlawful

conduct and/or acts against U.S. Trademark constitute violation of the rule of law(s).

375.     Upon information and belief, Defendants' acts constitute an unlawful act are intentional, knowingly, willful disregard, infringements willful and wanton, as well as intentionally malicious, and the type of **<u>oppressive</u>** action/behavior(s) which has been ruled In The Law of The Land unlawful defense to stand their ground against such a situation, against Plaintiff Kaniadakis said goodwill, and history will show Plaintiff's good faith material to complaint.

376.     On information and belief that The Accused has even further more acted with bad faith, unfair business practices because The Accused asserted and challenged validity concerns. This is a bad act and unfair scare tactic. These tactics are not what would be expected of businesses' due care and consideration and especially one of the magnitudes of The Accused's corporation and not of any publically traded incorporation.

377.     Upon information and belief that The Accused malicious nature has been well founded as a pattern and course of conduct or practice. Recently issues have been ruled law of the land *In The Supreme Court of The United States* to work adversely in a case on point. Thus, The Accused actions are likely to have caused an adverse action against them according to the law.

378.     Upon information and belief that The Accused have asserted an unlawful act or unlawful position by asserting no infringement and invalidity claims as defense against the good will of Plaintiff's friendly Notices and supporting evidence mailed

repeatedly in packages to The Accused. The Accused unlawful act cited with

**Commil USA, LLC v. Cisco Systems, Inc. (S. Ct. 2015)**.

379.     By virtue that despite the good will and good faith business practice which

Plaintiffs Kaniadakis had engaged The Accused, among other infringing behavior

and other unscrupulous behaviors, either ignored and/or acted with malicious actions

against Plaintiff in unfounded retaliation, making bolded unfounded allegations

against the valid Rights held and exercised.

380.     On information and belief that, according to this reading of the law, The

Accused must at this time be compelled to prove by clear and convincing evidence,

or the strictest standards in light of Plaintiff's Right granted as a presumption of truth

and official validity, which The Accused might have burden switches or changes

over to The Accused to prove the asserted claims against the official title, or accept

the Declaratory Judgment against all The Accused Defendants captioned.

381.     The Accused must be compelled to prove their asserted claims against

Plaintiff about "prior art" and priority dates". This is causing the Plaintiff to become

the counter-defendant. Such statements represented must be held in this venue and

judicial district as set forth herein this complaint. This by authorities of Commil case

cited, *supra*. This by authorities **28 U.S.C. §§ 2201 and 2202** wherein **Plaintiff**

**becomes Counter-Defendant**, and the reverse obligations of The Accused by virtue

of the cross-claims and The Accused as Counter-Plaintiff.

382.     Commil USA, LLC v. Cisco Systems, Inc. (S. Ct. 2015) as a defense had

made a record and had been including a record of case law in a reference essentially

to the validity of  Plaintiff Kaniadakis' **issued title of The United States Patent # 8,666,772**. Although, in this instant case is involving Plaintiff Kaniadakis' has infringements which are referencing registered U.S. Trademark and U.S. Patent. Therefore, this present case charges The Accused as having weighted intentions even more the mental state to simply ignore our United States authorities and rule of laws.

383.     The *Commil* case for the present case and the infringement on the U.S. Patent offers a basis on which to give on this present case.

384.     Plaintiff's belief that Commil case shall help provide some finding that This Court may deem as offering some guidelines as follows:

A.  Plaintiff's reading is that ***The Supreme Court of The United States*** held that;

    **i.**     A belief (*i.e.*, mental state) that a patent is "invalid" (as opposed to a belief of "non-infringement") is not a defense to inducement of patent infringement;

    **ii.**     A belief that the patent is "invalid" is not a defense to direct patent infringement or contributory infringement.

B.  Whereas, with the *Commil case*, which is law of the land, *In The Supreme Court of The United States* Reaffirmed number two (2), above.

385.     In an alternative that The Accused to show cause:

    **a.**  Why The Accused belief that findings including with the Commil authorities and the Law Of The Land should not apply to The Accused and Plaintiff case of infringement against The Accused;

    **b.**   Why This Court should not find reason to find probability that this case must remain in This Court in the Plaintiff's domain, this venue, this judicial district

and jurisdiction. Since The Accused had included the validity defense against infringement matters;

   c.   Why A Declaratory Judgment should not be GRANTED against The Accused in this matter;

**386.**    In this case Plaintiff Kaniadakis' U.S. Trademark issued is tied in the significant way to his U.S. Patent issued. The registrations in The U.S. Patent **and** Trademark Office have been made a record in this present case. The Accused have acted against the law on several counts, and The Accused have acted against the law in two (2) official offices of The United Stated of America, and it is a present case which must be accounted for by The Accused including compelling basis on course, raw bully tactics in which The Accused has been documented.

**387.**    Plaintiff Kaniadakis' U.S. Trademark is embracing his U.S. Patent and designation of origin becomes part and parcel. On point to this demonstrated in this present case; Wherein, The Accused has violated both laws in The United States Patent and Trademark law. These acts each likely was to cause confusion and designation questions in the minds of the public. The Accused have continued acting with blatant intentions. The Accused have acted with ingénues intent. The accused taken a position of essentially raw brutality, sheer money and power over fear of infringement concerns.

**388.**    The validity and infringement defense offsets The Accused's documented facts and law is axiomatic and The Accused's statements of facts and law documented heretofore unfounded in this case.

