## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEVEN J. KANIADAKIS,       )
                                   )
          Plaintiff,      )    Case No.: 8:17-cv-1346-T-17JSS
                                   )
         v.            )
                                   )
THE EXECUTIVE BOARD OF     )
DIRECTORS, SALESFORCE.COM,    )   **DISPOSITIVE MOTION**
INC., *et al*.,           )
                                   )
         Defendant.     )
                                   )

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
## AND SUPPORTING MEMORANDUM

Defendant salesforce.com, inc. ("Salesforce") respectfully moves to dismiss, with prejudice, the amended complaint filed by Plaintiff Steven J. Kaniadakis (Dkt. No. 51) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for infringement and, additionally, on the ground that the asserted claim of the patent-in-suit is invalid under 35 U.S.C. § 101 as drawn to patent-ineligible subject matter. Salesforce also moves to dismiss the amended complaint pursuant to Rules 12(b)(3) for improper venue and 12(b)(1) for lack of standing.

## INTRODUCTION

Plaintiff's amended complaint is as confused and confusing as his initial complaint. The main source of the confusion is that Plaintiff misapprehends what his patent claims and covers. As a result, the amended complaint is largely incomprehensible and should be

dismissed as a shotgun pleading. To the extent the amended complaint can be deciphered, it plainly fails to state a claim for infringement of the single patent claim that is asserted, Claim 15 of Plaintiff's patent, U.S. No. 8,666,772 ("the '772 patent"). It is also clear that Claim 15 is invalid as drawn to patent-ineligible subject matter under 35 U.S.C. § 101, even and especially as characterized by Plaintiff himself. Patent eligibility under Section 101 is a question of law, and the Supreme Court and Federal Circuit strongly support disposing of patent-ineligible claims on a motion to dismiss. Finally, Plaintiff's own allegations show lack of venue in this District and Plaintiff's lack of standing to sue. For these reasons and those discussed below, the Court should dismiss the amended complaint with prejudice and put an end to Plaintiff's ill-conceived and abusive litigation against Salesforce.[1]

## ARGUMENT

I. **PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED AS AN IMPERMISSIBLE SHOTGUN PLEADING**

Plaintiff's initial complaint in this action spanned 269 pages and contained 424 paragraphs and 66 Counts of mostly unintelligible allegations. Dkt. No. 1. After Salesforce moved to dismiss the complaint (Dkt. No. 25), Plaintiff sought leave to file an amended complaint, representing that he will make his allegations "crystal clear" and that "[t]his Court will easily see the U.S. Patent infringement." Dkt. No. 33 at 4. After noting that Plaintiff's

---

[1] The caption of the amended complaint identifies "The Executive Board of Directors, Salesforce.com, Inc." as the defendant, but there is no entity called the "The Executive Board of Directors" of salesforce.com, inc. Moreover, the board of directors of salesforce.com, inc. is not a legal entity separate and apart from salesforce.com, inc. This motion is brought by salesforce.com, inc., which is the only entity that was served with the summons and complaint. *See* Dkt. No. 12. The extraneous words "Executive Board of Directors" should be stricken from the caption, as was done in the now consolidated case, Kaniadakis v. Salesforce.com, Inc., Case No. 8:17-cv-1195-T-17JSS (Dkt No. 27).

complaint "is subject to dismissal for failure to state a claim," this Court allowed Plaintiff leave "to the extent that the Plaintiff intends to file an amended complaint that complies with Rule 8(a)(2)." Dkt. No. 37 at 2.

Plaintiff's amended complaint fails to comply with Rule 8(a)(2). Plaintiff's amended complaint is shorter than his initial complaint—confirming them as baseless, he abandoned 65 of the 66 counts, including 59 of the 60 claims of infringement he previously asserted—but his amended pleading is anything but clear. Plaintiff now asserts a single claim of infringement against Salesforce, but most of his allegations are unintelligible. The only claim of the '772 patent that Plaintiff explicitly asserts is Claim 15. AC ¶¶ 21-39, 55-56, 63-66. It is impossible to tell whether he accuses Salesforce's products, third-party products, or Salesforce's activities of infringement. For instance, he alleges that Salesforce "is a liable for direct infringement" by making, using, selling "The Accused *method or process and/or products*…." Amended Complaint ("AC") ¶ 59.[2] This confusion permeates the entire amended complaint.

Claim 15, on its face, is a method claim. It explicitly claims "[a] *method* for a client *using* a plurality of known voice-over-internet protocol … when *utilized* in a combination [with] a plurality of known type object target programs, the client *using* a new program … *causing* the computer system to *perform operations*, the operations comprising: …." AC Ex. A, Claim 15, preamble. Following the preamble, Claim 15 recites six steps—steps (a) through (f)—that comprise the claimed method. On its face and as a matter of law, Claim 15

---

[2] Unless otherwise noted, all emphases in this memorandum are added.

is a method claim.[3] *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1362 (Fed. Cir. 2009) ("The invention recited in a method claim is the performance of the recited steps.") (citation omitted).