**389.**     According, The Supreme Court of The United States, in *Commil*, and this is believed to applicable grounds to this present case at this time as this was for the U.S. Patent case for *Commil,* but for an early evidenced document of The Accused's' which may reveal to This Court The Accused state of mind and intent.

**390.**     For at the very least reference with early documentation made of a validity claim by The Accused should warrant the negotiation of defenses' move to dismiss, which means probability to stay in This Court and in this judicial district, by virtue of a likelihood of a validity claim to be brought, and for This Court not to dismiss for any of the other axiomatic and/or defenses' contradictory reasons including a defense of no infringements.

**391.**     Bad Faith Business Practice Acts, including Unfair Business Practices, Advantage, Competition, among other matters in Complaint.

**392.**     Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

<u>**COUNT 66**</u>

**ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT AGAINST DEFENDANTS CONTENT PURSUANT TO 15 U.S.C. 1125 (d)**

**Common to and Against Defendant SALESFORCE, Inc. *et al*.**

**393.**     Plaintiff Kaniadakis repeats the allegations referenced and contained in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

**394.** Upon Plaintiff's belief and understanding safe harbor provisions do not provide any protection to The Accused, Defendants against U.S. Trademark infringement under **Section 230 of The Communications Decency Act (CDA § 230)**.

**395.** On information and belief also that Plaintiff's belief the same could be the case pertaining to the U.S. Patent infringement related acts with a reference to **CDA § 230**. Especially in this case in light of this case as a double infringement case.

**396.** **CDA § 230** protects website owners from many claims based under The Accused Defendants' hosted content, user comments, user-generated, and other third party content. However, safe harbor and **CDA § 230** does not apply to "intellectual property" claims, **47 U.S.C. 230 230 (e) (2).** Therefore, Defendants should not be provided any protection from committing acts against cyber-squatting claims in complaint.

**397.** By virtue of The Accused Defendants is trafficking in, using and maintaining internet domain names in connection to "Calendar Call" **registered trademark #4,469,219** by comparison-contrast to The Accused Defendants' "Call-Calendar". The hyphen, dash, underscore mark is typically used with file names and links. The hyphen or underscore marks also could provide greater search value parameters. The Accused Defendants' online access is making available the use and the access of the name by search engines. *e.g.*, Google search page application program. There exists a likelihood of causing confusion, mistake, and misleading, false designation, false descriptions, among other false or deceptive like practices involving false or misleading designation of origin and conveying wrong product source related issues under **15 U.S.C. §1125**.

**398.**     By virtue of The Accused Defendants' website program application

incorporating the similar name called, "Call Calendar", but not limited to, including in

The Accused Defendants' domain name. The machine or the computing device cannot

distinguish the marks or the names in the same method or process as might the typical

American (human) and in the minds of the public. The Accused Defendants' action

causes likelihood of confusion the Plaintiff's **registered U.S. trademark #4,469,219**

called, "Calendar Call". The Accused Defendants' actions have a likelihood of causing

confusion, also, misleading, misrepresenting, confusing the public at large, e-

commerce, distribution in any/all other manners including consumers and prospects,

commercial vendors, companies, entities, and enterprise in wholesale and retail markets

with The Accused Defendants' use/misuse of the name called, "Call Calendar" on web

pages and on/in web connections to products/services. Web page application programs

are like most any kind of "app", virtually the same thing.

**399.**     By virtue of The Accused Defendant's compounded misuse/use with use

including the act of using tags, key words or "meta tags", and in connection to The

Accused web application program site pages and page content. Therefore, search results

find the names, which are confusingly similar names and have a likelihood of

conveying the wrong designation of origin, causing mistake by consumers and

enterprise. The Accused allowed the website links in The Accused programs' content.

The Accused programs' website apps links are in a connection to The Accused

products/services. By using the name "Call Calendar" allowed to remain, even much

later as an "artifact", The Accused contributing, inducing, aiding, abiding, and causing

the participation of false or deceptive type practices. In this event such other tags, names, domain (name) links, key words are not with good intent. The Accused improperly enabling false or misleading pathways of designation and identifying of the different products/services and the different source or origin. The Accused Defendants apply the name, title, and domain name links in connection to their bad intentions, false, misleading, deceptive malleus, devious and other patterns and course of conduct or practices of various misrepresenting objectives.

**400.** By virtue that The Accused Defendants apply the name, title, and domain name in a connection to their objectives including products/services of The Accused and content name is searchable as follows:

**< . . . / call-calendar . . . />**

**<u>Above</u>;** Illustrative of The Accused Defendant's domain name is identified by search results in connection to products/services and in search results in connection to The Accused. The infringers' programs' domain names are confusingly similar to the Plaintiff's domain <u>and</u> to the Plaintiff's **U.S. registered trademark #4,469,219** in connection to the Plaintiff's technology producing the products therefrom.

**401.** **<u>Below</u>;** The Accused web application programs' pages applying the name, logo, mark. An electronic connection to Plaintiff Kaniadakis' U.S. registered trademark and included with at least one name, logo/icon identifying the quality of the technology as original U.S. Patented Technology. Plaintiff's use of **a registered U.S. trademark** helps identify products produced therefrom the source and designation of origin, **the patent US-772**:

# www.callcalendar.net

# www.callendarcall.com

**Above;** Plaintiff's domain name. Above Plaintiff's domain name is the web site application program of The Accused programs' infringing programs' technology and infringing on Kaniadakis' registered U.S. Trademark and infringing on the Kaniadakis' issued U.S. Patent-772 the source, designation of origin conveying the quality of the technology as official and intended to help with identifying the patent US-772 actions-functions producing the products therefrom components of the machine, method or process described by said patent.