In parts of his amended complaint, Plaintiff appears to recognize that Claim 15 (which he refers to as "IC # 15") is a method claim. For instance, he refers to "the method recieted [sic] in IC # 15 language" and "[a]ll the elements are required in the method of patent US-772 claim." AC ¶¶ 34-35. For most of his amended complaint, however, Plaintiff appears to treat Claim 15 as though it were a claim to a product. For instance, he alleges that Salesforce "commercializes devices" (*id.* ¶ 20), and alleges, unintelligibly, that Salesforce is infringing Claim 15 by "making available *the infringing products* from the 'Click to Dial' *products' components*, attributes *infringing on the method* from patent US-772 by including the *infringing elements in their products and the method*, or otherwise making the *infringing* 'Click to Dial' *product* to be made separately available to others, including but not limited to, all *the elements of method* of US-772 included with The Accused programs' Salesforce 'Lightening Voice' and 'Salesforce Classic' interface related voice apps, and when the component, attributes are with a *different product* when utilized in a combination, and in a manner covered by all the elements of patent US-7722 [sic], IC # 15." AC ¶ 57.

This head-spinning allegation is not only unintelligible, it reflects Plaintiff's fundamental misunderstanding of his patent. Neither Claim 15 nor any other claim of the '772 patent claims a product, device, or apparatus. Plaintiff fails to recognize "the distinction

---

[3] All of the other claims of the '772 patent are likewise, on their face, method claims. *See* AC Ex. A at Claims 1-18.

between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps." *Cardiac,* 576 F.3d at 1362 (quoting *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002)). Claim 15 consists of acts or steps, such as "assessing," "changing" "converting," "providing," "invoking," and "repeating." AC Ex. A at Claim 15, steps (a)-(f). Indeed, some of the steps involve a human act, including step (e) which recites "invoking the command graphic for **making each telephonic call** by the client in the configuration." *Id.*, step (e).

From his fundamental misunderstanding, Plaintiff makes conclusory allegations that "components" of Salesforce's customer relationship management ("CRM") software products infringe Claim 15. For instance, he alleges that Salesforce's "CRM will require and include **components** to access the memory of the user's account." AC ¶ 22. And, he makes another conclusory allegation that the "'Click to Dial' **component**, attributes makes the **component** avalable [sic] seperately [sic], and it has all the elements of US-772, IC#15." *Id.* ¶ 32. Plaintiff's allegations that components of products infringe the method of Claim 15 are not only confusing but also fatally flawed as a matter of law. *Cardiac*, 576 F.3d at 1364 (explaining that "a material or apparatus for use in practicing a patented process is not a component of that process. The components of the process are the steps of the process."). Like his other allegations, Plaintiff's invocation (AC ¶¶ 64-65) of 35 U.S.C. § 271(f)—which addresses "components of a patented invention"—fails as a matter of law. *Cardiac*, 576 F.3d at 1365-66 ("Section 271(f) does not apply to method or process patents.").

In sum, because of Plaintiff's fundamental misunderstanding what his patent claims and covers, his amended complaint is a jumble of disjointed, irrelevant allegations that,

frankly, are difficult if not impossible to decipher. For instance, in a one-sentence paragraph, he asserts: "The component, attributes includes parity to the method recieted [sic] in IC # 15." AC ¶ 34. Plaintiff's amended complaint should be dismissed as a shotgun pleading because it is "is guilty of the venial sin of being replete with conclusory, vague, and immaterial" assertions and fails to comply with Rule 8(a)(2). *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). For this reason alone, the amended complaint fails to state a claim and should be dismissed. Plaintiff should not be allowed to replead because it is evident from what can be deciphered from his amended complaint that he cannot state an infringement claim against Salesforce as a matter of law for two separate, fundamental reasons: Claim 15 is invalid, as shown in Section II below, and Plaintiff cannot state a claim for infringement, whatever his theory, as shown in Section III below.

## II.  CLAIM 15 IS INVALID AS PATENT-INELIGIBLE UNDER 35 U.S.C. § 101

### A.  Plaintiff's Own Characterization Of Claim 15 Confirms It Is An Abstract Idea

The '772 patent is entitled "Process, System, Method Creating Medical Billing Code Letters, Electronic Superbill And Communication." AC Ex. A. Plaintiff, who is the sole inventor, applied for and prosecuted the patent in the patent office himself.[4] The '772 patent describes two interrelated parts of the claimed invention: a medical software operation for converting standard billing codes into and from easy to remember code letters, and a method for scheduling appointments using electronic means such as voice-over-internet protocol "*in combination with this novel medical software operation.*" AC Ex. A at Abstract.

---

[4] Like his pleadings and papers in this case, his patent, including Claim 15, is replete with grammatical flaws and disjointed language that render it largely unintelligible.