402.     By virtue that The Accused allowed and ignored the "mask forward" (mask to hide the connections) electronic web site link of www.callcalendar.net infringement, which was masked even further by using other plaint text and words on The Accused programs' infringing related web site application pages including but not limited to things like "support" or as "company" or other text/words in connection which become detectable with search engines. Also, evident in the event anyone in typical means of clicking (invoking) to send an electronic message or hovering ones' mouse or pointer over the text/words. It appears that some connections have been visibly (by the human eye) removed from The Accused programs' connections. As stated, there remains "artifacts". There remain visible connections. While attempting to mask (hide) certain connections, there was and remains the visible and easily accessible, made available to the public material and content outlined herein.

**403.**      On information and belief that The Accused infringing behavior becomes typical of another behavior and acting against the law. An unlawful act of cyber-squatting, also against the related Anti-cyber/Piracy laws. The gain access and other advantages over the rights and rightful owners of property. The act of leaving behind some "artifact" material link or connection to property or the domain of another. This behavior might well be typical of "squatters" in a mental state that material can be otherwise claimed quicker and easier than painstaking efforts costing Plaintiff to gain such rights, title and property.  The Accused causing confusion and source of ownership compromising the true owner, and the act is at the risk of only gaining access and/or possession, making claim rights, so forth on for which The Accused and culpable participants in this scheme are not initially entitled by title, deed, date or first to arrive, first to file or otherwise.

**404.**      By virtue of and reasons including that The Accused has left remaining the Plaintiff's U.S. registered trademark The Accused later identified as merely an "artifact", even with the evolution to manage the apps owner from India, is because the name will be searchable on The Accused programs' infringing web application page sites. Also, The Accused gains even more control over managing the domain, because previous owner that The Accused has managed programs' application "Call Calendar" had dropped out. The Accused could continue with a devious scheme to take over apps hosted on *AppExchange*. The Accused directly and indirectly gain advantage from managing and resulting confusion, mistake, false or misleading designation. The Accused gain by directly and indirectly gathering data and selling other

products/services. Even if distribution of some apps are said to be "free", data is of value to others paying for The Accused products/services.

405.    On information and belief that The Accused programs' infringing programs' technology is provider connecting products/services including hosted website related pages manage (managing role) the programs and contract by agreement with users, *and others*.

406.    By virtue of The Accused Defendants' application (app) including *Call Calendar* application site on The Accused *AppExchange* App Store front has a likelihood of being misleading by way of domain names and search results, misleading to The Accused "connected apps" including co-Defendants' *Twilio, Inc. et al*. "Marketplace", *Zendesk* Marketplace App Store fronts, which at least one of Sixty (60) or more have the same infringing components.

407.    By virtue of The Accused have unlawfully acted in order to gain advantage and revenue over the Plaintiff's use of the name called, "Call Calendar". Even in the event people do not use the product of **"Call Calendar, Inc."**, people are likely to use The Accused programs' infringing programs' technology "Click to Dial" in combination with "Call Calendar", thereby causing the same result as Plaintiff Kaniadakis' **patent US-772.** With confusingly similar names. The visitors of The Accused's application site may at first get actions-functions for the *imitator* "Call Calendar"; However, after visitors having been provided by way of directly, indirectly, contributory/inducing infringing with the means for/of . . . "converting via the new program a listing of phone numbers into interactive commands or command

graphic therefrom the scripting" . . . the actions-functions therefrom "Call Calendar"
to . . . "making changeable" . . . to the actions-functions of the **patent US-772**.

408.     On information and belief that The Accused cheat and gain benefits including
but not limited to revenue, from infringing on **U.S. registered trademark
#4,469,219** called "Calendar Call" (Callendar Call) and identified with the characters
thereof, and the **patent US-772** as The Accused **#15 (f)** . . . "making changeable" . . .
the *imitator of* U.S. trademark "Call Calendar", while The Accused programs'
infringing programs' technology "widgets" will be providing means of/for actions-
functions functioning substantially the same and resulting in the substantially same
actions and functions as Plaintiff Kaniadakis' patented technology and exactly the
same results as with the Plaintiff's **patent US-772**.

409.     By virtue The Accused program "widgets" infringing on the U.S. Patent with
confusingly similar domain name references on The Accused hosted web site
application pages compound a likelihood of causing confusion, falsely mislead
technologies' designation of origin, Plaintiff Kaniadakis' source's legitimate
designation in the minds of the public. Consumers and enterprise finding domain
names and products and technology are confusingly similar, the same, substantially
the same or substantially similar to Plaintiff Kaniadakis' U.S. Patent and U.S.
Trademark and vise-a-versa. "Calendar Call" **and** "Call Calendar". The Accused in
this instant case causing infringement on products/services in a connection to
products/services **registered U.S. trademark** and **patent US-772**.

**410.**     By virtue of The Accused programs' infringing program technology products may <u>look different</u>. However, The Accused are using a machine, method or process, products/services that is functioning substantially the same and resulting in the substantially same actions and functions as Plaintiff Kaniadakis' patented technology and exactly the same results as with patent US-772. The Accused programs' Store has at least one (1) or more of The Accused's *AppExchange* App Store front's Sixty (60) "apps" or more identified using Plaintiff's U.S. Patented technology.