6

The medical code conversion software aspect of the purported invention is claimed in Claim 1. *See* AC Ex. A, Claim 1. The amended complaint does ***not*** allege that Salesforce infringes Claim 1; indeed, there is not a single allegation that Salesforce makes, sells, or uses the claimed medical-code-conversion software. The patent's specification refers to the second part of the invention as "This Invention's Scheduling Part" (AC Ex. A at 10:20)[5], and describes this part as "a method to provide communication from the provider to the patient and to people scheduling follow up or return visits for patients." *Id*. at 10:21-23. This part utilizes "pre-determined ***known*** type Voice Over Internet Protocol (VoIP) to make call directly from the appointment book selection, event scheduling related fields." *Id*. at 28:64-29:4. This aspect is claimed in Claim 15.

In this amended complaint, purporting to quote the Abstract, Plaintiff describes his "invention in terms of the patent's abstract: 'Voice over internet protocol ("VoIP", "voice") and wireless connections using [a]n unique implementation of other applications in combination.'" AC ¶ 19. Plaintiff cuts the quote short, omitting the full phrase "in combination with this novel medical software operation." AC Ex. A at Abstract. Plaintiff thus characterizes the scheduling aspect of his purported invention, claimed in Claim 15, as entirely separate and independent from the medical code conversion aspect of his purported invention. By his characterization, Claim 15 covers use of VoIP in "combination" with *any* known computer program.

---

[5] Citations to the patent's specification refer to column and line numbers appearing in the patent; here, for example, the number "10" refers to the column and "20" refers to the line.

For purposes of this motion to dismiss, Salesforce accepts Plaintiff's characterization. Because Plaintiff's view is accepted as true and correct for purposes of this motion, there is no factual dispute presented. This motion presents a pure question of law—that is, whether Claim 15 is drawn to patent-ineligible subject matter. As shown below, it plainly is.

**B. Patent Eligibility Under Section 101 Is A Threshold Issue And A Question of Law Suitable For Resolution On A Motion To Dismiss**

Section 101 sets forth four categories of patent-eligible subject matter: "process, machine, manufacture, [and] composition of matter." 35 U.S.C. § 101. For over 150 years, however, the Supreme Court has recognized that this provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). Patentability under Section 101 is a "threshold inquiry" and a question of law. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593 (2010). The Supreme Court and the Federal Circuit—the court of appeals with exclusive jurisdiction in patent cases—strongly support resolution of Section 101 issues at the outset of a case. *Alice* itself was an appeal from a dismissal under Rule 12(b)(6). The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016); *see also, e.g., Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (Section 101 is a "threshold question, one that must be addressed at the outset of litigation," Mayer, C.J., concurring); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (affirming decision from District Court of Middle District of Florida granting motion to dismiss for patent-ineligibility).

### C. Claim 15 Of The '772 Patent Is Not Patent-Eligible Under § 101

In *Alice*, the Supreme Court provided a two-step framework for determining whether a patent contains eligible subject matter under Section 101. There has been a torrent of Federal Circuit and District Court decisions since *Alice* finding challenged patents invalid under Section 101, and *Alice's* "two-step framework" is "now familiar law." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed Cir. 2016).

Under the initial step, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. If a patent is drawn to an abstract idea, the inquiry moves to step two, which is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. There is no "inventive concept" if a claim recites an abstract idea implemented using "generic" computer technology to "perform well-understood, routine, and conventional activities commonly used in industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. at 2359). In addressing computer-implemented methods, courts use one (or a combination) of three overlapping analyses within the *Alice* framework. As shown below, each of the three analyses demonstrates that Claim 15 is directed to an abstract idea.

#### 1. Claim 15 Merely Implements On A Generic Computer The Age-Old Practice Of Telephoning People To Schedule Appointments

In finding that patents are directed to abstract ideas, courts often rely on analogies to the claimed computer-implemented method because "fundamental … practice[s] long prevalent" and "method[s] of organizing human activity" are abstract ideas. *Alice*, 134 S. Ct.

at 2356.  As the Federal Circuit recently stated:  "The Supreme Court and we have held that a wide variety of well-known and other activities constitute abstract ideas." *Intellectual Ventures I LLC v. Symantec*, 838 F.3d 1307, 1314 (Fed. Cir. 2016).  Here, Claim 15 is directed to a fundamental concept—using a telephone to schedule appointments—that has long been prevalent in both business and social contexts.  For more than a century, people have used the telephone to make and confirm appointments and schedule events.  People generally, and particularly business people, have written down telephone numbers of contacts (be they customers, patients, friends, or associates) and kept those telephone numbers in conveniently located places—such as a rolodex, appointment book, customer account, or contact information list—for ready access to make contact by telephone.

Claim 15 merely extends this long-prevalent practice to the computer realm and implements it using generic computers.  "[C]onsidered in light of the specification … [and its] character as a whole," *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1335 (Fed. Cir. 2016), Claim 15 is plainly directed to this age-old practice.  The specification of the '772 patent states that the claimed invention "is a method to provide communication from the provider to the patient and to people scheduling follow up or return visits for patients."  AC Ex. A at 10:21-23.  The specification states: "If the user wants to contact a person or a patient's appointment, then the user invokes the command graphic control to make the call right from the appointment book calendar implementation."  *Id*. at 37:55-58.  The specification discloses the use of "pre-determined **known** type Voice Over Internet Protocol (VoIP) to make call directly from the appointment book selection, event and scheduling related fields."  *Id*. at 28:67-29:3.