**411.**     By virtue that, and by the same token that, the apps may <u>look the same</u>. As in the case of "Call Calendar". However, the apps providing different claims of actions-functions as Plaintiff's **patent US-772**. Until The Accused will be providing the visitors a means for/of producing the heart of the same invention described by Kaniadakis' patent US-772. (Contrast to #14, earlier herein.)

**412.**     On information and belief that The Accused has made false or misleading designation of origin or product's source exist a likelihood of causing confusion, mistake, and conveying the wrong source of origin when furthermore coupled to confusingly similar domain names referenced. People and programs using what is referred to as "closed" and "open" loop search will produce results in references to The Accused Defendants' misuse/use of Plaintiff's **registered trademark #4,469,219**. More than one program application could be used and each search application and site will unfairly provide search results in the same discovery. Thereby, conveying a different source of origin and misleading others to The

Accused Defendants' use/misuse in a connection to The Accused programs' infringing programs' technology.

413.     As a result of The Accused use/misuse of the "Call Calendar" name, the fact that The Accused had not taken action to remove the "Call Calendar", and the name continues to be otherwise made available to advertisers, sponsors, consumers, prospects, among others in commerce in the revenue stream of sources and resources.

414.     On information and belief that The Accused Defendants' actions and inactions have intentionally caused unnecessary wrongful added liabilities, and continued to cause unnecessary wrongful liabilities, wrongful intended confusion on Plaintiff Kaniadakis' identified products produced from the technology's source and origin of designation, the patented technology. The registered U.S. trademark has designated by Rights afforded to the Plaintiff the single source leading the public in connection to his U.S. Trademark and product designation, the U.S. Patent.

415.     By virtue of The Accused Defendants, after being notified about these facts and notified of legal Right of Plaintiff Kaniadakis has afforded himself and as alleged in complaint, that The Accused has continued these unlawful practices and continued publishing content in connection to their sources and use/misuse of "Calendar Call" as "Call Calendar" for a means to an end including The Accused's motivation inducing infringing behaviors on to others.

416.     On information and belief that The Accused acted in bad faith intent as Defendants continued to wrongfully profit and to wrongfully gain material

advantage as a result of goodwill associated with Plaintiff Kaniadakis' registered

trademark. Therefore, compounding The Accused Defendants' wrongful, unlawful,

and intentional acts included the act of allowing the creation of a confusingly similar

online reference point, names and electronic web site link, which cumulatively has a

likelihood of intending to "pull the wool over the eyes" of consumers, enterprise, *et

al*. Changing the material to various synthetic fakes. The name and the link is

essentially an internet connection point, but not in a connection to Plaintiff's

products and connected product source. The Accused Defendants' are acting to

further unlawfully get away with taking gain advantage over Plaintiff's intellectual

property, for which The Accused is not entitled to receive. The Accused Defendants

advertise content in connection to the use/misuse of "Call Calendar", *et al.*, and

taking full advantage of Plaintiff's registered U.S. trademark. The Accused

Defendants' use of key words and electronic link connection references thereby have

a likelihood of causing false representations, misrepresentations, misleading

conveying false designations and confusing results including on search results with

the public and other commercial markets.

**417.**      By virtue of Plaintiff Kaniadakis' registered mark, the name is in use and in

connection to his product. Official records relate to "anywhere prior use" including,

but not limited to, domain name ownership with variations including "calendar,

callendar, callndr" and others long before The Accused Defendants use of the

domain name and key words remaining in reference to The Accused programs' web

apps was in continued use and in connection, even by virtue of even a single name, to The Accused Defendants' use/misuse and alleged intent.

418.    Plaintiff has been harmed by Defendants' pattern and course of conduct or practice as alleged above in an amount not yet completely known.

## EXCEPTIONAL CASE

419.    Plaintiff Kaniadakis repeats the allegations contained and referenced in the preceding paragraphs as though fully set forth herein and as follows;

420.    Based on, among other things, the facts alleged in paragraphs referenced above including The Accused intentional use of Plaintiff's patented technology, The Accused complicit, knowledge of infringement, receipt of constructive Notice and repeated Notices, ignored timetables to cease and desist, even participated in filing and securing *ex post facto* U.S. patent #US-15, without any history heretofore exercising their right for protesting[75] plaintiff's patent in the U.S. Patents Office, and The Accused continued direct and/or indirect counts of infringement. This case is believed exceptional under **35 U.S.C. §285**, among other laws pertaining or cited herein, Plaintiff entitled to reasonable costs and expenses of litigation.

421.    By virtue of exercising the law; **35 U.S.C. § 295(1)(2);**

**(1) that a substantial likelihood exists that the product was made by the patented process, and**

---

[75] "Protesting" is a legal term of art In The U.S. Patent and Trademark Office. Defendants at no time, after publication and/or before U.S. Patent was issued were protesting the filing, even after several Notices, post issue.

**(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine, the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.**

### Declaratory Judgment In An Alternative;

422.     Plaintiff Kaniadakis repeats the allegations contained and referenced in the preceding paragraphs **1 through 285** as though fully set forth herein and as follows;

423.     For reasons more particularly detailed and outlined herein today Plaintiff's U.S. Patent infringement, U.S. Trademark issues, on grounds and on basis of those set forth herein, asks for this declaratory relief providing This Court with today's Complaint.