Claim 15 itself merely extends the abstract concept of using a telephone to schedule appointments by deconstructing this abstract concept into a series of constituent and inherent steps, using well-known computer technologies and techniques. Claim 15 recites that it is "[a] method for a client using a plurality of **known** voice-over-internet-protocol" and "a plurality of **known** type object target programs…." AC Ex A, Claim 15 at preamble. According to Plaintiff, step (a) of Claim 15 requires nothing more than for a user to log onto ("access") the user's account through the "object target program interface" displayed on the screen of the user's computer. *See* AC ¶¶ 21-22. According to Plaintiff, this action is taken to "access the memory of the user's account." *Id*. ¶ 22. This step is analogous to a human accessing a customer account file on his or her desk or in a file drawer.

Step (b) generically calls for "enabling the **known** voice-over-internet protocol on the object target program including appointment book related screens, calendar, schedulers of event chronology implementations, …." AC Ex. A at Claim 15, step (b); *see also* AC ¶¶ 23-24.[6] Step (c) generically calls for converting "a listing of phone numbers into interactive electronic commands or a command graphic" and displaying the phone numbers on the user's computer screen. *Id*., step (c); *see also* AC ¶ 28. Step (d) generically calls for providing a VoIP capability on the "client's side," thereby "creating the new use of the client's screens including said voice-over-internet-protocol therewith said calendar related implementation." *Id*., step (d); *see also* AC ¶ 29-30. Step (e) is simply making the phone

---

[6] Because Plaintiff omits from these allegations the claim language in step (b) regarding appointment book and calendar related implementations, it is unclear if he contends that Claim 15 is not limited to calendar related implementations. If so, accepting his contention as true would only serve to make the claim even more abstract.

calls; in the words of the claim: "invoking the command graphic for making each telephonic call by the client in the configuration." *Id.*, step (e); *see also* AC ¶ 31.[7] These steps are analogous to a human creating a rolodex of telephone numbers, keeping the rolodex and a calendar nearby the telephone, and using a telephone to make the calls.

The steps performed by the claimed computer elements are functional in nature and could be—and have been—easily performed by a human. Claim 15 essentially proposes that instead of a human with an appointment book calendar in one hand and a rolodex in the other hand, a generic computer can perform those functions by displaying the phone numbers in the appointment book field on the computer screen.[8] Moreover, in both methods, a human still makes the phone call, using a telephone in the age-old practice and well-known computer-implemented telephone technology (VoIP) in the claimed method.

Even if the method of Claim 15 has advantages of speed or efficiency over the age-old practice—for instance, by making the phone numbers "interactive" in step (d)—it is nonetheless a patent-ineligible abstract idea. As the Federal Circuit has explained, "our precedent is clear that merely adding computer functionality to increase speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures v. Capital One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). When, as here, "with the exception of generic computer-implemented steps, there is nothing in the claims

---

[7] The final step, Step (f), generically calls for "repeating" the above steps for changing to "another known type voice-over-internet-protocol using the combination with different types of the object target program …." AC Ex. A, Claim 15, step (f); AC ¶ 36 (alleging step (f) is simply "'repeating' the process for each machine").

[8] The specification confirms that a human can perform the analogous activity: "Furthermore, a Patient Appointment Card ('PAC') is ***printable*** to provide a convenient and reproducible method to insure patient-provider communication with reference to recommended return visits." AC Ex. A at 10:26-29.

themselves that foreclose them from being performed by a human, mentally or with a pen and paper," this demonstrates that the claim is directed to a patent-ineligible abstract idea. *Intellectual Ventures I*, 838 F.3d at 1318. Claim 15 is analogous to the long-prevalent practice of conveniently storing telephone numbers to call people for scheduling purposes, demonstrating that Claim 15 is directed a patent-ineligible abstract idea.

### 2. Claim 15 Does Not Improve The Functioning Of The Computer Itself, But Rather Invokes Computers As Tools

In a similar vein, the Supreme Court and Federal Circuit instruct that a claim is directed to a patent-ineligible abstract idea when, as here, the claimed method does not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, but, rather, "computers are invoked merely as a tool." *Enfish,* 822 F.3d at 1336. Following *Alice*, decisions of the Federal Circuit have confirmed that a claim must recite "a specific, unconventional technological solution … to a technological problem" to be patent eligible. *Amdocs*, 841 F.3d at 1306. In cases when the Federal Circuit has upheld software claims under § 101, it has explained that the claims are directed to a technology-specific problem and solution. For instance, in *Enfish*, the claims were "directed to a specific improvement to the way computers operate, embodied in the self-referential table." 822 F.3d at 1336. The Federal Circuit explained that patent's specification "teaches that the self-referential table functions differently than conventional database structures" (*id* at 1337), and "the self-referential table recited in the claims … is a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id*. at 1339.