424.     Declaratory Action and Final Judgment Against The Accused, Defendants on grounds and a basis outlined with more particularity herein and under **28 U.S.C. §§ 2201 and 2202**; This Court has subject matter jurisdiction over Plaintiff's Declaratory Judgment claims pursuant to **28 U.S.C. §§ 2201 and 2202**.This Court should respectfully promptly **GRANT** adjudication against The Accused in this matter. By virtue of The Accused, Defendants' SALESFORCE, Inc., *et al*., d/b/a SALESFORCE.COM, INC. *et al*. causing violations of the law as evidenced, provided material support, at least a *prima fascia* showing with the following:

a.   Infringements are involving and including at least one officially registered U.S. Trademark violation in contention and This Court as well as The Accused have

had the opportunity to, and heretofore this complaint to This Court, to repair

any/all damages or infringement concerns provided with plausible reason(s),

thereof;

**b.** Infringements are involving and including at least one officially registered,

issued and deed to Claim of U.S. Patent infringement in contention and This

Court as well as The Accused have had the opportunity to, and heretofore this

complaint to This Court, to repair any/all damages or infringement concerns

provided with plausible reason(s), thereof;

**c.** Not with standing, The Accused has essentially ignored the evidence offered.

Furthermore, The Accused has evidenced a pattern and course of conduct or

practice evidencing to This Court the following;

   **i.** The Accused mental state on infringement(s), especially on

   infringement In The U.S. Patent Office ruling, to act with intent to

   continue infringement(s);

   **ii.** The Accused has acted with intentional behaviors, including but not

   limited to, willfully, wantonly, maliciously, and **oppressively**, therewith

   other wrongful and unlawful acts of intentional behaviors exhibited,

   together with the intent to likely cause unjustified defensive actions to

   injure, harm, damage, against Plaintiff and Plaintiff's intellectual

   property and his rights for exercising the rights against infringers.

**d.** The Accused actions have demonstrated and evidenced the type of **oppressive**

action/behavior or a unlawful standing on in genuine grounds or as likely to be

false pretenses for defense, in light of the fact and the law, which has been found

against the law in the context of this particular case and in light of citations on

the grounds of *Commil case supra*, and Law of The Land included with

authorities of *Commil*, and on basis as further pretense, outlined and provided to

This Court in this complaint;

**e.**   The Accused Defendants' SALESFORCE, *et al*. had not even cited, in a defense,

perhaps if applicable the cited "prior art" they have claimed, and in any no other

manner supporting its statements made against Plaintiff.  As a defense (or

counter offensive action) **"Salesforce.com, Inc." U.S. Patent 8,731,151 issued**

**May 20, 2014**. The fact is that it issued after Plaintiff's U.S. Patent was filed and

issued. As if The Accused think this is a so called "Mexican Stand Off" between

foreign parties.

**f.**   The Accused, Twilio, Inc., *et al*. had continued to choose to ignore these

infringements concerns, but for adequate Notice has been afforded to them and

all The Accused rising to call upon This Court and set forth and outlined with

this complaint. Even after Defendant Twilio had filed for IPO and become a

publically traded and further entrusted incorporation with the due diligence,

Plaintiff's infringement concerns continued to be ignored by all, but for the

oppressive bully like posture and acts against the law it co-Defendants had

evidenced, document by and for co-Defendants, do not add validity to Plaintiff's

claim to their co-Defendants future actions in defense and/or as Plaintiff may

likely become compelled to actually become Counter-Defendant, and at the very

least causing future further injurious effects discoverable unfounded documentation in future cases put forth by actions of The Accused;

g. There is a presumptive truth and validity, which has been breached by The Accused as evidenced with **PLAINIFF'S EXHS. "O" and "P"**, according to the law by authorities including *The Supreme Court of The United States viz. Commil case, et al*.

h. Simply put, The Accused has violated the law on a larger scale, despite merits of infringements and validity concerns, when in light of a plausible grounds and basis and likelihood of causing infringement and for exercising the rights against the accused defendants.

## PRAYER FOR JUDGEMENT WITH RELIEF AND INJUNCTIVE RELIEF SOUGHT

1. **WHEREFORE,** Plaintiff requests This Court to award entry of judgment against The Accused, its subsidiaries, successors, parents, children grandchildren, affiliates, Executive Boards' of Directors, Directors, Officers, agents, servants, and employees and all persons in privity or active concert, participants, culpable participants with/for The Accused, with GRANTING the following relief in favor of Plaintiff as follows:

2. For a Declaratory Judgment immediately ORDERED against The Accused on the basis of The Accused in violation of the law of the land, on grounds of *Commil case* along with referenced therein other law of the land established by *The Supreme Court of The United States* and steering case law in lower U.S. Courts; (BEFORE The Accused may attempt to files against Plaintiff in The Accused's judicial district. As history shows The Accused are copying Plaintiff's other actions.);

     **i.**     By virtue of **PLAINTIFF'S EXHS. "O" <u>and</u> "P"**. For This Court's significant

finding of <u>**oppressive intent**</u>, in light of claims of infringement(s), by virtue of

The Accused Defendants' evidenced state of mind in light of the law, <u>supra</u>,