Here, by contrast, Claim 15 is not directed to the solution of a "technological problem," *Alice*, 134 S. Ct. at 2358, nor is it directed to an improvement in computer functionality. As

recited in Claim 15, the claimed method uses "***known*** voice-over-internet-protocol" and "***known*** type object target programs" and generic computers to perform conventional computer functions. AC Ex. A at Claim 15. It claims the abstract concept of telephoning people to schedule appointments through the use of conventional computer technology, without offering any unconventional technological means of effecting that concept. Claim 15 invokes computers merely as a tool to implement the abstract idea.

### 3. Precedent Confirms That Claim 15 Is A Patent-Ineligible Abstract Idea

As the Federal Circuit explained, "both this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. There are legions of decisions finding that claims are directed to an abstract idea. *See Intellectual Ventures I*, 838 F.3d at 1314, n.5 (collecting some but hardly all such cases). For example, in *Intellectual Ventures I* itself, the Federal Circuit found that the claimed computer-implemented method for filtering emails was analogous to "the long-prevalent practice for people receiving paper mail" who would "look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id.* at 1314. In *Context Extraction,* the Federal Circuit found that the claimed method of computer-implemented information processing was analogous to the way that "banks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." 776 F.3d at 1347. Similarly, in *Capital One Bank*, the Federal Circuit found abstract an Internet-based method for "tracking financial transactions to determine whether they exceed a pre-set spending limit

(*i.e.*, budgeting)." 792 F.3d at 1367. The fact that "the claims recite[d] budgeting using a 'communication medium' (broadly including the Internet and telephone networks), . . . [did] not render the claims any less abstract." *Id*.

The abstract idea in the present case—accessing conveniently stored telephone numbers to call people for scheduling appointments—is not meaningfully different than the ideas found to be abstract in previous cases involving methods of organizing human activity. In sum, under each of the above-discussed inquiries, Claim 15 is directed to an abstract idea.

### D. Claim 15 Does Not Involve Use Of Any Inventive Steps Or Technology

There is no "inventive concept" in Claim 15 that transforms the abstract idea into patent-eligible subject matter, and thus patent-ineligibility is confirmed under step two of the *Alice* test. The claimed method uses "***known*** voice-over-internet-protocol" and "***known*** type object target programs." Ex. A, Claim 15 at preamble. As the word "known" indicates, and as Plaintiff has otherwise admitted, his claimed method uses VoIP that was already known in the industry. In his prior pleading, Plaintiff admitted that he "does not essentially claim to have invented VoIP; Program' technology of 'voice' are among the '<u>known plurality of</u>' VoIP recited with[in] the body of the Independent Claim, (IC# 15), patent US-772." Dkt. No. 1 ¶ 117 (emphasis in original); *see also id*. ¶ 163 ("[I]t is not Plaintiff Kaniadakis' contention that he invented voice over internet protocol (VoIP) related implementations.").[9]

Just as Plaintiff admits he did not invent VoIP, he admits he did not invent the "click-to-call" functionality of VoIP. *See* AC Ex. 2 at 5. Nor did he invent "known type object

---

[9] These allegations are judicial admissions. *See Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc*., 713 F.2d 618, 621 (11th Cir. 1983) (holding that "a party is bound by the admissions in his pleadings").

target programs," which, according to Plaintiff, can be *any* known computer program or application. Indeed, in his amended complaint, Plaintiff alleges that Salesforce's customer relationship management ("CRM") program is a known type object target program. AC ¶¶ 20, 23. Claim 15 also refers to a "new program," both in the preamble and steps (b) and (c). According to Plaintiff, the "new program" is not something he invented, but rather is something that simply results (in an unexplained way) from the combination of any two or more programs: "Each combination is making a new program, either on the same object program (*e.g.*, the CRM) or on another combination of program applications." AC ¶ 23, n. 2.

Known VoIP and known type object target programs and the so-called "new program" are central to Claim 15, but Plaintiff did *not* invent any of them. Claim 15 simply requires generic computer components (*e.g.*, "one or more processors," "program codes," "hard drive of a non-transitory computer readable storage medium," and "memory") to perform generic computer functions (*e.g.*, "accessing said memory," "changing the memory and computer database," and "invoking the command graphic.") This not inventive. *Alice*, 134 S. Ct. at 2358-59 (noting that generic references to "processors" and "instructions" stored in "memories" are insufficient, and that "send[ing]" and "determin[ing]" from data are among the "most basic functions of a computer," and cannot confer patentability).

The Court should find Claim 15 invalid under § 101 and, on that ground, dismiss the amended complaint with prejudice.

### E. The Non-Asserted Claims Of The '772 Patent Also Would Be Patent-Ineligible

The patent-eligibility analysis pertains only to "the claims at issue," *Alice*, 134 S. Ct. at 2355. Here, Claim 15 is the only claim at issue because it is the only one Plaintiff has

asserted.  But it would be futile for Plaintiff to assert other claims of the '772 patent because they are likewise patent-ineligible.  Claims 16-18 are all dependent upon Claim 15.  These claims embody the same abstract idea as in Claim 15, and do not add any inventive concept.  From example, Claim 16 describes using a VoIP that includes "known instance messaging" capabilities.  Claim 17 describes "known type electronic messaging implementation," and Claim 18 describes using "other known type object programs other than the healthcare implementations."  *See* AC Ex. A at Claims 16-18.  Claim 1, which involves converting medical codes, is an abstract idea.  *See, e.g., Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (finding that the claim at issue "is directed to the abstract idea of encoding and decoding image data").  The '772 patent's specification acknowledges that "converting medical records into billings codes" can be and is commonly done "by human intelligence."  AC Ex. A at 5:55-63.  Claims 2-14 depend from Claim 1 and embody the same abstract idea using generic computers.  It would be futile to allow repleader.