*Commil law*, The Accused stating no infringement(s) and The Accused making

the discoverable documentation of invalidity, both claims which have been put

forth an attacking improperly, unfairly and unfounded grounds without any

stated actual basis of "prior art" cited, among other things asserted, which may

be even superficially evidencing either proving invalidity nor articulating non-

infringement(s) Plaintiff by The Accused together in the same discoverable

document and alleged herein by at least *prima fascia* evidence and as exhibited

by The Accused Executive Board of Directors' and CEO's, *et al*. legal

representations and standings, and obviating state of mind in light of *Commil*

citations and the law, likely intent to cause further evasion, compromise, harm,

injure, likely causing greater damage, violate rights entitled for exercising the

laws, and/or

     **ii.**     For This Court's finding malleus intent of any extent of infringement based upon

the foregoing and outlined herein;

     **iii.**     For This Court's finding at least willful, wonted,  for any extent of the

infringements based thereupon foregoing and outlined herein;

**3.** For Final Judgment(s) favorable to Plaintiff that The Accused have infringed on

Plaintiff's U.S. Patent, with respect to the following request from Plaintiff as previously

outlined herein, infringement(s);

i.       A declaration that The Accused have infringed, are infringing, have induced and are inducing, have contributed and are contributing to infringements of Plaintiff's granted United States Patent;

ii.      Directly (such as SALESFORCE'S "*Visualforce* Click to Dial" component, attribute, and/or with means for *Lightening "voice"*, and/or with #US-151, and/or with Twilio "voice" providers, indirectly, contributory, inducing infringements;

iii.     Infringing examination proximate function, enabling result with programs' working the same, substantially similar and/or, substantially the same action and function the same resulting action of Plaintiff Kaniadakis' United States of America Patent, US-772, or by means of/for infringing on the patent US-772;

a)   **By method or process infringing on the patent of <u>vicariously</u> and/or either;**

b)   **By method or process infringing on the patent <u>literally</u>**; or,

c)   **By method or process infringing on the patent under the <u>Doctrine of Equivalents</u> (DoE)** which has been outlined herein;

d)   **By method or process infringing on the patent under the law 35 U.S.C. § 295(1)(2);**

4.     For Order against The Accused engaging in any activity which may interfere with Plaintiff and/or the Plaintiff's source, business relations or contracts, including U.S. Patented Technology which may bear resemblance, likeness, confusing the Plaintiff's source;

**5.**     For Order against The Accused engaging in any activity in the next 17 (seventeen)

years which Plaintiff Kaniadakis deems may compete with the Plaintiff's source;

**6.** For This Court to Enter an;

**i.**     Order that The Accused to immediately remove any/all connections, links,

websites, contracts, to infringing content, material, programs, advertisement,

promotions, sale, offer, distribution, free or otherwise made available to the

public and any other entity an persons;

**ii.**     Order that The Accused to supply all contacts responsible for such infringing

material for notifications to be immediately be mailed by U.S. mail, with

tracking delivery and conformation information, and supplying complete copies

of all contacts, their customers and contacts of suppliers and customers,

including users', end-users' information and data,  to plaintiff for any/all further

execution and tracking said inventory and The Accused compliance;

**iii.**     Order that The Accused for destroying or disposing of any/all infringing material

so the material could not be in use or made available to/for public, partners,

distributors, retailers, salesman, marketing, suppliers, contacts and others, except

for maintain records of evidence required to future Court Ordered, accounting,

actions, defense and prosecution (do not destroy evidence or material subject to

evidence);

**iv.**     Order The Accused assign/transfer all Rights to all infringing programs to

Plaintiff in order for seizer of merchandize and control of the technology,

products therefrom, and 100% all gross revenues including advertisements,

contracts, contact list from each infringing program, data collected, phone numbers, email, physical and electronic website addresses, data sold or accessible, gross program revenues, past and future by all infringers and all infringers in a connection to The Accused

7. That This Court enter Temporary Restraining Order, as well as Preliminary Injunction in favor of Plaintiff, enjoining The Accused, The Executive Boards' of Directors, their Officers, agents, servants, employees, independent and sub-contractors, third parties, partners, distributors, retailers, wholesalers, consumers, enterprise and all customers, marketing firms/people, sales people/firms, affiliates, representatives thereof, and all other entities and persons in active concert or participation with/without The Accused, however in connection with The Accused, either directly and/or indirectly from further;

   i.    infringing any/all claims of the patent US-772;

   ii.   infringing on U.S. Trademarks, #4,469,219 and #5,021,480;

   iii.  aiding, abiding, contributing, cooperating or collaborating or conspiring with any/all third parties, external program applications, including but not limited to those outlined herein, making, use, sell, import, export, assemble, or offer for distribution or sale on sale or otherwise made available to the public, parts, attributes, components, that when finally assembled and/or used will infringe on the patent US-772;

8. For permanent judgment that The Accused has directly and/or indirectly **35 U.S.C. §271** and under subsections thereof, contributory, inducing, and/or directly and

otherwise any combination thereof infringed on cited counts herein;

i.     at least one claim of the patent US-772;

ii.    at least one of Sixty (60) or more of attached referenced exhibits **EXH "D", "D-1"**;

iii.   at least one claim and/or component, element, attribute on The accused patent #US-151 on all the elements of at least one claim of Plaintiff's patent US-772;

9.  For  This Court enter a Permanent Injunction (under **35 U.S.C. §283**) in favor of Plaintiff enjoining the U.S. Patent (US-772) infringement by The Accused;

10.  That This Court enter a Permanent Injunction in favor of Plaintiff enjoining the each of the two (2) U.S Trademark infringements by The Accused;

11.  That This Court find that there is malleus, oppressive with intent to harm, injure, likely causing greater damage, violate rights entitled for exercising the laws, and/or at least willful, wonted,  infringements on each of the infringements herein, and award aggravating factors, upward enhancement, justifying treble damages, harm, injury, punitive, due to the nature in amounts on each infringement having three (3X), and for each of the three (3) infringements; 3 times 2 (3 X 2) = Six (6X) times damages, on grounds that Notice (or as lawfully could be awarded, provided under **35 U.S.C. §284**) had been repeatedly given to The Accused on at least two of each of the three infringing acts;

12.  For This Court award a multiplier fixed by This Court for award to Plaintiff and his collectors on each additional count of infringement, U.S. Patent and Trademark

including but not limited to counts from EXHS. "D", "D-1" on patent infringements.