## III.  PLAINTIFF FAILS TO STATE A CLAIM FOR PATENT INFRINGEMENT

Another separate and additional reason that the Court should dismiss the amended complaint is that the it fails to state a claim for patent infringement.

### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that "tenders naked assertions devoid of further factual enhancement" fails to meet this standard and must be dismissed.  *Id.* (*quoting Twombly*, 550

U.S. at 555-57).  To state a plausible claim, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Twombly*, 550 U.S. at 556).

### B.  Plaintiff Fails To State A Claim For Direct Infringement

Claim 15 is a method claim.  "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed or attributable to a single entity."  *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  The amended complaint fails to show that all steps of Claim 15 were performed by anyone, let alone all performed by or attributable to Salesforce.

Plaintiff alleges that Salesforce "commercializes devices" for consumers "to use their CRM" and other "known" program apps "on a consumer's computing device."  AC ¶ 20. Plaintiff alleges that Salesforce directly infringes Claim 15 by "making available the infringing products" to others.  AC ¶ 57; *see also id.* ¶ 59 ("Direct infringement is by its programs in association with the infringing component … made available to the public …."). Plaintiff apparently alleges that the "infringing products" and "infringing components" are Salesforce's "Open CIT," Visualforce," "Lightening Voice," and "Salesforce Classic."  AC ¶¶ 24, 28, 38, 57.  In short, to the extent his allegations can be deciphered, Plaintiff appears to allege that Salesforce directly infringes Claim 15 by selling ("making available") the allegedly infringing products or components.

Plaintiff's allegations fail as a matter of law.  Claim 15 is a method claim.  "Method claims are only infringed when the claimed process is performed, ***not*** by the sale of an apparatus that is capable of infringing use."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d

1299, 1311 (Fed. Cir. 2006); *see also Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) (holding that "a party that sells or offers to sell software containing instructions to perform a patented method does ***not*** infringe the patent under § 271(a)").

Nowhere in the amended complaint does Plaintiff allege—let alone plead "factual content" as required under *Iqbal* and *Twombly*—that Salesforce itself performs any of the steps recited in Claim 15, much less all of them. Instead, his allegations go only to the products or components that Salesforce offers. *See* AC ¶ 22 ("The Accused's CRM will require and include components"); *id.* ¶ 23 ("The Accused's CRM include components for administrators or users"); *id.* ¶ 24 ("Open CIT … is including their 'Click to dial' component"); *id.* ¶¶ 25-27 ("'Click to dial' component"). Plaintiff's "Element, component, attributes chart" attached as Exhibit 2 to his amended complaint likewise goes to products and components; plaintiff takes snippets of product/components descriptions and instructions for their use, and purports to match those snippets to isolated snippets of Claim 15's claim language. These allegations cannot state a claim for direct infringement because sale of products or components does not constitute direct infringement of a method claim, as the above-cited authorities hold. *See also Cardiac*, 576 F.3d at 1359 ("A method claim is directly infringed only by one practicing the patented method."). Beyond this fatal defect, Plaintiff's allegations, including his attached chart, are otherwise glaringly deficient because they are based on isolated snippets of Claim 15's lengthy elements, and fail to make any showing of infringement, let alone a plausible one.

In addition to failing to show that Salesforce performs any (much less all) of the steps of Claim 15, Plaintiff fails to show that another entity performed the required steps, and that

such other entity's performance can be plausibly attributed to Salesforce. To state a claim for joint infringement, Plaintiff must show that (1) Salesforce "directs and controls" the other entity's performance of the steps, or (2) that Salesforce and the other entity formed a "joint enterprise" encompassing performance of each such step. *Akamai*, 797 F.3d at 1022-23. To the extent Plaintiff intended to allege joint infringement, he failed to make the requisite showing. Indeed, Plaintiff failed to identify any entity that performed the steps of the claimed method. Thus, Plaintiff's claim of joint infringement fails from the go-get. As Plaintiff failed to identify any entity that allegedly performed the method steps, it goes without saying that Plaintiff failed to show anything that could be attributed to Salesforce.

In sum, Plaintiff fails to state a claim for direct infringement under § 271(a).