13. That This Court find and declare that i.at least two (2) infringements was and continues to be oppressive, malleus, obstructive, disruptive, deliberate, at least willful, wonted and intent on infringements;

14. That This Court determine that this is an exceptional case at least to the United States Patent issues and one U.S. Trademark issue herein;

15. For This Court award professional fees, attorney (under **35 U.S.C. §285**), Certified Public Account (C.P.A), all past and future collecting costs, said fees and disbursements, pre-verdict and indefinitely post-verdict, any continuing or future infringement **U.S.C. § 284**, sufficient to compensate Plaintiff, including up and through the date/time that The Accused is 100% finally and finally and permanently enjoined from further infringement including compensatory damages, termination only be a written release signed and date and mailed or hand delivered by Plaintiff and recorded with This Court's Clerk of Court to release The Accused having believed to satisfied said Court's ORDER;

16. For an accounting pre-verdict and indefinitely post-verdict, Court Ordered, for said monetary awards for which The Accused must be held jointly and severally liable, including but not limited to, Plaintiff's loss on all gross revenues, including but not limited, to past gross revenues, lost fees, each The Accused enterprise/monthly prices for each the infringers including the Sixty (60) in a connection to the Accused, price erosions, or otherwise, or in an alternative, based upon Plaintiff's

responsible royalty prices and fees Plaintiff charges each enterprise for legitimate and Official U.S. Patented Technology and products produced therefrom with Trademarks identifier package (bundle), and justifying trebling each Plaintiff's royalty package, because of the knowing wonton nature, willful, disregard, and malleus infringing pattern and course of conduct or practice as outlined herein;

17. For awarding to Plaintiff damages pursuant the full extent of the law of no less than that stated amount Plaintiff had demanded of violators for intellectual property related acts and infringement **$532,299.00** (five-hundred thirty two two-hundred ninety nine dollars and no cents) per year, royalty or license fees and price which represents The Accused economy level, basic entry enterprise level license amount, with three (3) year term limit, for the intellectual property license, totaling the three (3) years in the amount of $1,596,897.00 per license term (one million, five hundred ninety six thousand, eight hundred ninety seven dollars and no cents), renewed December, 2016, and Defendants had been notified prior to renewal, with Defendants' continued content displayed, which is to add another license term, totaling the amount of **$3,193,794.00** (three million, one hundred ninety three thousand, seven hundred ninety four dollars and no cents);

18. For This Court to find that The Accused have been put on Notice since at least the documented date/year five (5) years ago. Therefore, in accordance to Plaintiff's Right to excluded and charge for his intellectual property, prices have been published. The amount Five (5) **5 times (5X) $1,596,897.00** per license term (one million, five hundred ninety six thousand, eight hundred ninety seven dollars and no

cents), renewed December, 2016, and licenses are sold only in three (3) contract year terms to enterprise. This is based upon conservative basic level enterprise users, larger enterprises are much more. For This Court to award based upon license and with royalty fees and charges in the amount of exceeding and amount of **$9,581,382.00** for six (6) years (nine million five hundred three hundred eighty one thousand three hundred eight two USD), since two three year terms have expired since the year 2012. When The Accused were to provide timetable and license the U.S. Patent. Court to deem justifying trebling (3X) these fees and damages as well;

**19.**  The Accused Twilio's price or royalty demanded is in an excess of **$15,000.00 (fifteen-thousand USD) per month** or greater, for each, The Accused programs' enterprise. This price of other programs are added and tripled (3X) this amount when including "another known type" enterprise programs, **Added** to this amount would be The Accused programs' SALESFORCE'S basic entry level enterprise price or royalty demanded, with its contributory infringers and inducement infringers such as might be MiTel, Genesys, CISCO, 8x8, *et al.*, **EXHS. "D", Table "D-1"**. **Plus,** packages which include access to data each of which gathered and sold from even "free" apps.

**20.**  For This Court awarding to Plaintiff from The Accused, as a result of The Accused unauthorized acts, use or misuse, misrepresentations, abuse, of Plaintiff's "Calendar Call" and/or "Talking Head graphic art design logo/icon marks, three times Plaintiff's damages and three (3X) times The Accused revenues including event connected ongoing content advertising moneys with corporate "sponsors"

and other commercial content advertisements after an accounting, pursuant to **15 U.S.C. §§ 1114(2)(a)(D)** (*to wit* The Accused violating **§§1125(a)(d)(2)** and The Accused in violation as publishers, respectively), and **§§1117(a)(d)(e)**, *except* for subsections (a) and (d), statutory damages pursuant to **§1117(d)** to recover, instead of actual damages and profits, an award of statutory damages in the amount of **not less than $1,000 and not more than $100,000** per domain name, as the court considers just, and Plaintiff begs This Court to Order treble damages against The Accused acts as The Accused have been given written constructive notices sent from the Plaintiff by U.S. Certified mail with Return Receipts to The Accused;