### C. Plaintiff Fails to State A Claim For Indirect Infringement

As an initial matter, "a claim of indirect infringement can only arise where there is direct infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig*., 681 F.3d 1323, 1330 (Fed. Cir. 2012); *see also Global Tech Led*, *LLC v. Every Watt Matters*, *LLC*, No. 15-cv-61933, 2016 WL 6682015, at *4 (S.D. Fla. May 19, 2016) ("A claim for indirect infringement cannot survive a motion to dismiss unless a complaint 'plausibly allege[s] that the . . . patent was directly infringed.'") (*quoting In re Bill of Lading*, 681 F.3d at 1330)). Because Plaintiff fails to plausibly allege direct infringement of Claim 15 by any entity, he fails from the get-go to allege a claim for indirect infringement against Salesforce.

In a single, conclusory allegation, Plaintiff speculates that "distributors, retailers, customers, users and/or licensees of The Accused" might be direct infringers. AC ¶ 62. But Plaintiff fails to allege any facts at all, let alone facts that would plausibly show that any of

these persons actually performed all steps of the claimed method. Plaintiff also points to Exhibit D of his prior pleading, which lists sixty third-party developers of apps, and he speculates that "there are sixty (60) apps that ***could be*** utilized" in connection with one of the steps of the method, step (f). AC ¶¶ 39-40. These allegations fails to show that any person performed step (f), let alone performed all the steps as required to be a direct infringer.

Beyond this fatal defect, Plaintiff's allegations fails to satisfy the other required elements for a claim of induced or contributory infringement. Plaintiff makes the conclusory allegation that Salesforce is "actively inducing by persuading its respective management, administrators, customers, users, clients, licensees, and/or persons with permissions to directly infringe…." AC ¶¶ 60 and 62. This conclusory allegation is woefully insufficient, even if Plaintiff had sufficiently pleaded the predicate that any of these persons was a direct infringer (which he failed to do). "To prove inducement of infringement, the patentee must [] show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Astornet Techs., Inc. v. BAE Sys., Inc*., 802 F.3d 1271, 1279 (Fed. Cir. 2015). Like induced infringement, "to be liable for contributory infringement, a defendant must know the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc*., 135 S. Ct. 1920, 1927 (2015) (citations omitted). Plaintiff pleads no facts showing that Salesforce had any such culpable intent.

Plaintiff fails to plead direct infringement by any entity, and pleads no facts that would plausibly show that Salesforce took any affirmative act to encourage infringement. In sum, Plaintiff fails to state a claim for indirect infringement under either § 271(b) or § 271(c).

## D.  Plaintiff Cannot State A Claim Under § 271(f) and § 271(g) As Matter Of Law

Plaintiff cannot state a claim under § 271(f) because "Section 271(f) does not apply to method or process patents."  *Cardiac,* 576 F.3d at  1365-66.  And Plaintiff cannot state a claim under § 271(g) because it applies only to patents claiming a process for manufacturing a product, and Claim 15 does not claim a process of manufacturing, as shown below.

## E.  If Plaintiff's Theory Is That Claim 15 Recites A Manufacturing Process Or is A Product-By-Process Claim, His Theory Fails As A Matter Of Law

Plaintiff alleges that Salesforce is liable for infringement under 35 U.S.C. § 271(g) and by invokes 35 U.S.C § 295(1)(2), both of which address situations where "a product which is made by a process patented in the United States" is imported into or sold or used within the United States.  AC ¶ 57.  Sections 271 and 295 are inapplicable in this case because Claim 15 does not describe a process of making a product.  The Federal Circuit construed "the meaning of the phrase 'a product which is made by a [patented] process.'" *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1371 (Fed. Cir. 2003) (bracket in original). The Federal Circuit concluded that "the statute clearly contemplates that 'made' means 'manufactured'" (*id*. at 1372), and held that the patented "process must be used directly in the manufacture of the product."  *Id*. at 1378.  This holding also applies to the identical statutory language in § 295. *See id*. at 1377. [10]

---

[10]  Plaintiff repeatedly invokes § 295, apparently in an attempt to side-step his burden of proving infringement. *See* AC ¶¶ 13, 38-39, 55, 57-58.  Section 295 is inapplicable in this case.  It provides for burden shifting only when a plaintiff shows there is (1) "a substantial likelihood … that the  [accused] product was made by the patented process" and (2) "a reasonable effort to determine the process actually used in the production of the product and was unable so to determine." 35 U.S.C. § 295.  Even if § 295 were applicable, which it is not, it would apply only if Plaintiff survived the pleading stage and could show a likelihood of infringement and that he "followed all of the avenues of discovery likely to uncover the [defendant's] process…." *LG Display Co. v. AU Optronics Corp*. 709 F. Supp. 2d 311, 335 (D. Del. 2010).

Apart from his unexplained and confusing invocations of Sections 371(g) and 295, Plaintiff does not appear to allege that Claim 15 claims a process of making a product, nor does he allege that Claim 15 is a "product-by-process" claim. He could not credibly do so. Patent law recognizes that some inventions (such as some pharmaceutical drugs) may be difficult to describe in structural terms, and so such products may be defined by the process of making them. *See*, *e.g.*, *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985) (Such "product-by-process" claims "enable an applicant to claim an otherwise patentable product that resists definition by other than the process by which it is made."). Though defined by its manufacturing process, "the invention so defined is a product and not a process." *In re Bridgeford*, 357 F.2d 679, 682 (C.C.P.A. 1966). There is no infringement of a product-by-process patent, however, unless the patentee establishes that the accused product was made by the process recited in the claim, as the Federal Circuit has made clear. *Abbott Labs., Inc. v. Sandoz, Inc*., 566 F.3d 1282, 1293 (Fed. Cir. 2009) (en banc) (reaffirming that "process terms in product-by-process claims serve as limitations in determining infringement.").