21.  For This Court Order Directing damages, should any Court find that The Accused and/or another person at any time willfully attempted or attempts to counterfeit mark in connection to goods or product source Defendants, **statutory damages of not more than $1,000,000.00 per trademark per type of good sold or distributed**. Free = distributed;

22.  For Unfair Competition, unjust enrichment, under Florida law, **Florida Statues, 501.2075** there are provisions for This Court to award civil penalty "willfully, using, or has willfully used, a method", *supra*. "is liable for a civil penalty of **not more than $10,000 for each such violation**". Other individual remedies under **§501.211, Fla. Stat. §501.211(1), Fla. Stat.**;

> **"may bring an action to obtain a <u>declaratory judgment</u> that an act or practice violates this part and to enjoin a person who has violated, is violating, <u>or is otherwise likely to</u> violate this part."**

(emphasis added)

23.  For This Court Order Directing The Accused in part and/or in whole some sum (%) percentage responsibility bearing 100% on The Accused, however all infringers held accountable who do not comply with This Court's Orders, which may include civilly culpable, participating roles and accountable responsibilities in committing act(s) and percentage roles (%) determined at This Courts' discretion;

   a.  That This Court's rulings and so Order in favor of Plaintiff from any and all Defendants' part and role in committing act(s) charged alone, together, and/or apart each act that This Court finds as discretionary allowed;

   b.  That this Court finds any act(s) which have been set forth in complaint that This Court finds and so Order its ruling in favor of Plaintiff;

24.  For This Court Curative advertising and other curative actions;

   a.  Ordering Plaintiff's links in connection to his labeled product identity or product source indefinitely, in legible 18 point size type, at least the point size as captions and headers applying the name "Calendar Call" on  The Accused programs website pages, removing The Accused website content;

   b.  Ordering all advertising revenues after The Accused comply with subparagraph **20** to be paid indefinitely by wire transfer transactions directly from promotions, vendors, sponsors, other commercial advertisers to Plaintiff by the first day of each month.

   c.  Ordering the same as above in reference to all that pertains or will pertain to Plaintiff Kaniadakis' U.S Patent infringing content on The Accused web site

pages, such as, "Click to Dial" on Visualforce, Lightening "voice", Twilio related pages, and all infringers included from **EXS. "D"** and **"D-1"**;

d.  Ordering as an alternative assign/transfer all rights thereto subsections of **20** above;

25.  For This Court to Order The Accused to remove all YouTube related content which pertains or will pertain to Plaintiff's U.S. Patent and Trademarks, or in an alternative assign/transfer all rights thereto;

26.  For This Court award all costs, expenses, fees to execute on all infringers in connection knowingly or unknowingly found or discovered to/with The Accused pre-verdict and indefinitely post-verdict as outlined herein;

27.  For The Accused including all infringers, to any extent of respective infringements determined, the infringers to be jointly and severally liable for all the same penalties, damages, injury, harm, costs, fees, expenses, interests, and the 100% of the same amounts irrespective of each of the individual extent(s) of infringements on the infringers and as outlined herein;

28.  For  this Court award together with interest as fixed by This Court, in the amount allowed by law on any/all balances for an indefinite time period, but increased after a set time period should all awards not be collected by Plaintiff and in the name(s) of his collectors due the moneys;

29.  For This Court award Plaintiff's costs and fees;

30.  That in the event a final injunction is not or cannot be granted immediately or timely basis, that a compulsory ongoing royalty be ORDERED, as set forth above;

and;

**31.** For such other and further relief beyond above prayer as This Court deems just and

proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on **JUNE 7,  2017**, I electronically filed the foregoing

using the Management/Electronic Case Filing system ("CM/ECF") *via* Clerk of Court

after being hand delivered OTC, and the Clerk which will send a Notice of this

captioned Electronic Filings to the following CM/ECF Defendants' and participants,

and I have requested that the same be served by Official Summons issued by The U.S.

Clerk of This U.S. Court of a copy of the foregoing captioned Complaint upon each of

the following of The Accused the same. Dated / endorsed with the U.S. Clerk of Court.

A complete copy will be as usual provided and hand delivered to chambers as per Her

Honor's instruction.

**Defendants;**

**Salesforce.com, Inc.**
**d/b/a Salesforce, Inc. AppExchange, *et. al.***
The Executive Board of Directors,
 Marc Benioff, co-Founder, Chairman, C.E.O.,
President
The Landmark at One Market, #300
San Francisco, CA 94105
Executive Offices, C.EO's
Phone 1-415-901-8423,
Ext. # 9017008
General Phones: 800-607-6389

**Salesforce.com, Inc.**
**d/b/a Salesforce, Inc. AppExchange, *et. al.***
The Executive Board of Directors,
50 Fremont Street, 3rd Floor,
Legal Department
San Francisco, CA **94105**
**1-415- 589-3658**

**Co-Defendants;**

**Twilio, Inc.,**
The Executive Board of Directors
375 Beale Street
Suite 300
San Francisco, CA 94105
Phone: 415-390-2337

Dated this, **7th.** day of **JUNE**, 2017.

**Respectfully Submitted,**

   /Steven J. Kaniadakis/

Steven J. Kaniadakis,
Plaintiff, *Pro se*
stevenkdpm@yahoo.com
2895 64th Avenue South
St. Petersburg, FL 33712-5554
Telephone: 727-871-9999

269