To see that Claim 15 is not a process for manufacturing a product or a product-by-process claim, one need look no further than step (e) of Claim 15—which recites "invoking the command graphic for making each ***telephonic call.***" In describing this step, the specification of the '772 patent states: "If the ***user*** wants to contact a person or a patient's appointment, then the ***user*** invokes the command graphic to ***make a call*** right from the appointment book calendar implementation." AC Ex. A 37:55-58. This step and the other steps of Claim 15 describe the ***use*** of computers for the end-purpose of making telephone calls, not a process for making a computer system.

## IV.  PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH VENUE IN THIS DISTRICT AND HIS STANDING TO SUE

Plaintiff admits that he "dragged [Salesforce] to this State of Florida and judicial district" because he feared that Salesforce might bring a preemptive declaratory judgment action challenging the validity of his patent in another jurisdiction.  AC ¶ 7.  Plaintiff's venue allegations are premised entirely on his allegations that Salesforce has "minimal contacts" in the Middle District of Florida, including an office in Tampa, sufficient to establish *personal jurisdiction* in this District (AC ¶ 6) and that "[v]enue lies in this judicial district pursuant to 28 U.S.C. § 1391(c)(2), since Defendant is subject to the court's personal jurisdiction."  AC ¶ 10.  These allegations are insufficient as a matter of law.

In a decision earlier this year, the Supreme Court in *TC Heartland LLC v. Kraft Food Group Brands LLC*, 137 S. Ct. 1514 (2017), clarified that 28 U.S.C. § 1400(b) is the exclusive source of venue for patent infringement lawsuits and that venue lies only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement **and** has a regular and established place of business."  *Id*. at 1516 (quoting 1400(b)).   Because Salesforce is incorporated in Delaware (AC ¶ 4), the residency requirement of § 1400(b) cannot be met here under the definition provided in *TC Heartland*. *See* 137 S. Ct. at 1521 (holding that "'reside[nce]' in § 1400(b) refers only to the State of Incorporation").  Thus, Plaintiff must satisfy both parts of the second prong of §1400(b), and he fails to do so.

While Plaintiff has alleged that Salesforce has an office in Tampa (AC ¶ 4), he fails to sufficiently allege that Salesforce "has committed acts of infringement" within the Middle District of Florida.  Plaintiff has failed to allege sufficiently that Salesforce has infringed his

patent anywhere, but his failure to allege acts of infringement within this District not only fail to state a claim but also fail to establish that venue is proper in this District. Plaintiff does not identify a single act of infringement that allegedly occurred in this District. Instead, he make only conclusory and speculative allegations, including his cryptic allegation that "a portion of the alleged infringement" occurred in this District. AC ¶ 7. Plaintiff's failure to allege **facts** sufficient to establish proper venue is a fatal flaw because "[v]enue is based on the facts alleged in the well-pleaded complaint." *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996). As Plaintiff has failed to satisfy the venue requirement, this Court should dismiss the amended complaint pursuant to § 1400(a) on this additional ground.

Yet another ground for dismissal is that Plaintiff's own allegations show that he lacks standing to bring this suit. Plaintiff alleges that he is "doing business as U.S. Patented Technology 8,666,772 and *he* is incorporated as AMETEX, INC. in the State of Florida." AC ¶ 2. This allegation presents two problems for Plaintiff. First, it shows that the corporation, Ametex, is the real party-in-interest or, at the very least, an indispensable party to this suit. Second, Plaintiff cannot represent Ametex because "[t]he rule is well established that a corporation is an artificial entity that … cannot appear pro se, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

## V. CONCLUSION

For all of the foregoing reasons, Salesforce respectfully requests the Court to dismiss the amended complaint with prejudice.

Dated: November 7, 2017                    Respectfully submitted,

/s/ Manuel Kushner
Co-Counsel                      Manuel Kushner
Peter E. Root                   Florida Bar No. 330957
Admitted *Pro Hac Vice*         ARNOLD & PORTER KAYE SCHOLER LLP
ARNOLD & PORTER KAYE            Phillips Point, East Tower
    SCHOLER LLP               Suite 1000
3000 El Camino Real             777 South Flagler Drive
Five Palo Alto Square, Ste. 500  West Palm Beach, FL  33401-6163
Palo Alto, CA 94306-2112        Tel.:    561-802-3230
Tel:    650-319-4506            Fax:    561-802-3217
Fax:    650-319-4906           Email:  Manuel.kushner@apks.com
Email: peter.root@apks.com

                                Trial Counsel for Defendant
                                Salesforce.com, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2017, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.


                              */s/ Manuel Kushner*
                              Manuel Kushner